No. 24-1091

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————

EDWARD A. WILLIAMS,

Plaintiff-Appellee,

v.

ATTORNEY GENERAL OF THE UNITED STATES, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

———————————

## SUPPLEMENTAL BRIEF FOR APPELLANTS

———————————

BRETT A. SHUMATE
   *Assistant Attorney General*

DAVID METCALF
   *United States Attorney*

MICHAEL S. RAAB
KEVIN B. SOTER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7222*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........................................................ 1

ARGUMENT .......................................................................................... 2

Williams must seek restoration of his firearm rights from the Department
    of Justice under Section 925(c). .......................................................... 2

    A.    The record is insufficient to determine whether Williams is
        entitled to restoration of his firearm rights under this Court's
        precedent. ..................................................................................... 2

        1.    Under this Court's precedent, Williams's Second
            Amendment claim turns on whether he presently
            poses a physical danger if armed. ...................................... 2

        2.    There has not been sufficient record development to
            determine whether Williams poses a danger if armed. ........ 7

    B.    The factual record must be developed pursuant to Section
        925(c) in the first instance............................................................ 9

        1.    Section 925(c) addresses the constitutional concerns
            this Court has identified with individual applications
            of Section 922(g)(1).......................................................... 10

        2.    Williams must seek relief pursuant to Section 925(c). ....... 14

CONCLUSION ...................................................................................... 23

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

**Cases:**                                                                        **Page(s)**

*Anderson v. Green*,
   513 U.S. 557 (1995) .................................................................................... 15

*Ashwander v. TVA*,
   297 U.S. 288 (1936) .................................................................................... 15

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ...................................................................................... 3

*Holloway v. Attorney General*,
   948 F.3d 164 (3d Cir. 2020), *abrogated on other grounds by*
   *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) .............................. 7-8

*Liverpool, N.Y. & Phila. S.S. Co. v. Commissioners of Emigration*,
   113 U.S. 33 (1885) ...................................................................................... 15

*McCarthy v. Madigan*,
   503 U.S. 140 (1992) .................................................................................... 17

*McKart v. United States*,
   395 U.S. 185 (1969) .................................................................................... 16

*National Park Hospitality Ass'n v. Department of Interior*,
   538 U.S. 803 (2003) .................................................................................... 15

*New York State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) ......................................................................................... 3

*O'Hanlon v. Uber Techs., Inc.*,
   990 F.3d 757 (3d Cir. 2021) ........................................................................ 10

*Pitsilides v. Attorney General*,
   128 F.4th 203 (3d Cir. 2025) ............................................... 5, 6, 7, 8, 9, 20

*Pontarelli v. U.S. Dep't of the Treasury*,
  285 F.3d 216 (3d Cir. 2002) ....................................................... 13

*Range v. Attorney General*,
  124 F.4th 218 (3d Cir. 2024) ..................................................5, 8, 11, 12, 14

*Reiter v. Cooper*,
  507 U.S. 258 (1993) .................................................................. 17

*Sisley v. DEA*,
  11 F.4th 1029 (9th Cir. 2021) .................................................... 17

*Trump v. New York*,
  592 U.S. 125 (2020) ............................................................... 15-16, 16

*United States v. Bean*,
  537 U.S. 71 (2002) ................................................................ 11, 13, 17

*United States v. Bullock*,
  123 F.4th 183 (5th Cir. 2024) ..................................................... 6

*United States v. Diaz*,
  116 F.4th 458 (5th Cir. 2024), *petition for cert. filed*,
  No. 24-6625 (U.S. Feb. 18, 2025)................................................. 4

*United States v. Duarte*,
  137 F.4th 743 (9th Cir. 2025) ..................................................... 4

*United States v. Dubois*,
  ___ F.4th ___, No. 22-10829, 2025 WL 1553843 (11th Cir. June 2, 2025)....5

*United States v. Goodnight*,
  No. 23-1882, 2025 WL 1276000 (3d Cir. May 2, 2025) ............................ 6

*United States v. Hunt*,
  123 F.4th 697 (4th Cir. 2024), *cert. denied*,
  No. 24-6818, 2025 WL 1549804 (U.S. June 2, 2025) ................................ 4

*United States v. Jackson*,
  110 F.4th 1120 (8th Cir. 2024), *cert. denied*,
  No. 24-6517, 2025 WL 1426707 (U.S. May 19, 2025) ................................. 4

