No. 24-1091

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

EDWARD A. WILLIAMS,

*Plaintiff-Appellee*,

v.

ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

**BRIEF OF AMICI CURIAE SECOND AMENDMENT FOUNDATION, CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS, AND SECOND AMENDMENT LAW CENTER, INC. IN SUPPORT OF PLAINTIFF-APPELLEE**

C.D. Michel
Anna M. Barvir
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Ste. 200
Long Beach, CA 90802
cmichel@michellawyers.com

Konstadinos T. Moros
SECOND AMENDMENT FOUNDATION
12500 NE 10th Pl.
Bellevue, WA 98005
(425) 454-7012
kmoros@saf.org

*Counsel for Amici Curiae*

December 17, 2025

## CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1(a) of the Federal Rules of Appellate Procedure, counsel for amici curiae certifies that Second Amendment Foundation, California Rifle & Pistol Association, Incorporated, Citizens Committee for the Right to Keep and Bear Arms, and Second Amendment Law Center, Inc., are nonprofit organizations and thus have no parent corporations and no stock.

Date: December 17, 2025

**MICHEL & ASSOCIATES, P.C.**

/s/ Anna M. Barvir
Anna M. Barvir
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ..... i

Table of Contents ..... ii

Table of Authorities ..... iii

Interest of Amici Curiae ..... 1

Introduction ..... 2

Argument ..... 4

I. Historical Regulations on Carrying Firearms While Intoxicated Define the Limits of Our Historical Tradition Will Tolerate ..... 4

II. This Court Must Not Turn to Higher Levels of Generality Given That Close Analogues Exist ..... 6

Conclusion ..... 8

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Commonwealth v. Marquis*,
495 Mass. 434 (2025) .......... 7

*Range v. Attorney General*,
124 F.4th 218 (3d Cir. 2024) .......... 3

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) .......... 4, 6, 7, 8

*Nguyen v. Bonta*,
140 F.4th 1237 (9th Cir. 2025) .......... 8

*United States v. Connelly*,
117 F.4th 269 (5th Cir. 2024) .......... 4, 7

*United States v. Daniels*,
77 F.4th 337 (5th Cir. 2023) .......... 5

*United States v. Harris*,
144 F.4th 154 (3d Cir. 2025) .......... 5

*United States v. Rahimi*,
602 U.S. 680 (2024) .......... 6, 8

*United States v. Seiwert*,
No. 23-2553, 2025 U.S. App. LEXIS 23667 (7th Cir. Sept. 12, 2025) .......... 4

*Wolford v. Lopez*,
116 F.4th 959 (9th Cir. 2024) .......... 5, 7

### Statutes

18 U.S.C. § 922 .......... 2, 3, 4

### Other Authorities

Mocsary, George A., *The Wrong Level of Generality: Misapplying Bruen to Young-Adult Firearm Rights*, 103 Wash. U. L. Rev. Online (2025) .......... 6

## INTEREST OF AMICI CURIAE[1]

Second Amendment Foundation ("SAF") is a non-profit membership organization founded in 1974 with over 720,000 members and supporters in every state of the union. Its purposes include education, research, publishing, and legal action focusing on the constitutional right to keep and bear arms. Currently, SAF is involved in several Second Amendment-related lawsuits and thus has great interest in the outcome of this case.

Founded in 1875, California Rifle & Pistol Association, Incorporated, is a nonprofit organization that seeks to defend the Second Amendment and advance laws that protect the rights of individual citizens. In service of its mission to preserve the constitutional and statutory rights of gun ownership, California Rifle & Pistol Association regularly participates as a party or amicus in Second Amendment litigation.

The Citizens Committee for the Right to Keep and Bear Arms is a non-profit corporation organized under Section 501(c)(4) of the Internal Revenue Code, dedicated to promoting the benefits of the right to bear arms. This Court's interpretation of the Second Amendment directly impacts the Committee's organizational interests, as well as the Committee's members and supporters, who enjoy exercising their Second Amendment rights.

