# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 24-1091 & 24-1719

| EDWARD WILLIAMS, | UNITED STATES OF AMERICA |
|---|---|
| v. | v. |
| ATTORNEY GENERAL | JAMES BOST |
| ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA No. 2:17-cv-02641 | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA No. 2:21-ccr-00030-001 |

## BRIEF OF AMICI CURIAE
## NEW JERSEY AND DELAWARE

KATHLEEN JENNINGS
*Attorney General of Delaware*

IAN R. LISTON
*Director of Impact Litigation*

Jennifer Kate Aaronson
Vanessa L. Kassab
*Deputy Attorneys General*

Delaware Department of Justice
820 N. French Street
Wilmington, Delaware 19801

MATTHEW J. PLATKIN
*Attorney General of New Jersey*

JEREMY M. FEIGENBAUM
*Solicitor General*

STEPHEN EHRLICH
*Deputy Solicitor General*

Viviana M. Hanley
Jake Mazeitis
Giancarlo G. Piccinini
*Deputy Attorneys General*

R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625-0112

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES.....................................................................iii

INTRODUCTION AND STATEMENT OF INTEREST...........................1

ARGUMENT...............................................................................................3

  I.  Williams And Bost May Be Disarmed Based Solely
      On Their Predicate Convictions. ......................................................4

    A. Legislatures Can At The Very Least Categorically Disarm
        Individuals Who Commit Dangerous Felonies..........................4

    B. Bost's Terroristic Threats Conviction And Williams's
        Recidivist DUI Conviction Fit That Tradition. ..........................7

  II.  Courts May Consider Facts Beyond The Conviction Alone
       In Assessing As-Applied Challenges To §922(g)(1). ......................12

CONCLUSION .........................................................................................16

CERTIFICATION OF BAR MEMBERSHIP...........................................18

CERTIFICATION OF COMPLIANCE.....................................................19

CERTIFICATION OF SERVICE.............................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*App. of Marvin,*
  249 A.2d 377 (N.J. 1969) ........................................................ 1

*Begay v. United States,*
  553 U.S. 137 (2008) .............................................................. 12

*Commonwealth v. Randolph,*
  343 A.3d 1248 (Pa. Super. Ct. 2025) ..................................... 1

*Holloway v. Att'y Gen. U.S.,*
  948 F.3d 164 (3d Cir. 2020) ................................................. 12

*Kanter v. Barr,*
  919 F.3d 437 (7th Cir. 2019) ........................................ *passim*

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) ................................................................... 4

*Pitsilides v. Barr,*
  128 F.4th 203 (3d Cir. 2025) ................................... 7, 17, 18

*Range v. Att'y Gen. U.S.,*
  124 F.4th 218 (3d Cir. 2024) ....................................... *passim*

*Riccio v. Sentry Credit,*
  954 F.3d 582 (3d Cir. 2020) ................................................. 16

*State v. Huntly,*
  25 N.C. 418 (1843) ............................................................ 9, 10

*State v. Middleton,*
  362 A.2d 602  (N.J. Super. Ct. App. Div. 1976) ................... 1

*State v. Robinson,*
　251 A.2d 552 (Del. 1969) ........................................................ 1

*United States v. Alaniz,*
　146 F.4th 1240 (5th Cir. 2025) .............................................. 18

*United States v. Bullock,*
　123 F.4th 183 (5th Cir. 2024) .................................................. 7

*United States v. Contreras,*
　125 F.4th 725 (5th Cir. 2025) ............................................... 18

*United States v. Duarte,*
　137 F.4th 743 (9th Cir. 2025) ............................................... 16

*United States v. Dubois,*
　139 F.4th 887 (11th Cir. 2025) ............................................. 17

*United States v. Gay,*
　98 F.4th 843 (7th Cir. 2024) ................................................. 17

*United States v. Giglio,*
　126 F.4th 1039 (5th Cir. 2025) ............................................. 16

*United States v. Goins,*
　118 F.4th 794 (6th Cir. 2024) ............................................... 13

