No. 24-1091

# In the
# United States Court of Appeals
# for the Third Circuit

◆

**EDWARD A. WILLIAMS,**
*Plaintiff–Appellee*,

v.

**ATTORNEY GENERAL OF THE UNITED STATES, et al.,**
*Defendants–Appellants*.

◆

Appeal from the United States District Court
for the Eastern District of Pennsylvania
Case No. 2:17-cv-02641

◆

SECOND SUPPLEMENTAL BRIEF OF THE APPELLEE

◆

JOSHUA PRINCE, ESQ.
PRINCE LAW OFFICES, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 313-0416
Joshua@PrinceLaw.com

*Counsel for Appellee*

# TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................... 1

**ARGUMENT** ........................................................................................... 1

    A.    The Second Amendment Framework Post-*Bruen, Rahimi*, *Range*, *Pitsilides* and *Harris* for any § 922(g)(1) Challenge .............................. 1

    B.    Alternatively, Mr. Williams has no other Criminal Convictions nor Concerning Conduct Post-Conviction ................................................ 9

**CONCLUSION** ..................................................................................... 14

**CERTIFICATE OF COMPLIANCE** ................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................................1

*New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 597 U.S. 1 (2022) ..........passim

*Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025)......................................................1, 6

*Range v. Attorney Gen. United States*, 124 F.4th 218 (3d Cir. 2024)..............passim

*United States v. Harris*, 144 F.4th 154 (3d Cir. 2025).......................................1, 6, 7

*United States v. Moore*, 111 F.4th 266 (3d Cir. 2024)..............................................7

*United States v. Rahimi*, 602 U.S. 680 (2024) ..................................................passim

**STATUTES**

18 U.S.C. § 922 ....................................................................................................passim

# INTRODUCTION

Pursuant to this Court's Order of October 31, 2025, Appellee submits this second supplemental brief addressing "whether a court may consider evidence beyond an individual's predicate conviction(s), including, for example, other criminal convictions or conduct post-dating the predicate conviction, when a court evaluates whether 18 U.S.C. § 922(g)(1) is constitutional as applied to an individual seeking declaratory relief." For the following reasons, this Court should hold, consistent with our history and tradition, that the only evidence to be considered is the conduct triggering the prohibition and affirm the District Court's determination that Section 922(g)(1), *as-applied* to Mr. Williams is unconstitutional.

# ARGUMENT

A. <u>The Second Amendment Framework Post-*Bruen, Rahimi*, *Range*, *Pitsilides* and *Harris* for any § 922(g)(1) Challenge</u>

It is well-established that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Pre-*Bruen*, constitutional challenges brought on Second Amendment grounds typically revolved around the appropriate analysis or framework a court was to utilize when assessing a Second Amendment challenge.

1

However, in *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 597 U.S. 1, 17 (2022), the Supreme Court declared that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Once a plaintiff shows that his desired conduct is presumptively protected, it falls upon the government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. The Court pronounced with absolute clarity that it is *the government* that bears the burden of justifying its firearm regulations. *See id.* at 24 ("The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."); *id.* at 33–34 (explaining "the burden falls on respondents"); *id.* at 38–39 (holding that "respondents have failed to meet *their burden* to identify an American tradition" (emphasis added)). In so holding, the Supreme Court expressly directed the lower courts to look to the "text, as informed by history" in determining whether a regulation is consistent. *Id.* at 19.

Thereafter, in *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court considered whether a law *temporarily*[1] prohibiting an individual from possessing a firearm was facially constitutional, where the underlying offense was violent, the deprivation was limited in duration—only occurring after a hearing

---

[1] *See*, Supplemental Brief of Appellee, pgs. 9–11.

