# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————————

EDWARD A. WILLIAMS,

Plaintiff-Appellee,

v.

ATTORNEY GENERAL OF THE UNITED STATES, et al.,

Defendants-Appellants.

———————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

———————————————

## SUPPLEMENTAL EN BANC BRIEF FOR APPELLANTS

———————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

DAVID METCALF
  *United States Attorney*

MICHAEL S. RAAB
KEVIN B. SOTER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7222*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........................................................ 1

ARGUMENT ............................................................................. 2

Any relevant evidence of individualized dangerousness can be
    considered when assessing Section 922(g)(1)'s as-applied
    constitutionality. ................................................................... 2

    A.    Under *Rahimi* and *Range*, Section 922(g)(1)'s as-applied
            constitutionality turns on the challenger's dangerousness. ............ 2

    B.    There is no sound reason to ignore evidence that a particular
            felon is dangerous. ..................................................... 8

    C.    Section 925(c) addresses the constitutional concerns this
            Court has identified with individual applications of Section
            922(g)(1). ............................................................. 11

    D.    The present record does not suffice to establish Williams's
            assertion that Section 922(g)(1) is unconstitutional as applied
            to him. ................................................................ 15

CONCLUSION ........................................................................ 18

COMBINED CERTIFICATIONS

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*Ashwander v. TVA*,
  297 U.S. 288 (1936) ................................................................. 17

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ................................................................. 2

*Folajtar v. Attorney General*,
  980 F.3d 897 (3d Cir. 2020) ...................................................... 3

*Kanter v. Barr*,
  919 F.3d 437 (7th Cir. 2019) ..................................................... 3

*Mathis v. United States*,
  579 U.S. 500 (2016) ................................................................. 7

*Old Chief v. United States*,
  519 U.S. 172 (1997) ................................................................. 11

*Pitsilides v. Attorney General*,
  128 F.4th 203 (3d Cir. 2025) ...................................................... 8

*Range v. Attorney General*,
  124 F.4th 218 (3d Cir. 2024) .................................................. 3, 4, 5, 8, 15

*United States v. Bean*,
  537 U.S. 71 (2002) ................................................................. 12, 15

*United States v. Diaz*,
  116 F.4th 458 (5th Cir. 2024) .................................................... 10

*United States v. Dorsey*,
  105 F.4th 526 (3d Cir. 2024) ...................................................... 3

*United States v. Goodnight*,
  No. 23-1882, 2025 WL 1276000 (3d Cir. May 2, 2025) ........................... 5

*United States v. Kimble*,
  142 F.4th 308 (5th Cir. 2025) .................................................... 10

*United States v. Mancilla*,
  155 F.4th 449 (5th Cir. 2025) .................................................... 10

*United States v. Mitchell,*
160 F.4th 169 (5th Cir. 2025) ................................................. 11

*United States v. Mitchell*,
652 F.3d 387 (3d Cir. 2011) ...................................................... 8

*United States v. Moore,*
111 F.4th 266 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 2849 (2025) ......... 3, 8, 9

*United States v. O'Brien,*
391 U.S. 367 (1968) .................................................................. 8

*United States v. Quailes*,
126 F.4th 215 (3d Cir. 2025) ................................................. 3, 9

*United States v. Rahimi*,
602 U.S. 680 (2024) ............................................................... 3

*United States v. Rodriguez,*
No. 23-2730, 2024 WL 3518307 (3d Cir. July 24, 2024) ........................ 5

*United States v. Salerno*,
481 U.S. 739 (1987) .................................................................. 8

*United States v. Walters,*
151 F.4th 122 (3d Cir. 2025) ..................................................... 3

*United States v. White,*
No. 23-3013, 2025 WL 384112 (3d Cir. Feb. 4, 2025) ........................... 5

*United States v. Williams,*
113 F.4th 637 (6th Cir. 2024) ......................................... 5, 6, 7, 15

*United States v. Williams,*
No. 23-2773, 2025 WL 1341877 (3d Cir. May 8, 2025) ........................... 5

## Statutes:

18 U.S.C. § 922(g)(1) ........................................................... 1, 11

18 U.S.C. § 922(g)(8) ............................................................... 4

18 U.S.C. § 925(c) ................................................... 1, 2, 12, 13, 14

**Other Authorities:**

*Application for Relief from Disabilities Imposed by Federal Laws
with Respect to the Acquisition, Receipt, Transfer, Shipment,
Transportation, or Possession of Firearms,*
90 Fed. Reg. 34,394 (July 22, 2025) ......................................... 12-13, 13, 14