*United States v. Moore*,
  111 F.4th 266 (3d Cir. 2024), *petition for cert. filed*,
  No. 24-968 (U.S. Mar. 7, 2025) ............................................................. 4, 13

*United States v. Quailes*,
  126 F.4th 215 (3d Cir. 2025) ....................................................................... 13

*United States v. Rahimi*,
  602 U.S. 680 (2024) ................................................................................ 3, 4

*United States v. White*,
  No. 23-3013, 2025 WL 384112 (3d Cir. Feb. 4, 2025) ................................. 6

*United States v. Williams*,
  113 F.4th 637 (6th Cir. 2024) ............................................... 4, 6, 9, 19, 20

*United States v. Williams*,
  No. 23-2773, 2025 WL 1341877 (3d Cir. May 8, 2025) .............................. 6

*U.S. Dep't of Treasury v. Galioto*,
  477 U.S. 556 (1986) ................................................................................... 18

*Vincent v. Bondi*,
  127 F.4th 1263 (10th Cir. 2025), *petition for cert. filed*,
  No. 24-1155 (U.S. May 8, 2025) ................................................................. 4

*Washington v. Barr*,
  925 F.3d 109 (2d Cir. 2019) ...................................................................... 17

*Woodford v. Ngo*,
  548 U.S. 81 (2006) ..................................................................................... 17

*Zherka v. Bondi*,
  ___ F.4th ___, No. 22-1108, 2025 WL 1618440 (2d Cir. June 9, 2025)......... 4

**Statutes:**

18 U.S.C. § 922(g)(1) ................................................................. 2

18 U.S.C. § 922(g)(8) ................................................................. 3

18 U.S.C. § 925(c) ................................................... 9, 10, 11, 20

75 Pa. Cons. Stat. § 3802(c) ..................................................... 7

**Regulation:**

27 C.F.R. § 478.144 (2024) ...................................................... 22

**Other Authorities:**

Granting of Relief; Federal Firearms Privileges,
    90 Fed. Reg. 17,835 (Apr. 29, 2025) ............................................ 21

Withdrawing the Attorney General's Delegation of Authority,
    90 Fed. Reg. 13,080 (Mar. 20, 2025) .................................... 11, 12

## INTRODUCTION AND SUMMARY

Under federal law, plaintiff Edward Williams is prohibited from possessing firearms because of his 2005 conviction for recidivist drunk driving at the highest rate of alcohol, a state-law offense punishable by up to five years' imprisonment.  In this lawsuit, he argued that this restriction infringes his Second Amendment right to keep and bear arms.  The district court agreed.

Since then, however, there have been two sets of intervening developments that bear on this appeal, which the Court has directed the parties to address through supplemental briefing.  *First*, precedent has refined the inquiry to be applied in this Circuit in assessing as-applied Second Amendment challenges to the federal felon-dispossession law.  Under this intervening authority, Williams's constitutional claim turns on factual questions regarding his dangerousness that have not been assessed by the district court and for which there is an inadequate record.  *Second*, the federal felon-dispossession law no longer imposes potentially "permanent disarmament" on Williams, which was the lens through which the district court assessed the claim. Appx12-13.  In light of recent rulemaking by the Department of Justice, the federal prohibition can be lifted as part of an administrative process focused on assessing individualized dangerousness—the same sort of assessment that would otherwise occur in connection with an as-applied constitutional claim

under this Circuit's precedent.  Williams must seek restoration of his firearm rights through that administrative process in the first instance.

## ARGUMENT

### WILLIAMS MUST SEEK RESTORATION OF HIS FIREARM RIGHTS FROM THE DEPARTMENT OF JUSTICE UNDER SECTION 925(C).

**A.    The record is insufficient to determine whether Williams is entitled to restoration of his firearm rights under this Court's precedent.**

At least as a general matter, the disarmament of convicted felons complies with the Second Amendment.  This Court has held that 18 U.S.C. § 922(g)(1) raises constitutional concerns in some unusual applications— specifically, when applied to persons who do not presently pose a danger if armed.  But the district court did not have the benefit of precedent establishing the required inquiry, and the record does not provide sufficient information to allow for a conclusive determination.