Second Amendment Law Center, Inc. is a nonprofit corporation headquartered

[1] The parties have given their consent to the filing of this brief. No counsel for a party authored the brief in whole or in part. No party, counsel for a party, or any person other than amici and their counsel made a monetary contribution intended to fund the preparation or submission of this brief.

in Henderson, Nevada. The Second Amendment Law Center is dedicated to promoting and defending the individual right to keep and bear arms as envisioned by the Founding Fathers. Its purpose is to defend these rights in state and federal courts across the United States. It also aims to educate the public about the benefits of firearm ownership and to provide policymakers, judges, and the public with accurate historical, criminological, and technical information about firearms.

## INTRODUCTION

This case concerns the constitutionality of 18 U.S.C. § 922(g)(1) as applied to an individual whose sole disqualifying offense is a decades-old misdemeanor conviction for driving under the influence, where no one was injured, no property damage occurred, and there is no evidence of firearms-related misconduct. At least as to Mr. Williams, the Second Amendment inquiry is straightforward.

Even if historical tradition would have permitted disarming him based on his drunk driving conviction—and that proposition is doubtful—any indicia of dangerousness arising from that offense is long in the past. His conviction occurred 20 years ago, and the record contains no evidence that he poses a present threat to others. Nothing in our historical tradition supports permanently disarming a law-abiding citizen based on a nonviolent misdemeanor committed decades earlier.

Certainly, the Government must know this. So it stretches historical analysis beyond the breaking point. It cannot identify past laws that would justify disarming people based on their being inebriated decades ago, as no such laws exist. Instead, the Government has argued two "independent principles." Reply Brief for Appellants at 14-15, *Williams v. Att'y Gen. U.S.*, No. 24-1091 (3d Cir. June 18, 2024). First, that

historical tradition allows Congress to disarm those convicted of serious crimes, and second, that it may also disarm categories of people whose convictions indicate they would pose a danger if armed. *Id.*

Of course, this Court already rejected that argument in *Range v. Attorney General*, when it rebuffed categorical disarmament untethered from present dangerousness and declined "to defer blindly to § 922(g)(1) in its present form." *Id.* at 124 F.4th 218, 230-32 (3d Cir. 2024). Current dangerousness is the relevant metric, and Mr. Williams is not dangerous. As in *Range*, his offending conduct took place "more than two decades" ago, and the "record contains no evidence" that he presently "poses a physical danger to others." *Id.* at 232.

The historical record most relevant to this case—regulations governing the intersection of firearms and alcohol—further demonstrates why lifetime disarmament is impermissible here. From the Founding through Reconstruction, legislatures addressed the risks associated with intoxication through narrow restrictions tied to present impairment. They did not impose permanent bans based on long-past conduct. Nor did they treat a single episode of nonviolent intoxication as evidence of enduring dangerousness.

And because history already defines the limits of permissible regulation in this context, the Court need not—and should not—resort to abstract principles or higher and increasingly vague levels of generality to sustain § 922(g)(1) as applied to Mr. Williams. Faithful application of the Second Amendment does not permit his permanent disarmament.

## ARGUMENT

### I. HISTORICAL REGULATIONS ON CARRYING FIREARMS WHILE INTOXICATED DEFINE THE LIMITS OF OUR HISTORICAL TRADITION WILL TOLERATE

"In some cases, [the historical] inquiry will be fairly straightforward . . . when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1, 26 (2022). And when the same or similar problem was addressed in the past through "materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id.* at 26-27.

Both conditions are present here. The dangers posed by the combination of alcohol abuse and firearms are not new, and legislatures have consistently tackled that problem since the Founding. But as other circuits have correctly recognized, our historical tradition supports, "at most, a ban on carrying firearms while an individual is *presently* under the influence." *United States v. Connelly*, 117 F.4th 269, 282 (5th Cir. 2024); *see also United States v. Seiwert*, No. 23-2553, 2025 U.S. App. LEXIS 23667, at *29 (7th Cir. Sept. 12, 2025) (§ 922(g)(3) is constitutional as applied to an individual whose cognitive abilities are "presently and persistently impaired").