*United States v. Goins,*
　647 F. Supp. 3d 538 (E.D. Ky. 2022) ................................... 12

*United States v. Gore,*
　118 F.4th 808 (6th Cir. 2024) ............................................... 11

*United States v. Harris,*
　144 F.4th 154 (3d Cir. 2025) .................................... 10, 13, 14

*United States v. Hunt,*
　123 F.4th 697 (4th Cir. 2024) ............................................... 16

*United States v. Jackson,*
    110 F.4th 1120 (8th Cir. 2024) ........................................................... 16

*United States v. Johnson,*
    158 F.4th 200 (D.C. Cir. 2025) ........................................................... 17

*United States v. Kimble,*
    142 F.4th 308 (5th Cir. 2025) ........................................................... 3, 5

*United States v. Langston,*
    110 F.4th 408 (1st Cir. 2024) ........................................................... 17

*United States v. Moore,*
    111 F.4th 266 (3d Cir. 2024) ........................................................... 10

*United States v. Ogilvie,*
    153 F.4th 1098 (10th Cir. 2025) ........................................................... 11

*United States v. Quailes,*
    126 F.4th 215 (3d Cir. 2025) ........................................................... 16, 18

*United States v. Quiroz,*
    125 F.4th 713 (5th Cir. 2025) ........................................................... 11

*United States v. Rahimi,*
    602 U.S. 680 (2024) ........................................................... 5, 9, 10, 14

*United States v. Schrock,*
    No. 24-2346, 2025 WL 2682527 (3d Cir. Sep. 19, 2025) ........................ 11

*United States v. Simpson,*
    152 F.4th 611 (5th Cir. 2025) ........................................................... 13

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010) ........................................................... 6, 7

*United States v. Walters,*
  151 F.4th 122 (3d Cir. 2025)................................................17

*United States v. White,*
  No. 23-3013, 2025 WL 384112 (3d Cir. Feb. 4, 2025)..........17

*United States v. Williams,*
  113 F.4th 637 (6th Cir. 2024) ......................................*passim*

*Vincent v. Bondi,*
  127 F.4th 1263 (10th Cir. 2025) ..........................................17

*Williams v. Barr,*
  379 F. Supp. 3d 360 (E.D. Pa. 2019) ...................................11

*Zherka v. Bondi,*
  140 F.4th 68 (2d Cir. 2025)...................................................16

**Statutes**

18 Pa. Stat. & Cons. Stat. Ann. §2706(a)(1) .............................7

18 U.S.C. §922 (g)(1).......................................................*passim*

Del. Code Ann. Tit. 11, §1448 ..................................................1

N.J. Stat. Ann. §2C:39-7...........................................................1

**Other Authorities**

*Firearms, alcohol and crime*, 24 Injury Prevention 68–72 (2018),
  *available at* https://tinyurl.com/ynr8253z ...........................11

L.J. Warren, et al., *Threats to kill: A follow-up study*, 38 Psychological
  Medicine 599–605 (2008) .......................................................8

Nat'l Highway Traffic Safety Admin., 2023 Alcohol-Impaired-Driving
     Fact Sheet 1 (No. 813713, May 2025), https://tinyurl.com/2jbsfkkk ... 10

*United States v. Hemani*, No. 24-1234 (U.S. Cert. Pet.) at 10–12,
     *available at* https://tinyurl.com/444sa54t ............................................ 12

## INTRODUCTION AND STATEMENT OF INTEREST

Just as the Federal Government enforces the federal felon-in-possession ban, 18 U.S.C. §922 (g)(1), Amici States of New Jersey and Delaware maintain laws that prohibit firearm possession by individuals with enumerated criminal convictions. *See* Del. Code Ann. Tit. 11, §1448(a)(1); N.J. Stat. Ann. §2C:39-7. Though Amici States do not maintain identical statutes, all States in the Third Circuit seek "to protect the public from the actions of members of that class of persons who, by their past conduct, have shown themselves unworthy to possess firearms." *State v. Robinson*, 251 A.2d 552, 555 (Del. 1969); *see Commonwealth v. Randolph*, 343 A.3d 1248, 1258 (Pa. Super. Ct. 2025); *State v. Middleton*, 362 A.2d 602, 604 (N.J. Super. Ct. App. Div. 1976), *aff'd*, 379 A.2d 453 (N.J. 1977). Such laws preclude unfit persons "from acquiring lethal weapons while enabling the fit elements of society to obtain firearms with minimal burdens and inconveniences." *App. of Marvin*, 249 A.2d 377, 378 (N.J. 1969).