2

where the defendant was provided due process—and the court order includes a finding that the individual currently "represent[s] a credible threat to the physical safety of [an] intimate partner." In holding that 18 U.S.C. § 922(g)(8)—which prohibits a person subject to a domestic violence restraining order from possessing a firearm for the duration of that restraining order—was not facially unconstitutional, *id*. at 700, the Court reaffirmed its holding in *Bruen* that modern firearm laws are presumptively unconstitutional unless the government can demonstrate—by proffering historical analogues that are similar in "how" and "why" they restrict the right to keep and bear arms—that they are "consistent with the principles that underpin our regulatory tradition" as well as "the principles underlying the Second Amendment" and do not burden the right to "an extent beyond what was done at the founding." *Id*. at 692.

In "considering whether [Section 922(g)(8)] is consistent with the principles that underpin our regulatory tradition," *Rahimi* conspicuously focused on the Founding era. *Id*. It stressed that in the analogical process, "[i]f laws *at the founding* regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* (emphasis added). It also cautioned that "[e]ven when a law regulates arms-bearing for a permissible reason … it may not be compatible with the right if it does so to an extent *beyond what was done at the*

3

*founding.*" *Id.* (emphasis added). And in analyzing Section 922(g)(8), the Court's analysis remained true to these statements, as it focused on what firearm regulation looked like contemporaneous with the Founding, when the Second Amendment was ratified. For instance, the Court noted that, although going back to "the earliest days of the common law" there were examples of laws disarming certain groups (including "political opponents [of the sovereign] and disfavored religious groups"), it treated those laws as having only limited value because they were largely defunct by the Founding. *Id.,* at 694. The only laws of that type that were *not* defunct at the Founding—those "regulations targeting individuals who physically threatened others"—comprised the "two distinct legal regimes" of surety laws and "going armed" laws that formed the basis of the Supreme Court's decision. *Id.* In discussing these laws, the Court stressed their Founding-era bona fides, heavily based its understanding of them on Founding-era sources, and cited little from outside the Founding era. *See id.,* at 693–98 (chiefly citing Blackstone's *Commentaries on the Laws of England* and a 1795 Massachusetts statute to understand the way surety laws functioned and "targeted the misuse of firearms," and noting that four States had codified "going armed" prohibitions between 1741 and 1807). In fact, other than a citation to a 2010 case (which merely confirmed that these Founding-era traditions *remained* a part of the legal landscape today), *Rahimi* cited *nothing* in its assessment

of historical evidence that post-dated the ratification of the Fourteenth Amendment in 1868.

Based on this historical evidence, the Court concluded that the Second Amendment is consistent with "what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698 (emphasis added). Given the facts of Rahimi's own case, the Court had "no trouble concluding" that, in disarming him, Section 922(g)(8) on its face was consistent with that historical principle. *Id.* at 700. That being said, the Court went out of its way to "reject the Government's contention that Rahimi may be disarmed simply because he is not 'responsible,'" because such a holding would not be administrable and would be subject to manipulation by courts; thereby, threatening to create an exception that swallows the rule. *Id.* at 701.

In *Range II*, this Court, *en banc*, addressed whether Mr. Range, who had a prior conviction for making a false statement to obtain food stamps, could successfully bring an *as-applied* challenge to Section 922(g)(1), where the offense was non-violent and there was no evidence that Mr. Range was likely to act in a violent or dangerous manner. *Range v. Attorney Gen. United States*, 124 F.4th 218, 222 (3d Cir. 2024). This Court declared that since Mr. Range completed his three years of probation without incident, paid his restitution, costs, and fine, and the "record contains no evidence that Range poses a physical danger to others,"

"[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range [in perpetuity²] of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id*. at 223, 232

In *Pitsilides v. Barr*, a panel of this Court vacated the district court's judgment in favor of the Government and remanded the case for further consideration on the basis that the district court had considered the case under the pre-*Bruen* framework and that under *Bruen*, further factual development was necessary to determine whether Pitsilides' offense was violent and if so, if he "continues to 'present a special danger of misus[ing firearms].'" 128 F.4th 203, 205, 210 (3d Cir. 2025) (quoting *Rahimi*, 602 U.S. at 698).