*Granting of Relief; Federal Firearms Privileges,*
90 Fed. Reg. 17,835 (Apr. 29, 2025) ....................................................... 12

Letter from D. John Sauer, Solicitor Gen., Off. of the Solicitor Gen.,
U.S. Dep't of Just., to Richard J. Durbin, Ranking Member,
Comm. on the Judiciary, U.S. Senate (Apr. 11, 2025),
https://perma.cc/4GYE-QKRF .............................................................. 13

*Withdrawing the Attorney General's Delegation of Authority,*
90 Fed. Reg. 13,080 (Mar. 20, 2025) ....................................................... 12

## INTRODUCTION AND SUMMARY

The federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), prohibits Edward Williams from possessing firearms because of his 2005 conviction for recidivist drunk driving at the highest rate of alcohol, a state-law offense punishable by up to five years' imprisonment. In this civil lawsuit, he contends that he has a Second Amendment right to keep and bear arms in the future notwithstanding his criminal record. The Department of Justice is strongly committed to safeguarding the rights guaranteed by the Second Amendment, and it has recently reinvigorated an administrative process pursuant to 18 U.S.C. § 925(c) that should render civil as-applied challenges like this one largely—if not entirely—unnecessary.

The en banc Court has asked the parties to address "whether a court may consider evidence beyond an individual's predicate conviction(s), including, for example, other criminal convictions or conduct post-dating the predicate conviction, when a court evaluates whether 18 U.S.C. § 922(g)(1) is constitutional as applied to an individual seeking declaratory relief." For the reasons that follow, such evidence could properly be considered as part of a holistic, individualized inquiry into a particular felon's dangerousness at the time when he claims a constitutional entitlement to possess firearms—which, in a forward-looking civil lawsuit like this one, means prospective

dangerousness.  Such evidence also fits comfortably within the Department of Justice's reinvigorated administrative process for restoring firearm rights pursuant to 18 U.S.C. § 925(c).  That said, many felons have been convicted of predicate offenses that are so clearly linked to dangerousness as to render it an uphill climb—if not an insuperable one—to bring their particular situation outside the constitutionally permissible sweep of Section 922(g)(1) under this Court's precedent.  Accordingly, in the mine-run of cases, the same outcome may obtain regardless of whether courts consider available evidence beyond predicate convictions.

## ARGUMENT

### ANY RELEVANT EVIDENCE OF INDIVIDUALIZED DANGEROUSNESS CAN BE CONSIDERED WHEN ASSESSING SECTION 922(G)(1)'S AS-APPLIED CONSTITUTIONALITY.

### A. Under *Rahimi* and *Range*, Section 922(g)(1)'s as-applied constitutionality turns on the challenger's dangerousness.

Governing precedent makes clear that, at least as a general matter, the disarmament of convicted felons complies with the Second Amendment.  The Supreme Court has repeatedly provided specific assurances that its precedents do not "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," which the Court has described as "presumptively lawful."  *District of Columbia v. Heller*, 554 U.S. 570, 626-27, 627 n.26 (2008).  Reiterating these assurances, the Court in its most recent Second

Amendment decision also stated that its decisions should not be taken to "suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *United States v. Rahimi*, 602 U.S. 680, 698 (2024).

Consistent with the Supreme Court's assurances, this Court has upheld Section 922(g)(1)'s facial constitutionality. *See United States v. Moore*, 111 F.4th 266, 273 n.5 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 2849 (2025). This Court has also rejected numerous as-applied challenges. *See, e.g.*, *id* at 268-73*; United States v. Quailes*, 126 F.4th 215, 220-24 (3d Cir. 2025); *United States v. Walters*, 151 F.4th 122, 134-35 (3d Cir. 2025); *United States v. Dorsey*, 105 F.4th 526, 532 (3d Cir. 2024); *see also infra* note 1.