**1.    Under this Court's precedent, Williams's Second Amendment claim turns on whether he presently poses a physical danger if armed.**

The Supreme Court has repeatedly provided specific assurances that its precedents do not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," which the Court has described as "presumptively lawful."  *District of Columbia v. Heller*, 554 U.S. 570, 626-27, 627 n.26 (2008).  The Supreme Court's recent decision in *United States v. Rahimi*,

602 U.S. 680 (2024), repeated *Heller*'s statement that laws disarming "felons" are "presumptively lawful." *Id.* at 699 (quotation marks omitted).

In *Rahimi*, the Supreme Court clarified the historical-tradition test for the first time since *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and applied that test to a challenge to 18 U.S.C. § 922(g)(8), which prohibits the possession of firearms by individuals subject to certain domestic violence restraining orders. The Court emphasized that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition," and that those principles "permit[] more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 602 U.S. at 692. Section 922(g)(8), the Court held, is consistent with the historical principle that, "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698. As evidence of that historical principle, the Court relied upon "two distinct legal regimes," "[t]aken together": surety laws, which authorized magistrates to "require individuals suspected of future misbehavior to post a bond," and "going armed" laws, which "provided a mechanism for punishing those who had menaced others with firearms." *Id.* at 693-98. Consistent with the principles underlying those regulatory traditions, the Court held that "[a]n individual found by a court to pose a credible threat to the

physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 702.

Since *Rahimi*, this Court has addressed the constitutionality of the federal felon-dispossession law, Section 922(g)(1), on several occasions. Those precedents have, consistent with the Supreme Court's assurances, upheld Section 922(g)(1)'s facial constitutionality. *See, e.g.*, *United States v. Moore*, 111 F.4th 266, 273 n.5 (3d Cir. 2024), *petition for cert. filed*, No. 24-968 (U.S. Mar. 7, 2025). This Court has held, however, that Section 922(g)(1) is susceptible to as-applied challenges that turn on individualized determinations as to whether the person requesting relief would presently pose a physical danger if armed.[1]

---

[1] Since *Rahimi*, two other courts of appeals—the Fifth and Sixth Circuits—have left open the possibility of case-by-case as-applied challenges to Section 922(g)(1). *See United States v. Diaz*, 116 F.4th 458, 469 (5th Cir. 2024), *petition for cert. filed*, No. 24-6625 (U.S. Feb. 18, 2025); *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). Six courts of appeals—the Second, Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits—have held that Section 922(g)(1) is not susceptible to such challenges. *See Zherka v. Bondi*, ___ F.4th ___, No. 22-1108, 2025 WL 1618440, at *6-23 (2d Cir. June 9, 2025); *United States v. Hunt*, 123 F.4th 697, 705-08 (4th Cir. 2024), *cert. denied*, No. 24-6818, 2025 WL 1549804 (U.S. June 2, 2025); *United States v. Jackson*, 110 F.4th 1120, 1125-29 (8th Cir. 2024), *cert. denied*, No. 24-6517, 2025 WL 1426707 (U.S. May 19, 2025); *United States v. Duarte*, 137 F.4th 743, 755-62 (9th Cir. 2025) (en banc); *Vincent v. Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025), *petition for cert. filed*, No. 24-1155 (U.S. May 8, 2025); *United States v. Dubois*, ___ F.4th ___, No. 22-10829, 2025 WL 1553843 (11th Cir. June 2, 2025).

In *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc) (*Range II*), the en banc Court held Section 922(g)(1) unconstitutional as applied to a civil plaintiff with a nearly 30-year-old state misdemeanor conviction for understating his income on a food-stamp application.  The Court described its decision as "narrow," emphasizing that the plaintiff had been "convicted of food-stamp fraud," that he had "completed his sentence," that his conviction was "[m]ore than two decades" old, that the "record contain[ed] no evidence that [he] pose[d] a physical danger to others," and that he had filed a civil suit seeking "protection from prosecution under § 922(g)(1) for any future possession of a firearm."  *Id.* at 232.