That tradition began in the colonial era. Laws then existed to prevent militiamen from becoming intoxicated while carrying their arms. "A 1746 New Jersey law prohibited the sale of liquor to members of the militia while on duty; a 1756 Delaware law prohibited the militia from meeting within half a mile from a tavern and

prohibited the sale of liquor at any militia meeting; and a 1756 Maryland law prohibited the sale of liquor within five miles of a training exercise for the militia." *Wolford v. Lopez*, 116 F.4th 959, 985 (9th Cir. 2024). The same approach persisted through Reconstruction, as "[s]ome states—Kansas in 1867, Missouri in 1883, and Wisconsin in 1883—prohibited the carry of firearms while intoxicated." *Id.*

But this tradition also had clear limits. As the Fifth Circuit put it, "our history and tradition may support some limits on an intoxicated person's right to carry a weapon, but it does not justify disarming a sober citizen based exclusively on his past drug usage." *United States v. Daniels*, 77 F.4th 337, 340 (5th Cir. 2023). Earlier generations addressed the same problem differently than modern law does; that is, by restricting carry by those who are intoxicated, not by banning possession or ownership of guns by anyone who was publicly drunk in the past. The modern law goes too far, particularly as applied to an individual like Williams whose last conviction is long in the past.

This Court acknowledged this history in another case, noting that many laws "deemed mere drunkenness sufficient to justify *temporary* disarmament." *United States v. Harris*, 144 F.4th 154, 163 (3d Cir. 2025) (emphasis added). "Indeed, at the Founding, the consensus was that surety laws extended to all 'common drunkards,' not just those who acted abusively." *Id.* But what that panel did not claim, nor does the historical record provide any support for, is the idea that earlier generations of Americans would have tolerated disarming anyone—especially in perpetuity—because they had been publicly drunk long ago.

Nor is there any evidence that Mr. Williams ever acted dangerously with a firearm. At most, he made the irresponsible decision to drive under the influence some 20 years. But irresponsibility alone is not a constitutionally firm ground for disarmament. *See United States v. Rahimi*, 602 U.S. 680, 701 (2024) ("'Responsible' is a vague term. It is unclear what such a rule would entail. Nor does such a line derive from our case law."). Even if it were relevant, Mr. Williams has proven, in the many years since, that his drunk driving was not part of a continuing pattern.

In short, our historical tradition of regulating the intersection of guns and alcohol supports, at most, disarming people who are *currently* inebriated. But lifetime disarmament when an individual has shown they no longer have any issues with alcohol fails to apply "faithfully the balance struck by the founding generation to modern circumstances." *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29).

## II. THIS COURT MUST NOT TURN TO HIGHER LEVELS OF GENERALITY GIVEN THAT CLOSE ANALOGUES EXIST

Given that clear historical laws existed that dealt with armed drunks, this Court must not allow the Government to move to higher (and vaguer) levels of generality, as it attempts to do with the two "principles" it argues justify Mr. Williams's permanent disarmament. A core interpretive rule that can be discerned from *Bruen* and *Rahimi* is that when a close historical analogue exists to the modern technology or societal problem at issue, lower courts may not resort to more stretched analogies to avoid the inconvenient fact that the closer analogue does not support their position. Indeed, *Bruen*'s analogical method "instructs courts to use closely matching analogues where available and to abstract up only when necessary." George A. Mocsary, *The Wrong*

*Level of Generality: Misapplying Bruen to Young-Adult Firearm Rights*, 103 Wash. U. L. Rev. Online 100, 101 (2025); *id.* ("*Bruen* directs courts to begin with the text, and then to look for distinctly similar Founding-era firearm regulations before resorting to higher levels of abstraction.").

This abuse of levels of generality has become a widespread issue. For example, in a case (in part) about new carry bans in restaurants that happen to serve alcohol in Hawaii and California, the Ninth Circuit ignored the lack of historical carry restrictions in bars and taverns. Instead, it pointed to colonial laws that restricted the sale of liquor to militia members and a few cities that banned carry in ballrooms, and upheld the modern laws. *Wolford*, 116 F.4th at 986. It also ignored that earlier generations solved this problem by barring only presently intoxicated people from carrying arms, not sober individuals who happened to be carrying firearms in proximity to alcohol. *See Connelly*, 117 F.4th at 282.