Because Amici States impose possession restrictions on felons, they have a significant interest in ensuring such laws may be enforced consistent with the Second Amendment and their own sovereign prerogatives to promote public safety. Those interests are squarely implicated by *Williams v. Attorney General* (No. 24-1091) and *United States v. Bost* (No. 24-1719),[1] which ask whether §922(g)(1) can be validly applied to specific

---

[1] Per this Court's December 15, 2025 order (*Williams* Dkt. No. 83; *Bost* Dkt. No. 67), Amici States are filing this identical brief in both *Williams* and *Bost*.

individuals given this Court's holding that §922(g)(1), though facially valid, is unconstitutional as applied to those persons who neither "pose[] a physical danger to others" nor fall within any other historical disarmament tradition. *Range v. Att'y Gen. U.S.*, 124 F.4th 218, 232 (3d Cir. 2024) (en banc). The answer is clear in both: it can be.

Section 922(g)(1) is validly applied in each case for two independent reasons. First, both Williams and Bost committed predicate felonies that categorically and conclusively justify their disarmament. The commission of *certain* crimes allows for the felon's categorical disarmament, without further individualized factfinding—convictions for murder or rape make the point obvious. And while members of this Court have disagreed on the full extent of qualifying felonies and historical traditions, commission of felonies evincing dangerousness fit the bill. That agreement is sufficient to resolve this en banc case, because that tradition encompasses the two felons before this Court: Bost's conviction for terroristic threats and Williams's conviction for recidivist driving-under-the-influence (DUI) at the highest level of intoxication leave both within the "class of dangerous felons that our regulatory tradition"—even its narrowest interpretation—"permits legislatures to disarm." *United States v. Kimble*, 142 F.4th 308, 318 (5th Cir. 2025). Bost and Williams thus may be disarmed "on a class-wide basis" without regard to individualized factfinding. *Kanter v. Barr*, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J., dissenting).

Second, if this Court looks beyond Bost's and Williams's predicate convictions and engages in individualized factfinding, it should do so by examining *all* the relevant facts to determine if either may be disarmed consistent with historical traditions. In assessing individuals' as-applied challenges to felon restrictions, no other circuit restricts its inquiry solely to the elements of the predicate offense. For good reason: a fact-sensitive approach is consistent with precedents, logic, and history. Just as Range could cite his two-decades history of law-abiding conduct to show that he no longer fell within the permissible tradition of disarmament, so too could evidence of broader *misconduct* undermine a recidivist's as-applied challenge. And history likewise suggests that a claimant seeking relief from §922(g)(1) must show their possession would not present danger— at its core, a totality-of-circumstances inquiry.

## ARGUMENT

Two independent pathways exist for resolving these cases. First, the categorical dangerousness of Williams's conviction for recidivist DUI and Bost's conviction for terroristic threats suffices to support the constitutionality of applying §922(g)(1) to each. Second, if this Court disagrees, it should consider all facts that bear on whether a challenger's disarmament is consistent with historical tradition.

## I.   Williams And Bost May Be Disarmed Based Solely On Their Predicate Convictions.

Whether a felon-in-possession statute can be validly applied to any particular felon turns on "the Nation's historical tradition of firearm regulation.'" *Range*, 124 F.4th at 228 (quoting *NYSRPA. v. Bruen*, 597 U.S. 1, 24 (2022)). Although this Court has concluded that historical tradition does not support categorically disarming *all* felons, *id.* at 230, it already recognized "a tradition of disarming people who 'pose[] a clear threat of physical violence to another,'" *id.* at 230 (quoting *United States v. Rahimi*, 602 U.S. 680, 698 (2024)). Regardless of whether "dangerousness" is the sole historical tradition in this area, that tradition covers Bost's and Williams's predicate convictions and permits their disarmament regardless of individualized factfinding.