More recently, a panel of this Circuit decided *United States v. Harris*, where consistent with aforementioned precedent, it declared that any adult citizen is part of the people protected by the Second Amendment and that § 922(g)(3) could only "temporarily and constitutionally restricts the gun rights of drug users only as long as they 'present a special danger of misusing firearms.'" 144 F.4th 154, 164 (3d Cir. 2025) (quoting *Pitsilides*, 128 F.4th at 211).

---

² As this Court declared in *Range II*, the *Rahimi* Court "authorized *temporary* disarmament as a sufficient analogue to historic temporary imprisonment *only* to respond to the use of guns to threaten the physical safety of others." *Id*. at 231 (internal quotations omitted)(emphasis added).

6

While there appears to be an easy to apply framework for all Section 922(g) challenges based on the precedent of this and other circuit courts,[3] as this Court's Order only directed the Parties to address what is the proper analysis in the Section 922(g)(1) context, Mr. Williams will limit his argument to such.

In turning to the proper analysis for those allegedly prohibited pursuant to Section 922(g)(1), it would simply be comprised of determining whether the individual was convicted of a crime punishable by more than one year in jail[4] and if so, whether the individual is still incarcerated or on supervised release/probation and has satisfied his court-imposed requirements, because, as this Court declared, "[t]emporary imprisonment required temporary disarmament. Those who were confined could not bring their guns with them into confinement." *Harris*, 144 F.4th at 161. And in *United States v. Moore*, this Court declared that "a convict may be disarmed while he completes his sentence" regardless of whether completion of the sentence occurs while incarcerated. 111 F.4th 266, 272 (3d Cir. 2024). And this is consistent with our historical tradition, as there is simply no historical basis for permanently stripping someone of their right to keep and bear arms after release from confinement/supervised release/probation and after they have satisfied any court-imposed requirements *unless* the Government separately establishes, through

---

[3] The undersigned addressed this framework during oral argument before the prior panel.
[4] As defined by 18 U.S.C. § 921(a)(20).

a judicial finding, at a hearing, where the individual is provided due process, that the individual *currently* "represent[s] a credible threat to the physical safety of [another]."[5] *Rahimi*, 602 U.S. at 680.

Thus, where a court is confronted solely with a challenge to Section 922(g)(1), the simple question is merely whether the individual is still incarcerated or on supervised release/probation and has satisfied his court-imposed requirements. If he is still incarcerated, on supervised release/probation, or has failed to satisfy his court-imposed requirements, then the challenge fails. If he is not and the government has not established, through a judicial finding, at a separate proceeding comporting with due process that he currently represents a credible threat to the physical safety of another, then the prohibition is not consistent with our tradition of regulation and is therefore unconstitutional.

In applying the above test to this matter, there is no dispute that Mr. Williams is a U.S. Citizen, who desires to exercise his fundamental, individual right to purchase, own, possess, and utilize a firearm for lawful purposes, including defense of himself and his family. Appx56-58, ¶¶ 1, 15, 18, 25. Accordingly, there can be no doubt that the district court properly held that the Mr. Williams is among

---

[5] The context where the Government *may* be able to establish such a separate prohibitor would be, for example, where the Government has shown the individual was adjudicated a mental defective or involuntarily committed, there was a judicial finding in that adjudication that he posed a credible threat to himself or another, and the underlying condition has not abated.

"the people" who desire to engage in quintessential conduct protected by the Second Amendment, and whom are clearly within the plaint text of the Second Amendment.

And, as Mr. Williams, unlike Mr. Bost,[6] has satisfied all his court-imposed requirements and is neither incarcerated nor has the government ever alleged in a complaint—let alone established at a hearing, consistent with due process requirements, and with a resultant judicial finding—that he is a credible threat to the physical safety of another, the district court's decision must be affirmed.