Several courts of appeals have held that case-by-case challenges to Section 922(g)(1) are unavailable, but this Court held otherwise in *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc). Such challenges fail under this Court's precedent, however, if the particular felon who wishes to possess firearms is "physically dangerous." *Id.* at 230. That is, this Court's "touchstone" for evaluating as-applied challenges to Section 922(g)(1) is "dangerousness." *Folajtar v. Attorney General*, 980 F.3d 897, 924 (3d Cir. 2020) (Bibas, J., dissenting); *see also Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019)

(Barrett, J., dissenting) ("[L]egislatures have the power to prohibit dangerous people from possessing guns.").  That dangerous felons can be disarmed consistent with the Second Amendment follows from the principles underlying the Nation's historical tradition of firearm regulation and from the Supreme Court's decision in *Rahimi*, which upheld a federal statute, 18 U.S.C. § 922(g)(8), "disarming (at least temporarily) physically dangerous people" who had been found to have represented a credible threat to someone else's physical safety.  *Range*, 124 F.4th at 230 (discussing *Rahimi*).  Like Section 922(g)(8), Section 922(g)(1) applies to persons who, at least as a general matter, are physically dangerous.

*Range* held that Section 922(g)(1) did not comport with the Second Amendment as applied to a particular civil plaintiff seeking "protection from prosecution under § 922(g)(1) for any future possession of a firearm."  *Range*, 124 F.4th at 232.  The Court explained that its decision was "narrow": the disqualifying conviction was for a "food-stamp fraud" offense that occurred while Range was "rais[ing] three young children on $300 per week," and since that conviction, Range had "completed his sentence" and then waited "[m]ore than two decades" before seeking prospective judicial relief.  *Id.* at 223, 232.  To determine whether this prospective relief was appropriate, the Court looked to the entire "record" for any "evidence that Range pose[d] a physical danger

to others." *Id.* at 232.  Finding none, the Court held that future application of the statute to Range would be inconsistent with the Second Amendment's guarantee.  When the record indicates that a particular felon's firearm possession *would* be dangerous, by contrast, this Court has repeatedly upheld Section 922(g)(1)'s as-applied constitutionality.[1]

Most applications of Section 922(g)(1) bear little resemblance to the circumstances the Court confronted in *Range*.  In an opinion authored by Judge Thapar and cited approvingly by this Court in *Range*, *see* 124 F.4th at 230, the Sixth Circuit explained why "most applications of § 922(g)(1) are constitutional"—and why a person's criminal convictions may well be "sufficient to resolve" many cases.  *United States v. Williams*, 113 F.4th 637, 657, 658 n.12 (6th Cir. 2024).

The historical record, the Sixth Circuit explained, "reveals that governments in England and colonial America long disarmed groups that they deemed to be dangerous"—but, in the Sixth Circuit's view, that same tradition

---

[1] *See, e.g.*, *United States v. Rodriguez*, No. 23-2730, 2024 WL 3518307, at *3 (3d Cir. July 24, 2024) (relying on the nature and recency of the defendant's criminal history as well as the facts surrounding his firearm possession at the time he violated Section 922(g)(1)); *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025) (relying on prior felony convictions to assess dangerousness); *United States v. Goodnight*, No. 23-1882, 2025 WL 1276000 (3d Cir. May 2, 2025) (relying on the defendant's criminal history, including recency and underlying facts); *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir. May 8, 2025) (distinguishing *Range*).

mandates a safety valve: "individuals" subject to generalized dangerousness "classifications" must be able to "demonstrate that their particular possession of a weapon posed no danger to peace." *Williams*, 113 F.4th at 657; *see also id.* at 650-57 (discussing the relevant history). On that understanding of the historical record, the Sixth Circuit reasoned that Section 922(g)(1)'s as-applied constitutionality should be assessed by "focus[ing] on each individual's specific characteristics," "much like the officials of old" would have done when determining whether to grant an individualized exemption from historically analogous laws. *Id.* at 657.

While the ultimate inquiry is in that sense individualized, a felon's full criminal history is a key input to this dangerousness inquiry, and it is often possible to conclude that a particular felon is dangerous based on criminal history alone, at least where that felon has failed to identify persuasive countervailing evidence. As the Sixth Circuit explained, "nothing in the Second Amendment's text or history limits 'dangerousness' to the particular felony (if any) listed in an indictment or plea agreement"—which "makes sense, given that the government doesn't need to prove the specific predicate felony in securing a conviction under § 922(g)(1) in the first place." *Williams*, 113 F.4th at 660; *see also id.* at 657-58. A historically sound dangerousness inquiry can be "fact-specific, depending on the unique circumstances of the

individual"—it does not call for an abstract inquiry into the theoretical outer limits of a statute of conviction, and thus does not bring into an as-applied Second Amendment analysis a novel iteration of the widely criticized "categorical approach." *Id.* at 660 (citing *Mathis v. United States*, 579 U.S. 500, 504 (2016)).