In *Pitsilides v. Attorney General*, 128 F.4th 203, 210-11 (3d Cir. 2025), this Court identified several "upshot[s]" of *Rahimi* and *Range II* in connection with an as-applied challenge brought by a civil plaintiff with criminal convictions for bookmaking, pool selling, and other gambling-related offenses.  Under these precedents, Section 922(g)(1) is consistent with the Second Amendment "as long as a felon continues to present a special danger of misus[ing firearms], in other words, when he would likely pose[] a physical danger to others if armed."  *Id.* at 210 (alterations in original) (quotation marks omitted). Accordingly, "[c]ourts adjudicating as-applied challenges to § 922(g)(1) must consider a convict's entire criminal history and post-conviction conduct

5

indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament." *Id.* at 212.  That inquiry requires a "sufficient" factual record focused on this "individualized determination." *Id.* at 210.

In *Pitsilides*, the Court remanded to district court for further factual development because the record lacked the facts necessary to resolve the central inquiry into individualized dangerousness; the key inquiry, the Court recognized, had been elucidated through "intervening developments" in Second Amendment law, *i.e.*, *Rahimi* and *Range II*, that post-dated the district court's decision.  128 F.4th at 211-13.  In some circumstances, an undisputed criminal history may alone be sufficient to uphold Section 922(g)(1)'s constitutionality: "some offenses may offer conclusive evidence that someone poses" the requisite danger if armed.  *Id.* at 211.[2]  In *Pitsilides*, however, the Court remanded to district court because factual development was necessary. The plaintiff's prior criminal offenses did not necessarily "involve inherently violent conduct" but "they may nonetheless, depending on the context and

---

[2] *See also, e.g.*, *United States v. Williams*, 113 F.4th 637, 661-62 (6th Cir. 2024); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam); *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025); *United States v. Goodnight*, No. 23-1882, 2025 WL 1276000 (3d Cir. May 2, 2025); *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir. May 8, 2025).

circumstances, involve conduct that endangers the physical safety of others."
*Id.* at 213.  The record also did not contain sufficient information about "post-conviction conduct indicative of dangerousness."  *Id.* at 212.

> ### 2.    There has not been sufficient record development to determine whether Williams poses a danger if armed.

The record here reflects that Williams was charged and subsequently convicted in 2005 of driving under the influence (DUI) at the highest rate of intoxication, in violation of 75 Pa. Cons. Stat. § 3802(c).  Appx5, 17.  The record also reflects that Williams faced DUI charges on two earlier occasions and that these charges were dismissed, on one occasion based on a rehabilitation program and in the second case for unknown reasons.  Appx5, 16-17.

This record is insufficient to resolve Williams's Second Amendment claim.  Like the bookmaking, pool selling, and gambling offenses at issue in *Pitsilides*, Williams's DUI offenses "may not involve inherently violent conduct" but "they may nonetheless, depending on the context and circumstances, involve conduct that endangers the physical safety of others." 128 F.4th at 213; *see also, e.g.*, *Holloway v. Attorney General*, 948 F.3d 164, 167, 176 (3d Cir. 2020) ("Drunk driving is a dangerous and often deadly crime."), *abrogated on other grounds by Range II*, 124 F.4th 218.  The dangerousness

assessment "necessarily requires individualized factual findings," *Pitsilides*, 128 F.4th at 213, but no such findings were made here.  *See generally* Appx4-5, 16-17.  In fact, the district court noted that it was "quite concerned about the prospect of granting access to firearms to persons who have demonstrably abused alcohol" in light of "the dangerousness of drunk driving" and "of combining firearm use and alcohol consumption."  Appx11.  Lacking the benefit of *Rahimi* and *Range II*, however, the district court did not give meaningful weight to these considerations or make individualized findings concerning Williams himself.  *Compare* Appx12 (indicating that the district court was looking for "a historical analogue to the present-day prohibition on firearm possession by those convicted of DUIs"), *with Pitsilides*, 128 F.4th at 212 (rejecting the plaintiff's attempt to rely on "a dearth of Founding-era restrictions on firearm possession as a result of illegal gambling").

Moreover, this Court's decision in *Range II* reflects that the dangerousness inquiry "may depend on more than just the nature of [the] prior felony"—courts must also inquire into "post-conviction conduct" to determine whether the person poses "a special danger of misusing firearms."  *Pitsilides*, 128 F.4th at 211 (discussing *Range II*).  The record does not contain comprehensive information about Williams's "post-conviction conduct indicative of dangerousness," *id.* at 212, though the record indicates that

Williams unlawfully possessed firearms for almost a decade after his conviction without seeking relief of any kind from Section 922(g)(1). *See* Appx17-18; Gov't Opening Br. 7, 41; Gov't Reply Br. 24-25. In addition, the dangerousness inquiry requires courts to "'consider[] the individual's entire criminal record—not just the predicate offense for purposes of § 922(g)(1).'" *Pitsilides*, 128 F.4th at 211 (quoting *United States v. Williams*, 113 F.4th 637, 657-58 (6th Cir. 2024)). The record here includes, for example, a Pennsylvania State Police criminal record check that is more than eight years old, Appx60-61, but Williams has declined to authorize the Department of Justice to perform an up-to-date background check. *See* Joint Status Report 4-5, May 19, 2025.