In another case about non-resident firearms carry and the onerous permitting processes that included wait times spanning over eight months (even for those with a carry permit in their home state), the Supreme Judicial Court of Massachusetts upheld the non-resident permit requirement, citing "going armed" and surety laws. *Commonwealth v. Marquis*, 495 Mass. 434, 456 (2025). In doing so, it ignored the far closer historical analogue: the extensive historical tradition of "traveler's exception" laws, which exempted visitors from other states from concealed carry restrictions. *See* Brief for Nat'l Rifle Ass'n of Am. & Second Amend. Found. as Amici Curiae at 16-28, *Commonwealth v. Donnell*, No. SJC-13561 (Mass. filed August 16, 2024) (discussing many traveler's exception laws).

When a close historical analogue is apparent, courts should not rise to higher levels of generality, particularly when earlier generations addressed the same problem in a different way (e.g., exempting travelers from carry restrictions rather than requiring them to get a permit). That is also exactly what the Supreme Court has already suggested, but lower courts are ignoring its guidance. *See Bruen*, 597 U.S. at 26-27 ("[I]f earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional."). The generalized analogues of the "more nuanced approach" should be reserved only for those cases that present a truly new societal problem or technological change that lacks a distinctly similar analogue in our history. *Id.* at 27; *see also Nguyen v. Bonta*, 140 F.4th 1237, 1245 (9th Cir. 2025) ("[T]he modern problems that California identifies as justification for its one-gun-a-month law are perhaps different in degree from past problems, but they are not different in kind. Therefore, a nuanced approach is not warranted.").

Returning to this case, having identified the proper analogues dealing with alcohol and guns, this Court has no need to go find other "things that are green." *Bruen,* 597 U.S. at 29. It should stop at those analogues and faithfully apply "the balance struck by the founding generation to modern circumstances." *Id.* at 29 n.7. Accepting the Government's arguments here would "read a principle at such a high level of generality that it waters down the right." *Rahimi*, 602 U.S. at 740. (Barrett, J., concurring). Our historical tradition does not tolerate disarming Mr. Williams for life.

## CONCLUSION

This case presents an excellent opportunity for this Court to clarify the limits of

the analogical analysis when historical limits on government power are clear. It should seize that opportunity.

Dated: December 17, 2025

Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

/s/ Anna M. Barvir
Anna M. Barvir
Michel & Associates, P.C.
180 E. Ocean Blvd., Ste. 200
Long Beach, CA 90802
abarvir@michellawyers.com

Konstadinos T. Moros
SECOND AMENDMENT FOUNDATION
12500 NE 10TH Pl.
Bellevue, WA 98005
kmoros@saf.org

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 1,862 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(f).[2]

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point, proportionately spaced Garamond font.

I certify that the text of the electronic brief and the hard copies of the brief are identical.

I certify that the PDF was scanned with Windows Defender Antivirus version 102.2504.16004.0, and according to the program, the document is virus free.

I certify that I am admitted to practice in the Third Circuit Court of Appeals, having been admitted on July 10, 2023, and that I am a member in good standing.

Date: December 17, 2025

**MICHEL & ASSOCIATES, P.C.**

/s/ Anna M. Barvir
Anna M. Barvir
*Counsel for Amici Curiae*

[2] Per the local rules of this Court at L.A.R. 29.1(b), the statement required by former Fed. R. App. P. 29(c)(4), which is now codified at Fed. R. App. P. 29(a)(4)(D), does not count toward the word limitations.

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2025, I served the foregoing brief via the CM/ECF system for the United States Court of Appeals for the Third Circuit, which will distribute the brief to all attorneys of record in this case. No privacy redactions were necessary.

Date: December 17, 2025

**MICHEL & ASSOCIATES, P.C.**

/s/ Anna M. Barvir
Anna M. Barvir
*Counsel for Amici Curiae*