### A.   Legislatures Can At The Very Least Categorically Disarm Individuals Who Commit Dangerous Felonies.

Although the en banc court's supplemental question focuses on the scope of individualized factfinding relevant to as-applied Second Amendment challenges, some individuals can be lawfully disarmed based solely on their predicate felonies. This Court left open that a "categorical argument could suffice to uphold" possession restrictions tied to certain felonies. *Id.* at 230; *Rahimi*, 602 U.S. at 698 (emphasizing nothing in its opinion "suggest[s] that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse"). And history and

common sense confirm class-wide disarmament can be permissible. Whatever the full extent of that historical tradition, it at least covers felonies tied to "dangerousness." *Range*, 124 F.4th at 230; *see id.* at 231 (acknowledging historical "tradition of disarming people who 'pose[] a clear threat of physical violence to another'").

History supports the categorical disarmament of persons who commit at least some offenses, regardless of any individual facts. *See Kimble*, 142 F.4th at 315 ("Class-wide disarmament accords with both history and precedent."); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) ("That *some* categorical limits are proper is part of the [Second Amendment's] original meaning."). "In 1791—and for well more than a century afterward—legislatures disqualified categories of people from the right to bear arms" when "they judged that doing so was necessary to protect the public safety." *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting). From Catholics to Native Americans to British loyalists, "governments in England and colonial America long disarmed groups that they deemed to be dangerous." *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024); *see also id.* at 653–54 (17th-century English and Founding-era American laws); *Kanter*, 919 F.3d at 456–58 (Barrett, J., dissenting) (same). Of course, "[c]lassifying people as dangerous simply because of their race or religion" would violate other constitutional provisions now and "was wrong from the beginning." *Williams*, 113 F.4th at 656. "Nevertheless, these pre-Fourteenth Amendment laws provide insight into

how early Americans conceived of the right to bear arms embodied in the Second Amendment" by demonstrating "that entire groups could be presumptively disarmed" based on an understanding of their class-wide dangerousness. *Id.* at 656.

That "[h]istory is consistent with common sense." *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting). "[T]he legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety." *Id.* at 454. And in doing so, "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court." *Id.* at 464 (quoting *Skoien*, 614 F.3d at 641). Rather, "the legislature can make that judgment on a class-wide basis" with "present-day judgments about categories of people whose possession of guns would endanger the public safety." *Id.* After all, "certain categories of past convictions are highly probative of dangerousness." *Williams*, 113 F.4th at 658; *see also, e.g.*, *Pitsilides v. Barr*, 128 F.4th 203, 211 (3d Cir. 2025) (agreeing that "some offenses may offer conclusive evidence that someone poses" a "danger" if armed). Not every as-applied challenge requires further factfinding, and this Court should avoid suggesting otherwise.

Several examples prove the point. For instance, a person "convicted of aggravated assault and manslaughter" may be "constitutionally dispossessed of a firearm" from those convictions alone. *United States v.*

*Bullock*, 123 F.4th 183, 185 (5th Cir. 2024). Likewise for violent felonies like "murder, rape, assault, and robbery" or those that "inherently pose[] a significant threat of danger," like "drug trafficking and burglary." *Williams*, 113 F.4th at 658, 663 (suggesting such convictions may be dispositive in practice but leaving the question open); *Kanter*, 919 F.3d at 468 (Barrett, J., dissenting) (individuals convicted of crimes "related to violent behavior" could be "disarm[ed] … without regard to any personal circumstances or characteristics" otherwise suggesting "a low risk to public safety"). Certain felonies thus support "an irrebuttable presumption of dangerousness," *Williams*, 113 F.4th at 658, putting resultant disarmament within even the narrowest reading of our Nation's tradition.