B. Alternatively, Mr. Williams has no other Criminal Convictions nor Concerning Conduct Post-Conviction

Even if, *arguendo*, this Court was not to adopt the simple-to-apply approach detailed above, which deals with *as-applied* challenges tethered to our

---

[6] Mr. James Bost, born in 1980, appears to have a lengthy rap sheet, including felony and misdemeanor convictions, from 2003 through the present, spanning Allegheny and Butler counties (*see*, https://tinyurl.com/Common-Pleas), and is *currently* confined in relation to numerous new felony and misdemeanor charges. *See*, https://tinyurl.com/Magisterial-District-Court. Moreover, he appears to have thousands of dollars of unpaid fees, fines, costs, and restitution, including from his 2003 and 2018 convictions. *See, e.g.*, https://tinyurl.com/2002-Docket and https://tinyurl.com/2018-Docket. Assuming this to be the correct Mr. Bost (and the 2003 conviction lines up with the district court's decision), his failure to pay the court-imposed fees, fines, costs, and restitution – alone – would result in his challenge being denied.
      Consistent with LAR 113.12(a)(3), Appellee only includes Mr. Bost's believed year of birth.

9

contemporaneous history of firearm regulation, and rather elects to look at other, non-prohibiting criminal convictions or conduct post-dating the predicate conviction, as discussed *infra*, the district court's decision must be affirmed.

It is undisputed that the Government contends that Mr. Williams is prohibited—in perpetuity—as a result of a single DUI conviction from 2004, even though that DUI did not involve violence, property damage or injury to another and the record is devoid of *any* evidence—let alone a judicial finding—that Mr. Williams poses a physical danger to others. Appx55, ¶¶ 7–9; Appx56, ¶ 18; Appx57, ¶ 19. Rather, as reflected by the record in this matter (*see* Appx60–61), Mr. Williams' DUI offense was non-violent,[7] resulting in there being no historical basis for denying him his right to keep and bear arms after release from house arrest and satisfying all his court-imposed obligations. Moreover, even though the government is required, per *Bruen* and *Rahimi*, to bear the burden to demonstrate otherwise, the undisputed evidence of record proves that Mr. Williams "has a normal personality, without psychopathology and without addition or violent tendencies" and that "Mr. Williams may possess a firearm without risk to himself or any other person." Appx73–74.

---

[7] As argued before and agreed to by the district court, DUI does not constitute a crime of violence. *See*, Mem. Op. at 10; *see also*, *Leocal v. Ashcroft*, 543 U.S. 1, 4, 7–8 (2004).

While the Government recently contended that "[t]he record does not contain comprehensive information about Williams's post-conviction conduct indicative of dangerousness" (Appellants' Supplemental Brief, pg. 8), it not only ignores the unchallenged report of Psychologist Gordon (Appx62–92) but fails to advise this Court that when this matter was previously remanded (prior appeal No. 19-2694), the district court, during the conference on June 14, 2023, inquired of the Parties as to whether discovery was needed, and the Government stated that discovery had already occurred, further discovery was unnecessary, and accordingly, the only outstanding issue could be addressed via cross-motions for summary judgment.[8] Therefore, the Government should be deemed to have waived any argument that it requires further discovery in this matter.

Moreover, Mr. Williams anticipates that the Government will again, disingenuously argue that he *knowingly* possessed firearms and ammunition after his 2004 conviction as a basis to overturn the district court's decision as it did in its Brief, pgs. 7, 41, and Supplemental Brief, pgs. 8–9, without, *once again*, advising this Court as to the totality of that background, including: (1) Mr. Williams believed that he had been convicted of a misdemeanor of the second degree, as

---

[8] The Government had in fact already filed its renewed motion for summary judgment and brief in support on December 6, 2022 (Doc. 60).

reflected on his court docket sheet,[9] which would *not* have triggered a prohibition under 18 U.S.C. § 922(g)(1), as it was a state law misdemeanor crime that could not have been punished by more than two years in jail;[10] (2) while Mr. Williams was on probation, the Pennsylvania State Police ("PSP") and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") told him that he could continue to work for a federal firearms licensee, where he sold firearms[11] and approved him for purchases of firearms[12]; (3) Mr. Colosimo testified that he inquired of the ATF and the City, as to whether Mr. Williams was prohibited and both told him that Mr. Williams was fine in continuing in his job duties, including possessing firearms and ammunition, after performing a background check on Mr. Williams;[13] (4) an attorney retained by Mr. Williams in February of 2015 advised him that he was not

---

[9] In fact, still as of today–November 18, 2025–the Commonwealth of Pennsylvania's records specify that the grading of his 2004 offense is that of a misdemeanor of the second degree, which is not federally prohibiting. *See* https://tinyurl.com/Williams-Docket (reflecting under Final Disposition "M2").