Of course, the fact of a particular predicate conviction can in many cases "strongly suggest that an individual is dangerous." *Williams*, 113 F.4th at 660. Offenses against the person—such as murder, rape, assault, and robbery— quite clearly "speak directly to whether an individual is dangerous," and it follows that someone who has been convicted of such an offense faces either "an irrebuttable presumption of dangerousness" or, at a minimum, an "extremely heavy" burden to establish that his particular circumstances indicate he is not dangerous. *Id.* at 658. A person who has been convicted of "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary" will likewise "have a very difficult time, to say the least, of showing he is not dangerous." *Id.* at 663. A person like Range who has only ever been convicted of "crimes that pose no threat of physical danger," by contrast, will not generally face such an uphill climb when trying to make an individualized showing of non-dangerousness. *Id.*; *see id.* at 659.

**B.** **There is no sound reason to ignore evidence that a particular felon is dangerous.**

In *Pitsilides v. Attorney General*, 128 F.4th 203 (3d Cir. 2025), a unanimous panel explained that a blinkered approach focused only on the nature of the predicate offense would risk overlooking information that can be "highly probative of whether an individual likely poses an increased risk of 'physical danger to others' if armed." *Id.* at 212 (quoting *Range*, 124 F.4th at 232). The issue that the en banc Court has asked the parties to address here suggests that the Court might be reconsidering the analysis set forth in *Pitsilides*, but the Court should decline to do so.

As this Court explained in its likewise unanimous decision rejecting an as-applied challenge to Section 922(g)(1) in *Moore*, "an as-applied challenge requires [courts] to ask whether a statute's 'application to a particular person under particular circumstances deprived that person of a constitutional right.'" 111 F.4th at 272-73 (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (en banc)). As-applied challenges therefore focus on the "particular circumstances" of the case, *United States v. Salerno*, 481 U.S. 739, 751 (1987), and a variety of individualized circumstances that are distinct from the elements of the challenged statute can be relevant to the constitutional analysis, *see, e.g.*, *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

Recognizing that individual circumstances can be "constitutionally relevant" even if those circumstances implicate "facts beyond the predicate offenses alleged in the indictment," this Court in *Moore* held the historical "principle that a convict may be disarmed while he completes his sentence and reintegrates into society" justifies "applying § 922(g)(1)" to someone who is "a convict on supervised release." 111 F.4th at 272-73; *see also Quailes*, 126 F.4th at 221. That a defendant was on supervised release (or parole) when he violated Section 922(g)(1) can properly be considered in connection with his as-applied challenge even though this is conduct that (a) post-dates the predicate conviction; (b) need not itself have resulted in a criminal conviction; and (c) is distinct from the elements that establish whether the challenged statute applies to the person in the first place.

By the same token, the historically grounded dangerousness principle justifies applying Section 922(g)(1) to someone whose particular criminal history or conduct indicates that, as of the time of the firearm possession that he argues is constitutionally protected, he is dangerous. There is no basis to confine the dangerousness inquiry to an abstract inquiry into the elements of the felony predicate statutes. Indeed, were it otherwise, that would suggest that a variety of facts that are plainly relevant to dangerousness should have been ignored in prior cases. *See, e.g.*, *supra* note 1.

Unlike other courts of appeals, the Fifth Circuit has indicated in some of its decisions that courts considering as-applied challenges to Section 922(g)(1) must limit their review to "a defendant's predicate conviction"—not non-felony convictions and not other conduct that could be indicative of dangerousness. *United States v. Kimble*, 142 F.4th 308, 318 (5th Cir. 2025). But the Fifth Circuit conflated a statutory inquiry with a constitutional one when it stated, without citation, that "the only relevant criminal convictions" for purposes of resolving an as-applied constitutional challenge to Section 922(g)(1) are those convictions that were punishable by at least a year of imprisonment. *United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024); *see Kimble*, 142 F.4th at 318 (relying on *Diaz*). *But see Kimble*, 142 F.4th at 321-22 (Graves, J., concurring in part and in the judgment); *United States v. Mancilla*, 155 F.4th 449, 452-54, 454 n.4 (5th Cir. 2025) (Elrod, J., concurring).