>   **B.     The factual record must be developed pursuant to Section 925(c) in the first instance.**

As in *Pitsilides*, further factual development regarding the plaintiff's individualized dangerousness is warranted. The Department of Justice has recently re-established an administrative process, pursuant to 18 U.S.C. § 925(c), through which convicted felons can regain their right to possess firearms. The district court has not had an opportunity to address the impact of that important development on Williams's constitutional claims. As a "court of review, not of first view," this Court could remand the case to the district court to address the impact of the new administrative process.

*O'Hanlon v. Uber Techs., Inc.*, 990 F.3d 757, 762 n.3 (3d Cir. 2021) (quotation

marks omitted).  If this Court reaches the issue in the first instance, however, it

should hold that Williams must avail himself of the restoration process that is

now available under Section 925(c)—which, among other things, guarantees

him a right to judicial review in federal district court should his request be

denied.

> **1.   Section 925(c) addresses the constitutional concerns this Court has identified with individual applications of Section 922(g)(1).**

Congress has addressed the constitutional concerns this Court has

identified with Section 922(g)(1) through 18 U.S.C. § 925(c).  Under that

provision, a person who is disqualified from possessing firearms, including a

person disqualified under Section 922(g)(1), "may make application to the

Attorney General for relief from the disabilities."  18 U.S.C. § 925(c).  "[T]he

Attorney General may grant such relief" if the applicant shows that "the

circumstances regarding the disability, and the applicant's record and

reputation, are such that the applicant will not be likely to act in a manner

dangerous to public safety and that the granting of the relief would not be

contrary to the public interest."  *Id.*  A person whose application is denied may

seek judicial review in federal district court.  *See id.*

Before 2025, that statutory authority had been delegated to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). *See United States v. Bean*, 537 U.S. 71, 74 (2002). Since 1992, however, appropriations statutes have included provisos prohibiting ATF from using appropriated funds to act on Section 925(c) applications. *See id.* In combination, the delegation and the appropriations bar effectively suspended the Section 925(c) relief-from-disabilities program.

Recognizing that the appropriations bar applies only to ATF, the Attorney General recently issued an interim final rule withdrawing the delegation of authority to ATF to administer Section 925(c). *See* Withdrawing the Attorney General's Delegation of Authority, 90 Fed. Reg. 13,080 (Mar. 20, 2025); *cf. Range II*, 124 F.4th at 245 n.22 (Matey, J., concurring) (calling for an "examin[ation]" of "the propriety of continuing to delegate this responsibility [for reviewing Section 925(c) applications] to the Justice Department's Bureau of Alcohol, Tobacco, Firearms and Explosives when that agency has been thwarted from carrying out its duty"). The Attorney General described the withdrawal of that delegation as an "appropriate first step"; the Department of Justice "anticipates future actions, including rulemaking consistent with applicable law, to give full effect to 18 U.S.C. 925(c) while simultaneously

ensuring that violent or dangerous individuals remain disabled from lawfully acquiring firearms." 90 Fed. Reg. at 13,083.

By providing a mechanism through which convicted felons can regain their ability to possess firearms, Section 925(c) addresses the constitutional concerns identified in this Court's precedent about the breadth and duration of the restriction imposed by Section 922(g)(1). The connection is straightforward. Under this Court's precedent, if the individualized factual record establishes that someone does not "pose[] a physical danger to others," the statute may not be applied to that person. *Range II*, 124 F.4th at 232. Now that Section 925(c) is operative, a person who fits that description may make the requisite factual showing by applying for relief using a mechanism set forth by Congress.