## B. Bost's Terroristic Threats Conviction And Williams's Recidivist DUI Conviction Fit That Tradition.

That principle resolves these cases. For Bost, his conviction for terroristic threats conclusively demonstrates dangerousness. For Williams, his prior conviction for recidivist DUI does the same.

1. Bost is subject to disarmament under §922(g)(1) due to his convictions for terroristic threats, in violation of 18 Pa. Stat. & Cons. Stat. Ann. §2706(a)(1), and conspiracy to commit the same. Appx20, 31. Under Pennsylvania law, "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to … commit any crime of violence with intent to terrorize another." 18 Pa. Stat. & Cons. Stat. Ann. §2706(a)(1). Those who threaten others with violence,

intending to terrorize them, are properly considered dangerous and thus subject to class-wide disarmament under our historical tradition.

"Since the founding, our Nation's firearm laws have" disarmed "individuals who threaten physical harm to others." *Rahimi*, 602 U.S. at 690. The "ancient common-law prohibition on affrays," traceable to the Statute of Northampton, 2 Edw. 3 c. 3 (1328), barred "'arm[ing]' oneself 'to the Terror of the People.'" *Id.* at 697 (quoting T. Barlow, The Justice of the Peace: A Treatise 11 (1745)); *id.* (quoting 4 Blackstone 149). These "going armed laws," "incorporated into American jurisprudence through the common law," *id.*, recognized that those who terrorize others "attack directly that public order and sense of security, which … is one of the first objects of the common law," and that such conduct "almost necessarily" leads "to actual violence," *State v. Huntly*, 25 N.C. 418, 421–22 (1843). The data bear this out. For example, one peer-reviewed study found that 44% of individuals convicted of threatening to kill were subsequently convicted of violent offenses. *See* L.J. Warren, et al., *Threats to kill: A follow-up study*, 38 Psychological Medicine 599–605 (2008).

Categorically barring individuals who have terrorized others with threats of violence from possessing firearms makes sense and "fits neatly" within our historical tradition. *Rahimi*, 602 U.S. at 698. That tradition reveals that groups "deemed to be dangerous" may be disarmed, *Williams*, 113 F.4th at 657; *see supra* at 4–6, and that Founding-era Americans understood the danger in firearms possession by individuals

who terrorize others, *see e.g.*, *Huntly*, 25 N.C. at 421–22. Bluntly, even if those who made unlawful threats did not *yet* act on them, "[d]isarmament based on danger was always based on a predictive judgment of danger, not certainty." *United States v. Harris*, 144 F.4th 154, 164 (3d Cir. 2025). Felons with terroristic threats convictions, like Bost, may lawfully be disarmed based solely on that conviction.[2]

2. Williams's predicate conviction for recidivist DUI at the highest level of intoxication likewise offers conclusive proof of danger. Williams is subject to disarmament under § 922(g)(1) due to his conviction for DUI "at the highest rate of intoxication in violation of 75 Pa. Cons. Stat. §3802(c)," which prohibits driving with a blood alcohol content (BAC) of 0.16% or higher—at least double the legal limit. *Williams v. Barr,* 379 F. Supp. 3d 360, 365 (E.D. Pa. 2019). And because Williams had a previous

_____

[2] Disarming Bost is also supported by two independent historical traditions. First, Bost could be prohibited from possessing firearms since he was on bond; "[p]ersons accused of crime, upon their arrest, have constantly been divested of their arms, without the legality of the act having ever been questioned." *United States v. Moore*, 111 F.4th 266, 273 (3d Cir. 2024). *See United States v. Schrock*, No. 24-2346, 2025 WL 2682527, at *1 (3d Cir. Sep. 19, 2025); *United States v. Ogilvie*, 153 F.4th 1098, 1106–07 (10th Cir. 2025); *United States v. Quiroz*, 125 F.4th 713, 718–19 (5th Cir. 2025); *United States v. Gore*, 118 F.4th 808, 815 (6th Cir. 2024). Second, Bost possessed a stolen firearm, and States have long barred possessing stolen property. *See, e.g., id.* at 812–13 (finding "no indication that firearms were exempt from … prohibitions on 'the purchase or receipt of stolen goods'" which have "ample historical support"); *Ogilvie*, 153 F.4th at 1107; *Quiroz*, 125 F.4th at 720.