[10] *See* 18 U.S.C. § 921(a)(20) declaring that the "term 'crime punishable by imprisonment for a term exceeding one year' does not include-- … (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." Pursuant to 18 Pa.C.S. § 106(b)(7), a misdemeanor of the second degree cannot be punished by more than two years in jail.

[11] *See* Supp. Appx10, lns. 12–21 (highlighting from original submitted by Appellants before the district court).

[12] *See* Supp. Appx11, lns 13–20 (highlighting from original submitted by Appellants before the district court); Supp. Appx12, lns. 2–24.

[13] *See* Supp. Appx13–16 (highlighting from original submitted by Appellee before the district court).

prohibited and thereafter, on February 12, 2015, submitted a letter to the PSP advising that Mr. Williams had only been convicted of non-prohibiting misdemeanor and therefore was not prohibited;[14] and, (5) Mr. Williams was never informed that he was prohibited from purchasing, owning, possessing, and utilizing firearms and ammunition as a result of his 2004 DUI conviction until November 5, 2015, when he was informed of such by the undersigned.[15] Of importance, after becoming aware that he was prohibited on November 5, 2015, Mr. Williams immediately divested himself of all firearms and ammunition and refrained from acquiring any firearms or ammunition,[16] no different than Mr. Range, when he became aware of his prohibition.[17]

---

[14] *See* Supp. Appx6–7, a February 12, 2025, letter from the Law Offices of Andrew G. Gay, Jr., LLC (declaring, *inter alia*, "as the Court designated this offense as an ungraded misdemeanor, punishable by not more than one (1) year…[m]y client's prior conviction [] does not appear to be a disqualifying event under 18 Pa.C.S.A. 6109(e)(iii) or Section 6109(e)(viii). Additionally, based on the enclosed documents, Mr. Williams does not appear to be a prohibited individual pursuant to 18 Pa.C.S.A. 6105(b), or Section 6105(c)(3).")

[15] Appx56–57, ¶¶ 16, 17.

[16] Appx57, ¶¶ 20-23; Supp. Appx8-10; Supp. Appx12, lns. 20-24 (highlighting from original submitted by Appellants before the district court).

[17] *Range II*, 124 F.4th at 223 (declaring, "After researching the reason for the denial, Range learned he was barred from buying a firearm because of his 1995 conviction. Range then sold his deer-hunting rifle to a firearms dealer.")

## CONCLUSION

For the foregoing reasons, under the *Bruen* framework and its progeny, the only evidence beyond an individual's predicate conviction(s) a court may consider, is the satisfaction of court-imposed terms of sentence. Resultantly, the district court correctly found that Section 922(g)(1) is unconstitutional as applied to Mr. Williams and this Court should affirm its finding that Mr. Williams was entitled to summary judgment on the grounds that 18 U.S.C. § 922 (g)(1) is unconstitutional *as-applied* to him.

Dated: December 18, 2025

Respectfully Submitted,

_____
Joshua Prince, Esq.
Attorney ID No. 306521
Joshua@PrinceLaw.com
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
(888) 202-9297, ext 81114

*Counsel for Plaintiff-Appellee*

# CERTIFICATE OF COMPLIANCE

1. Attorney Joshua Prince is a member of the bar of this court.

2. This brief complies with the type-volume limit of the Court's Order of October 31, 2025 because it contains 3,250 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

3. The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

4. This document was scanned for viruses using Bitdefender Virus Scanner v. 3.18.277, and no virus was detected.

*/s/ Joshua Prince*
Joshua Prince