At least one felony or felony-equivalent conviction is necessary for Section 922(g)(1) to apply to a person in the first place. But once it has been established that the statute applies, the relevant question in an as-applied constitutional challenge is whether the person challenging it has pointed to specific facts about himself that make him unlike most other felons—as to whom there is strong historical support for disarmament. The statutory element of "crime punishable by imprisonment for a term exceeding one year,"

18 U.S.C. § 922(g)(1), can be established without accompanying details, and indeed could be established without ever putting information about the underlying predicate conviction into the record. *See Old Chief v. United States*, 519 U.S. 172, 174 (1997). When conducting an as-applied constitutional analysis, there is no principled reason to narrowly focus on *some* additional facts beyond that statutory element while disregarding other facts that can also bear on a particular felon's dangerousness. Ignoring such relevant evidence risks misinterpreting the Second Amendment as somehow requiring the rearmament of felons who are plainly dangerous. *See United States v. Mitchell*, 160 F.4th 169, 185-88 (5th Cir. 2025) (holding Section 922(g)(1) unconstitutional without regard to the defendant's "extensive criminal history" and substantial evidence of dangerousness, including evidence that he had threatened to shoot and kill his child's mother while he was on supervised release for a prior federal firearm conviction).

## C. Section 925(c) addresses the constitutional concerns this Court has identified with individual applications of Section 922(g)(1).

By statute, the Attorney General may restore federal firearm privileges to a felon who "appl[ies]" for such relief and shows that "the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public

safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. § 925(c). Congress further provided that a person whose application is denied may seek judicial review in federal district court. *See id.* Until recently, the Section 925(c) relief-from-disabilities program was effectively suspended because the statutory authority had been delegated to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), but appropriations statutes since 1992 have included provisos prohibiting ATF from using appropriated funds to act on Section 925(c) applications. *See United States v. Bean*, 537 U.S. 71, 74 (2002).

Recognizing that the appropriations bar applies only to ATF, the Attorney General recently withdrew the delegation of authority to ATF to administer Section 925(c). *See Withdrawing the Attorney General's Delegation of Authority*, 90 Fed. Reg. 13,080 (Mar. 20, 2025). Soon after doing so, the Attorney General granted relief to 10 individuals. *See Granting of Relief; Federal Firearms Privileges*, 90 Fed. Reg. 17,835 (Apr. 29, 2025). Other individuals have applied for Section 925(c) relief, and the Department is processing their applications. *See infra* note 2. The Department has also issued a notice of proposed rulemaking to establish "criteria to guide determinations for granting relief." *Application for Relief from Disabilities Imposed by Federal Laws with Respect*

*to the Acquisition, Receipt, Transfer, Shipment, Transportation, or Possession of Firearms*, 90 Fed. Reg. 34,394, 34,394 (July 22, 2025) (NPRM).

These steps to re-implement 18 U.S.C. § 925(c) have a substantial bearing on the as-applied constitutional analysis because the Department is implementing Section 925(c) in a manner that should render civil lawsuits like this one largely—perhaps entirely—unnecessary. *See* NPRM, 90 Fed. Reg. at 34,396, 34,400. The individuals who have already received relief from the Attorney General did not have recent convictions and did not have any convictions or arrests of concern since completing their sentences, as verified by records and identity checks that were run before granting relief. The Department has also made clear that there is substantial overlap between the type of person who could obtain relief under this new process and someone who could plausibly prevail on an as-applied constitutional challenge under this Court's precedent. *See, e.g.*, Letter from D. John Sauer, Solicitor Gen., Off. of the Solicitor Gen., U.S. Dep't of Just., to Richard J. Durbin, Ranking Member, Comm. on the Judiciary, U.S. Senate (Apr. 11, 2025), https://perma.cc/4GYE-QKRF (informing Congress that the government was not seeking certiorari in *Range* in part because "Range himself would likely qualify for relief under the revitalized process").

More broadly, the Department has made clear its "commitment to the Second Amendment as an indispensable safeguard of security and liberty" and has announced that it is focused on implementing a new process under Section 925(c) that will "both advance public safety and ensure that the rights of the people enshrined in the Constitution are not infringed." NPRM, 90 Fed. Reg. at 34,396. The Department plans to look in significant part to criminal history and to "focus[]" government resources "primarily on persons who could plausibly" show that they are "'not likely to act in a manner dangerous to public safety.'" *Id.* (quoting 18 U.S.C. § 925(c)). And the Department will grant relief and thereby render litigation unnecessary should it determine that a failure to provide relief would violate the person's Second Amendment rights. *See id.* at 34,404. Any person who is denied relief is statutorily entitled to judicial review in the federal district court for the district in which he resides, *see* 18 U.S.C. § 925(c), and nothing prevents such a person from asserting in that action (and in any appeal that may follow) that a failure to overturn the denial would infringe a constitutional right.