An operative Section 925(c) also renders Section 922(g)(1)'s application no longer "indefinite or permanent" in a sense that would materially distinguish it from the temporary restriction at issue in *Rahimi*. *See* Suppl. Briefing Order, May 21, 2025. It is no longer the case that, as the district court stated, this case could be viewed as implicating "permanent disarmament" for Williams's offenses. Appx12-13. Taking Section 922(g)(1) and Section 925(c) together—as is necessary to evaluate the constitutionality of the scheme Congress enacted—the federal prohibition on firearm possession by felons is,

like the restriction addressed in *Rahimi*, a condition that lasts only so long as the person subject to it continues to present a physical danger if armed. Immediately after conviction for a felony, disarmament is consistent with the Second Amendment for at least as long as that person is "still serving a criminal sentence," including through the completion of supervised release, parole, or probation. *United States v. Quailes*, 126 F.4th 215, 221 (3d Cir. 2025); *see also Moore*, 111 F.4th at 269-72. If, after serving the sentence, an individual felon's dangerousness with firearms were to dissipate, Section 925(c) would entitle him to relief from Section 922(g)(1)'s disability. Section 922(g)(1) would continue to apply only so long as the individual felon's dangerousness persists, a circumstance where disarmament remains justified for the reasons addressed in *Rahimi*, *Range II*, and *Pitsilides*.

Moreover, Section 925(c) is more workable than a regime of as-applied challenges. As the Supreme Court has recognized, "[w]hether an applicant is 'likely to act in a manner dangerous to public safety' presupposes an inquiry into that applicant's background—a function best performed by the Executive, which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation." *Bean*, 537 U.S. at 77; *see also Pontarelli v. U.S. Dep't of the Treasury*, 285 F.3d 216, 230-31 (3d Cir. 2002) (en banc) ("courts possess neither the resources to conduct the requisite investigations nor the expertise to

predict accurately which felons may carry guns without threatening the public's safety"). Granting relief only to persons who have applied for it before violating the law also provides a workable mechanism for ensuring that law enforcement officers, firearms licensees, and felons themselves have clear notice and can thereby ensure that their conduct comports with the Constitution. *See Range II*, 124 F.4th at 280-85 (Krause, J., concurring in the judgment).

### 2. Williams must seek relief pursuant to Section 925(c).

**a.** As explained, the factual record is currently inadequate to resolve the dispositive question whether Williams would pose a danger if armed. *See supra* Part A. In light of this litigation and the recent reinvigoration of the restoration process set forth in Section 925(c), the Department of Justice invited Williams to request relief pursuant to Section 925(c), but he has declined to avail himself of this opportunity to substantiate his assertion of non-dangerousness. *See* Joint Status Report 4-5. Where, as here, a person refuses to seek relief pursuant to Section 925(c), he lacks a viable claim for prospective as-applied judicial relief from Section 922(g)(1).

Several considerations indicate that a fact-specific inquiry into an individual felon's dangerousness should be resolved in the first instance by the Department of Justice pursuant to Section 925(c). Principles of constitutional

avoidance require courts not to "anticipate a question of constitutional law in advance of the necessity of deciding it." *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (quoting *Liverpool, N.Y. & Phila. S.S. Co. v. Commissioners of Emigration*, 113 U.S. 33, 39 (1885)). Proceeding under Section 925(c) would obviate the possibility of declaring an Act of Congress unconstitutional: Williams would either obtain complete relief via Section 925(c) or, if he were denied relief and that denial were upheld on judicial review, he would lack a viable constitutional claim because the record would indicate that he is dangerous if armed.

Moreover, Williams's pre-enforcement challenge is unripe. The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 808 (2003) (quotation marks omitted). When assessing ripeness, "it is the situation now rather than the situation at the time of the decision under review that must govern." *Anderson v. Green*, 513 U.S. 557, 559 (1995) (per curiam) (alteration and quotation marks omitted). Accordingly, when developments post-dating the decision under review render a claim no longer fit for judicial resolution, the appeal should be dismissed as unripe. *See, e.g.*, *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) (holding that case was unripe after "any chilling

15

effect" had "dissipated" on appeal). Williams invoked the district court's jurisdiction based on his assertion that, if he were to possess a firearm, he would risk "arrest, prosecution, fine and incarceration, at Defendants' instigation and direction." Compl. ¶ 32, Dkt. No. 1. Because Williams can now seek relief via Section 925(c), however, his pre-enforcement lawsuit depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Trump*, 592 U.S. at 131 (quotation marks omitted)—in particular, the contingency that Williams would fail to obtain relief via Section 925(c). And even if Williams were to apply for relief under Section 925(c) and be denied, the administrative process would sharpen the issues by making available to the reviewing court a Justice Department investigation and analysis of Williams's dangerousness.