DUI offense within the ten-year period preceding his predicate DUI conviction, his crime is punishable by up to five years imprisonment. *See id.*

A recidivist DUI conviction at the highest rate of intoxication per se establishes dangerousness. "There is no question that drunk driving is a serious and potentially deadly crime." *Holloway v. Att'y Gen. U.S.*, 948 F.3d 164, 174 (3d Cir. 2020); *see Begay v. United States*, 553 U.S. 137, 141 (2008) ("Drunk driving is an extremely dangerous crime."). "In 2023 there were 12,429 fatalities in motor vehicle traffic crashes in which at least one driver was alcohol-impaired." NHTSA, 2023 Alcohol-Impaired-Driving Fact Sheet 1 (No. 813713, May 2025), https://tinyurl.com/2jbsfkkk. Hundreds of the victims are children. *Id.* at 2. "[T]raffic crashes in which at least one driver had a BAC of .15 g/dL or higher" are the deadliest, accounting for two-thirds of fatalities. *Id.*

Individuals who drive under the influence (at least repeatedly) may be disarmed consistent with the tradition of disarming those "who pose a clear threat of" harm to others. *Range*, 124 F.4th at 231 (cleaned up). After all, drunk drivers "evince[] a willingness to disregard" the deadly threat that driving while intoxicated poses to others. *United States v. Goins*, 647 F. Supp. 3d 538, 554 (E.D. Ky. 2022). And those with *multiple* DUI convictions demonstrate a failure to learn from that misconduct, especially "evin[cing] a likelihood of future dangerous conduct." *United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024). Altogether, recidivist

drunk drivers demonstrate a "dangerous pattern": ignoring the consequences of operating a potentially lethal instrument irresponsibly and unlawfully. *Id.*; *cf. also United States v. Simpson*, 152 F.4th 611, 614–15 (5th Cir. 2025) (rejecting challenge to §922(g)(1) conviction because defendant's predicate conviction for "evading arrest or detention with a vehicle" conclusively proved danger). That raises a serious risk that such individuals cannot be trusted to use other lethal items safely—especially when they consume drugs or alcohol. *See, e.g.*, *Harris*, 144 F.4th at 156 ("Guns and drugs can be a lethal cocktail."); Wintemute et al., *Firearms, alcohol and crime*, 24 Injury Prevention 68–72 (2018), *available at* https://tinyurl.com/ynr8253z (finding "prior alcohol-related convictions were associated with a fourfold to fivefold increase in risk of incident arrest for a violent or firearm-related crime, a relative increase greater than that seen for age, sex or prior violence").

This is reinforced by the long history of disarming "drunkards." *Harris*, 144 F.4th at 158–59. In England, "justices of the peace could require twice-convicted drunks to post sureties for their good behavior; drunks who did not comply could be jailed." *Id.* at 158. Early American legislatures continued this tradition. Many "enacted surety regimes empowering magistrates to make drunkards give security for peace and good behavior or be imprisoned." *Id.* at 159. That sureties could be required of alcoholics demonstrates our Founders' understanding "that drinking could provoke people to act dangerously." *Id.* at 158. And just as

surety regimes generally demonstrated the broader principle that individuals who "pose[] a clear threat of physical violence" to others "may be disarmed," *Rahimi*, 602 U.S. at 698, the historical application of surety regimes to drunkards specifically shows that those who pose this kind of threat on account of alcohol misuse may be disarmed for that reason. *See Harris*, 144 F.4th at 159 ("States recognized the danger of mixing alcohol with guns."); *United States v. Hemani*, No. 24-1234 (U.S. Cert. Pet.) at 10–12, *available at* https://tinyurl.com/444sa54t (collecting Founding-era "vagrancy laws, civil commitment laws, and surety laws" that specifically "restrict[ed] the rights of 'drunkards'"). At least for DUI recidivists, this intolerably high risk of danger fits our legal tradition.