Section 925(c) is more workable than a regime of as-applied challenges because, as the Supreme Court has recognized, "[w]hether an applicant is 'likely to act in a manner dangerous to public safety' presupposes an inquiry into that applicant's background—a function best performed by the Executive,

which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation." *Bean*, 537 U.S. at 77.

And as to the constitutional adequacy of this provision, the Sixth Circuit was correct to observe that "the rearmament criteria in § 925(c) map neatly onto the dangerousness principle underlying traditional firearm regulation." *Williams*, 113 F.4th at 661. A key premise of this Court's precedents—its treatment of Section 922(g)(1) as a "de facto permanent" restriction, *Range*, 124 F.4th at 230—is likewise addressed by the Section 925(c) process.

### D. The present record does not suffice to establish Williams's assertion that Section 922(g)(1) is unconstitutional as applied to him.

For the reasons discussed above and in our prior supplemental brief, this Court could rely on the revitalized Section 925(c) process to resolve this appeal. *See* Gov't First Suppl. Br. 14-20. Alternatively, the Court could hold that a more comprehensive record—whether compiled in district court or via the administrative process—is at least necessary to resolve this case because Williams's own criminal history could involve conduct endangering the physical safety of others but the predicate conviction is decades old and the factual record relevant to dangerousness has not been sufficiently developed, *see id.* at 2-9, 20. The theories Williams has advanced in support of the district court's judgment plainly do not support affirmance. *See, e.g.*, Panel Oral Arg.

31:00-34:58 (contending that Section 922(g)(1) is unconstitutional as applied to a felon who has completed all terms of his sentence, no matter how dangerous the underlying conviction, unless the government seeks and obtains a separate judicial finding of ongoing dangerousness).

The Court could also decline to resolve any of these issues in this case. *See, e.g.*, Joint Status Report 4-5, May 19, 2025 (inviting the Court to keep the matter in abeyance to provide Williams an additional opportunity to consider applying for relief under Section 925(c)); Gov't First Suppl. Br. 9-10 (inviting the Court to remand this case to district court so that it can assess these issues in the first instance). In a future case, this Court would likely have the benefit of a properly developed factual record, whether through more robust district-court discovery or through the Section 925(c) process.[2] At this early stage of the implementation of a new Section 925(c) process, the Court should ensure it is leaving room for the process to play out, recognizing that the availability of

---

[2] In several other cases, civil plaintiffs have pursued relief under Section 925(c) and have agreed that abeyance is warranted. *See, e.g.*, *Fontana v. Attorney General*, No. 24-2526 (3d Cir.); *Pitsilides v. Bondi*, No. 3:19-cv-1736 (M.D. Pa.); *Cooper v. Bondi*, No. 3:19-cv-2141 (M.D. Pa.). Williams has never provided a reasonable explanation for his unexpected refusal to apply for such relief. *See, e.g.*, Gov't First Suppl. Br. 20-23; Williams First Suppl. Br. 11-13; Panel Oral Arg. 44:20-46:30, 1:00:25-1:02:00. Williams currently has a district court judgment in his favor that remains in full effect during the pendency of this appeal, and he cannot claim he is entitled to a decision from this Court on an appeal taken by the government.

relief under Section 925(c) may significantly reduce the volume of civil as-applied lawsuits and may render a number of potential questions that might otherwise arise purely academic.  This would be consistent with the principle of constitutional avoidance, which requires courts not to "anticipate a question of constitutional law in advance of the necessity of deciding it."  *Ashwander v. TVA*, 297 U.S. 288, 346 (1936) (Brandeis, J., concurring) (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

DAVID METCALF
  *United States Attorney*

MICHAEL S. RAAB

  */s/ Kevin B. Soter*
KEVIN B. SOTER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7222*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *California Bar No. 324524*
  *(202) 305-1754*
  *kevin.b.soter@usdoj.gov*

December 2025

## COMBINED CERTIFICATIONS

1.     Government counsel are not required to be members of the bar of this Court.

2.     This brief complies with this Court's October 31 order because it contains 3,744 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f).  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Calisto MT 14-point font, a proportionally spaced typeface.

3.     The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

4.     This document was scanned for viruses using CrowdStrike Falcon Sensor version 7.31.20309.0, and no virus was detected.


                                        */s/ Kevin B. Soter*
                                        Kevin B. Soter