Additionally, and relatedly, while the Section 925(c) process could potentially later place the dangerousness issue back before a district court, resolving the issue before that process has occurred would be inconsistent with the principle that someone is generally not "entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1969) (quotation marks omitted). As the Supreme Court unanimously recognized in *Bean*, Congress directed that the Department of Justice should be "the primary

decisionmaker" under Section 925.  537 U.S. at 77.  The process set forth in

Section 925(c) protects the Department of Justice's "authority" to resolve the

dangerousness issue in the first instance "before [the Department] is haled into

federal court"—a consideration that applies "with particular force" given the

Department's "special expertise" in conducting a holistic assessment as to

whether a particular felon's background renders him dangerous if armed.

*McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *cf. Reiter v. Cooper*, 507 U.S.

258, 268-69 (1993) (explaining that, even if a claim is not subject to an

administrative exhaustion requirement, the doctrine of "primary jurisdiction"

provides that the claim can appropriately be referred to "an administrative

agency" with "special competence" to address it).  Exhausting claims of

individualized dangerousness also "promotes efficiency" by enabling the

Department to conduct an appropriate investigation that may be "resolved

much more quickly and economically" than "litigation in federal court."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  In analogous contexts, courts have

recognized that parties must petition the Attorney General for relief before

seeking judicial review.  *See Sisley v. DEA*, 11 F.4th 1029, 1035-36 (9th Cir.

2021) (requiring administrative exhaustion of a request to reschedule

marijuana); *Washington v. Barr*, 925 F.3d 109, 115-20 (2d Cir. 2019) (same).

In any event, there is no Second Amendment violation on the merits. To the extent the basis for Williams's constitutional claim at the time the district court ruled was that the statutory scheme did not provide him any opportunity to make an individualized showing of non-dangerousness, *see, e.g.*, Compl. ¶¶ 47-50 (relying on the lack of "any review under 18 U.S.C. § 925(c)"), that claim is moot. *See U.S. Dep't of Treasury v. Galioto*, 477 U.S. 556, 559 (1986) (holding that Congress's amendment of Section 925(c) during litigation provided a new "administrative remedy" to the plaintiff, which "significantly alter[ed] the posture" of the case and mooted plaintiff's constitutional challenges).

Assuming Williams's constitutional claim were understood as encompassing a challenge to the adequacy of the opportunity that is now available to him under Section 925(c), the relevant merits issue would be whether this provision affords a constitutionally adequate opportunity for individual felons to show they are non-dangerous. It does.

The Second Amendment does not preclude Congress from disarming felons up until they obtain a favorable decision on an application for relief under Section 925(c). A felon who applies for relief, is denied, and fails to overturn that denial on judicial review is presently dangerous and therefore may be prohibited from possessing firearms. And a felon who refuses to apply

for relief may properly be disarmed on the basis that he has deprived the Department of Justice (and, on judicial review, the federal courts) of information necessary to evaluate whether he is presently dangerous. As the Sixth Circuit persuasively explained, historically, "governments labeled whole classes as presumptively dangerous." *Williams*, 113 F.4th at 657. Assuming the Second Amendment requires an opportunity for individuals to "demonstrate that their particular possession of a weapon posed no danger to peace," *id.*, "[o]ur nation's history shows that the government may require individuals in a disarmed class to prove they aren't dangerous in order to regain their right to possess arms." *Id.* at 662. Congress comported with that history when it disarmed felons as a class but enacted a mechanism, Section 925(c), allowing individual felons to show prospectively that the class-wide presumption does not apply to their situation. *See id.* at 661 ("Were the ATF program operational and funded, it might provide disarmed felons the chance required by the Second Amendment to make an individualized showing of qualification to keep and bear arms"); *see also id.* at 662 (reasoning that, consistent with the historical evidence, an individual felon seeking relief from Section 922(g)(1) bears the "burden" of "show[ing] he's not dangerous").