Based (1) solely on the narrow application of our historical dangerousness tradition, and (2) without any individual factfinding, Bost's and William's convictions conclusively permit their disarmament.

## II. Courts May Consider Facts Beyond The Conviction Alone In Assessing As-Applied Challenges To §922(g)(1).

Although this Court need not reach this question given the categorical dangerousness of the predicate convictions at issue here, *see supra* at 7–12, logic, persuasive authority, and historical tradition all reveal that courts may properly look to any facts about a particular individual in assessing whether they may be disarmed.

That fact-sensitive analysis flows logically from the nature of as-applied §922(g)(1) challenges. Everyone agrees there is, at minimum, a

historical tradition regarding dangerousness, rendering §922(g)(1) "constitutional as it applies to dangerous individuals." *Williams*, 113 F.4th at 662. But if the individual's prior felony conviction does not conclusively resolve dangerousness, facts are what remains to resolve the as-applied question. Put concretely: even if a recidivist DUI conviction is not conclusive, facts may tell a deeper story of danger—like a police report showing defendant was brandishing a firearm while driving drunk. Were it otherwise, courts would be stuck examining only the elements of the predicate offense; not even the fact that a felon was found with a firearm while on supervised release for new criminal charges would be relevant. *Contra, e.g.*, *United States v. Quailes*, 126 F.4th 215, 223 (3d Cir. 2025); *United States v. Giglio*, 126 F.4th 1039, 1043 (5th Cir. 2025).

Unsurprisingly, no circuit takes that elements-only categorical approach when faced with an as-applied Second Amendment challenge to § 922(g)(1). *See, e.g.*, *Riccio v. Sentry Credit*, 954 F.3d 582, 591–92 (3d Cir. 2020) (en banc) (citing "reluctan[ce] to contradict the unanimous position of other circuits" and a preference for going en banc to eliminate splits, not create them). Six circuits outright reject as-applied challenges to §922(g)(1), holding felons per se may be disarmed. *See Zherka v. Bondi*, 140 F.4th 68, 93–94 (2d Cir. 2025); *United States v. Hunt*, 123 F.4th 697, 707 (4th Cir. 2024); *United States v. Jackson*, 110 F.4th 1120, 1129 (8th Cir. 2024); *United States v. Duarte*, 137 F.4th 743, 755 (9th Cir. 2025); *Vincent v. Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025); *United States v.*

*Dubois*, 139 F.4th 887, 893–94 (11th Cir. 2025). Three have rejected particular as-applied challenges without deciding if any could succeed. *See United States v. Langston*, 110 F.4th 408, 419 (1st Cir. 2024); *United States v. Gay*, 98 F.4th 843, 846–47 (7th Cir. 2024); *United States v. Johnson*, 158 F.4th 200, 209–10 (D.C. Cir. 2025).

Of the three circuits that allow for as-applied challenges to § 922(g)(1), none restrict their review to the elements of the predicate felony. This Court, of course, has repeatedly declined to do so—since *Range*, panels have consistently adjudicated as-applied challenges with consideration of all relevant facts. *See Pitsilides*, 128 F.4th at 212 (considering "entire criminal history and post-conviction conduct" alongside the "predicate offense and the conduct giving rise to that conviction"); *United States v. Walters*, 151 F.4th 122, 126, 135 (3d Cir. 2025); *United States v. White*, No. 23-3013, 2025 WL 384112, *2 (3d Cir. Feb. 4, 2025); *Quailes*, 126 F.4th at 223. The Sixth Circuit, too, "make[s] fact-specific dangerousness determinations after taking account of the unique circumstances of the individual" beyond a "specific [predicate] felony." *Williams*, 113 F.4th at 659–60, 663; *Pitsilides*, 128 F.4th at 211 (citing Sixth Circuit). And the Fifth Circuit's panels have considered certain aspects of "a defendant's entire criminal record," alongside certain facts underlying the prior felonies. *United States v. Alaniz*, 146 F.4th 1240, 1241–42 (5th Cir. 2025); *see United States v. Contreras*, 125 F.4th 725, 732–33 (5th Cir. 2025).