While there is strong historical evidence that the dangerousness principle "is satisfied whether the official" evaluating dangerousness "is an executive

agent or a court," *Williams*, 113 F.4th at 661, Section 925(c) does not allow an applicant's firearm rights to remain suspended based solely on an Executive Branch determination. Rather, it provides for judicial review of any decision denying relief, ensuring that felons have ample opportunity to show they are non-dangerous and therefore entitled to restoration of their firearm rights. *See* 18 U.S.C. § 925(c) (establishing "judicial review" of decisions denying relief, which includes "discretion" for the reviewing court to "admit additional evidence").

At a minimum, regardless of whether all felony convictions can conclusively disarm persons until they obtain Section 925(c) relief, this Court's precedent makes clear that an individualized dangerousness assessment is necessary where, as here, the predicate offense "may not involve inherently violent conduct" but may nonetheless "involve conduct that endangers the physical safety of others." *Pitsilides*, 128 F.4th at 213. It does not violate the Second Amendment to require persons convicted of such offenses to present individualized facts to the Department of Justice substantiating their assertion of non-dangerousness.

**b.** It is unclear why Williams has thus far declined to avail himself of the relief process that has been made available to him, but the reasons he has given do not withstand scrutiny. Williams has asserted that he "would have

no basis under the law to petition pursuant to Section 925(c)" in light of the district court's conclusion that Section 922(g)(1) is unconstitutional as applied to him. Joint Status Report 6-7. But there is no question that, as a statutory matter, Williams's "conviction disqualified him from possessing a firearm under 18 U.S.C. § 922(g)(1)." Appx5. The government has invited Williams to apply for relief under Section 925(c) because that could obviate the need for further litigation of the dispositive dangerousness issue for which there is presently an inadequate record.

Williams errs in asserting that "relief is not currently available pursuant to Section 925(c)." Joint Status Report 6. The interim final rule discussed above restores the Department of Justice's authority to grant relief under Section 925(c). Indeed, the Attorney General recently granted relief to 10 individuals. *See* Granting of Relief; Federal Firearms Privileges, 90 Fed. Reg. 17,835 (Apr. 29, 2025). Other individuals have applied for relief and the Department is processing their applications. This includes at least one plaintiff with an appeal pending in this Court. *See* Consent Motion to Place Appeal in Abeyance and Continue Oral Argument at 3, *Fontana v. Attorney General*, No. 24-2526 (3d Cir. Apr. 15, 2025); Order Granting Abeyance Motion, *Fontana*, No. 24-2526 (May 5, 2025).

The Department has informed Williams's counsel about a mechanism for obtaining relief that he may avail himself of and that would enable the Department to make an informed decision about whether restoring his firearm rights is appropriate. The Department has further informed counsel that, should Williams apply, the Department's determination would be made based on Section 925(c)'s statutory standard for relief as applied to him based on information and documents that would be collected by the Department, including (but not limited to) an authorization for the release of information for the Department to perform an up-to-date background check. *Cf.* 27 C.F.R. § 478.144 (2024) (prior regulations, withdrawn by the interim final rule discussed above, detailing ATF's application process).

For these reasons, Williams does not assist his case in arguing that "rulemaking" to implement Section 925(c) "has not even been initiated." Joint Status Report 6. The Department has been clear that, while it can provide no guarantees as to the outcome, it is prepared to consider relief under Section 925(c) for Williams even in the absence of further rulemaking. All Williams needs to do is provide the information and documentation the Department would request to assist it in assessing his request and ensuring that it is restoring firearm rights in a way that does not jeopardize public safety. If Williams prefers to await additional details about the Department's

22

implementation of Section 925(c) before applying, that does not change the conclusion that he should be required to pursue this statutory avenue for relief before pressing his constitutional claim through litigation.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
DAVID METCALF
  *United States Attorney*
MICHAEL S. RAAB

 */s/ Kevin B. Soter*
KEVIN B. SOTER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7222*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *California Bar No. 324524*
  *(202) 305-1754*
  *kevin.b.soter@usdoj.gov*

June 2025

## COMBINED CERTIFICATIONS

1.    Government counsel are not required to be members of the bar of this Court.

2.    This brief complies with this Court's May 21 order because it contains 4,930 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f).  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Calisto MT 14-point font, a proportionally spaced typeface.

3.    The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

4.    This document was scanned for viruses using CrowdStrike Falcon Sensor version 7.24.19607.0, and no virus was detected.

*/s/ Kevin B. Soter*
Kevin B. Soter