But if courts can consider *any* external facts (including the facts of conviction) in their as-applied review, there is no reason in law or logic that they could not consider *all* relevant facts when determining whether the as-applied claimant is "dangerous." *See Kanter*, 919 F.3d at 468 (Barrett, J., dissenting) (noting that even if challenger's conviction "standing alone, is not enough," disarmament can still be constitutional if his "history or characteristics" support disarmament). Indeed, this Court already accepts the converse: that except where an individual's prior felony conviction conclusively establishes dangerousness, courts consider a wide range of facts to assess that a challenger is no longer dangerous. *See, e.g.*, *Range*, 124 F.4th at 232 (looking to Range's "two decades" of post-conviction conduct). And if a holistic lack of "evidence that Range poses a physical danger to others" from "two decades" allowed him to prevail, then the totality of evidence showing a continued threat says the opposite. *Id*.

That fact-sensitive approach is reinforced by history. Our history, as explained above, justifies conclusive disarmament for some offenses. *See supra* at 4–7. But even if no conclusive class-wide determinations are warranted, the historical tradition that would then become relevant turns on global assessments of dangerousness. The Massachusetts Bay Colony, for example, "ordered a group of seditious libelers to surrender their arms in 1637," but permitted a court to "authorize libelers to buy or borrow weapons again" if they were "deemed not dangerous" considering facts beyond those of the libel. *Williams*, 113 F.4th at 652. During the

Revolutionary period, "New Jersey directed officials to disarm 'such Persons as they shall judge disaffected and dangerous.'" *Id.* at 654. And Connecticut banned British loyalists from owning firearms "until they'd demonstrated they were not dangerous to the fledgling revolutionary project." *Id.* These "officials of old" focused "on each individual's specific characteristics." *Id.* at 657. So if this Court revisits its practice of examining all facts for as-applied §922(g)(1) challenges, history supports reaffirming that practice.

## CONCLUSION

This Court should reverse in *Williams* and affirm in *Bost*.

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:    */s/ Viviana M. Hanley*
         Viviana M. Hanley
         Deputy Attorney General
         R.J. Hughes Justice Complex
         25 Market Street
         P.O. Box 112
         Trenton, New Jersey 08625-0112
         (609) 250-8412
         viviana.hanley@njoag.gov

KATHLEEN JENNINGS
ATTORNEY GENERAL OF DELAWARE

By:    */s/ Vanessa L. Kassab*
         Vanessa L. Kassab

Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, Delaware 19801
(302) 683-8899
vanessa.kassab@delaware.gov

Dated: December 18, 2025

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am a member in good standing of the bar of the U.S.

Court of Appeals for the Third Circuit.

/s/ Viviana M. Hanley
Viviana M. Hanley
Deputy Attorney General

Dated: December 18, 2025

## CERTIFICATION OF COMPLIANCE

Under Fed. R. App. P. 32(g) and L.A.R. 31.1(c), I certify that:

1.     This brief complies with this Court's December 15, 2025 orders (*Williams* Dkt. No. 83; *Bost* Dkt. No. 67) granting Amici States' motion to file a single brief of no more than 3,750 words, because the brief contains 3,750 words, excluding those portions of the brief permitted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced 14-point typeface using the Microsoft Word processing system.

3.     The text of this brief complies with L.A.R. 31.1(c) because it is identical to the text of the paper copies.

4.     This brief complies with L.A.R. 31.1(c) because the electronic file was scanned with the following anti-virus software: Windows Defender and Crowdstrike Windows Sensor, version 7.2219409.0.

*/s/ Viviana M. Hanley*
Viviana M. Hanley
Deputy Attorney General

Dated: December 18, 2025

## CERTIFICATION OF SERVICE

I hereby certify that on December 18, 2025, I caused the Brief for Appellants to be filed with the Clerk of the U.S. Court of Appeals for the Third Circuit via electronic filing. Counsel of record will receive service via the Court's electronic filing system.

*/s/ Viviana M. Hanley*
Viviana M. Hanley
Deputy Attorney General

Dated: December 18, 2025