1

2  UNITED STATES COURT OF APPEALS

3  EASTERN DISTRICT OF PENNSYLVANIA

4  - - - - - - - - - - - - - - - - - - -x

5

6  EDWARD A. WILLIAMS,

7  v.                              Main Case No.

8                                  24-1091

9  ATTORNEY GENERAL UNITED STATES OF AMERICA; ET AL.

10        Appellants.

11

12  - - - - - - - - - - - - - - - - - - -x

13

14            February 11, 2026

15            10:16 AM

16

17

18  B E F O R E:

19  HON. CHAGARES, HARDIMAN, SHWARTZ, KRAUSE, RESTREPO, BIBAS,

20  PORTER, MATEY, PHIPPS, FREEMAN, MONTGOMERY-REEVES, CHUNG, BOVE,

21  AND MASCOTT

22  CIRCUIT JUDGES

23

24

25

Transcribed by:  Jacqueline Baradi

eScribers, LLC

7227 North 16th Street, Suite #207

Phoenix, AZ 85020

(800) 257-0885

operations@escribers.net

1

2  A P P E A R A N C E S:

3  FOR THE APPELLANTS:

4  Vivek Suri, Esq.

5  United States Department of Justice, Office of the Solicitor

6  General

7  950 Pennsylvania Avenue NW

8  Washington, DC 20530

9

10

11  FOR THE APPELLEE:

12  Joshua Prince, Esq.

13  Civil Rights Defense Firm

14  646 Lenape Road

15  Bechtelsville, PA 19505

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          CHIEF JUDGE CHAGARES:  -- 091.  Go ahead.

3          MR. SURI:  May it please the Court.  Vivek Suri, on

4     behalf of the Federal Government.  I'll also be representing

5     the Government in the Bost case you'll be hearing later this

6     morning.  May I reserve four minutes for rebuttal?

7          CHIEF JUDGE CHAGARES:  That will be granted.

8          MR. SURI:  Section 922(g)(1) accounts for about a

9     tenth of the federal criminal docket and probably does more to

10    combat gun violence than any other federal statute.  The

11    federal government, therefore, has a profound interest in

12    ensuring that this statute is implemented in a manner that is

13    workable and fulfills its vital public safety objectives, but

14    that also respects the fundamental rights secured by the Second

15    Amendment.

16         The starting point for any Constitutional analysis of

17    Section 922(g)(1) should be the Supreme Court's repeated

18    recognition in Heller and later Second Amendment cases that it

19    is, quote, "presumptively lawful", closed quote, to disarm

20    felons, not violent felons or felons who have committed crimes

21    that judges consider dangerous, or felons who are still serving

22    their sentences.  Felons.

23         JUDGE BIBAS:  Mr. Suri, I think that's a little

24    over --

25         CHIEF JUDGE CHAGARES:  Hold on.  Five minutes.

1        JUDGE BIBAS:  I'm sorry.

2        MR. SURI:  Oh, no.  Please go ahead.  I'll --

3        CHIEF JUDGE CHAGARES:  No, no.

4        JUDGE BIBAS:  Finish your time.

5        CHIEF JUDGE CHAGARES:  You get your time.

6        MR. SURI:  All right.  For that reason, the commission

7    of a crime punishable by at least a year of imprisonment is

8    prima facie sufficient to disarm an individual.  But that

9    presumption can be rebutted as this court recognized in Range,

10   and as we entirely agree.  That is to say, an individual should

11   be allowed to show that the generalization that felons are

12   dangerous doesn't apply to him.  And in conducting that

13   analysis, the nature of the felony is probably going to be the

14   most important factor.  It's going to be much more difficult

15   for a person to rebut that showing that presumption of

16   dangerousness if he has, for example, committed a violent crime

17   as opposed to a crime like food stamp fraud.  But that isn't

18   the only factor Court should consider.  The Court should also

19   consider the circumstances of the offense, the record of the

20   individual, and any other relevant factor that may bear on the

21   dangerousness inquiry.

22       JDUGE PORTER:  My -- I'm sorry.

23       CHIEF JUDGE CHAGARES:  Go ahead.

24       MR. SURI:  I'll waive the remainder of my

25   uninterrupted time.  I'm eager to get to the Court's questions.

1    JUDGE PORTER:  I'll also defer to my colleagues.

2  Judge Bibas?

3    JUDGE BIBAS:  I wanted to let you finish your --

4    MR. SURI:  Yeah.  I have just one more point that I

5  wanted to make, which is a procedural one.  The appropriate

6  mechanism for resolving this dangerousness issue now is a

7  Section 925(c) process that the Department of Justice has

8  revitalized.  It is not civil suits involving prospective as

9  applied challenges, and it certainly is not criminal cases

10  involving defenses under the Second Amendment.

11    Now, the reason for that is not that there is some

12  procedural doctrine that prohibits people from bringing civil

13  suits or criminal defenses; rather, it's just that those

14  defenses or claims will fail now that this Section 925(c)

15  process is available.  What the Second Amendment requires is a

16  reasonable opportunity for an individual to rebut the

17  presumption of dangerousness.  The Second Amendment doesn't

18  take a position on exactly how that opportunity is provided.

19  And now that Congress has provided that opportunity through

20  Section 925(c), and now that the Executive Branch has made that

21  process operational, there's no longer any basis for a court to

22  declare that the statute is unconstitutional.  And with that,

23  I'll welcome the court's questions.

24    CHIEF JUDGE CHAGARES:  If I could just follow up on

25  that.  What's the status of the reinvigoration of 925(c)?  Can

1  you give us an update?  And also, there was a notice of

2  proposed rulemaking.  The deadline passed in October.  I

3  haven't heard anything.  Does it matter?

4         MR. SURI:  There are two ways in which that -- I'd

5  like to answer that question.

6         CHIEF JUDGE CHAGARES:  Sure.

7         MR. SURI:  The first is what is going on with the

8  notice of proposed rulemaking, and the second is what is going

9  on in the interim While that notice is being handled.  The

10 notice of proposed rulemaking was issued in July -- in late

11 July.  The comment period closed in late October.  We then had

12 a government shutdown that took up some time that we might

13 have --

14        CHIEF JUDGE CHAGARES:  We read about that.

15        MR. SURI:  -- otherwise used on this.  And now, we are

16 in the process of continuing with that rulemaking.  We received

17 thousands of comments, which we are required under the APA to

18 address.  So that will take some time.  I can't give the Court

19 a specific deadline about when that process will be concluded,

20 but we are certainly following through on that.

21        CHIEF JUDGE CHAGARES:  Fair enough.  But do we require

22 then all -- I take it that you want to require all people who

23 might ordinarily resort to District Court for declaratory

24 judgment to go through this process.  You can comment on that,

25 but do we do it -- is this the right time to do that?

1    MR. SURI:  It probably will be by the time the Court

2 ultimately decides the case, depending on how long the Court --

3    CHIEF JUDGE CHAGARES:  Okay.

4    MR. SURI:  -- takes to decide the case.  So I can say

5 that.  And it even more likely will be by the time whichever

6 side loses this case files a cert petition in the Supreme

7 Court.  So there's a very strong likelihood that that process

8 will be in place, at the very least, by the time the case is

9 ultimately resolved.  So yes.

10    Now, there is this interim question of what to do

11 until then.  And even in the interim, although there isn't a

12 rule setting out a framework under which these applications are

13 processed, the attorney general has invited people to apply.

14 Civil litigants who have filed lawsuits against the government

15 have been invited to apply.  And --

16    CHIEF JUDGE CHAGARES:  And we saw your 28(j) letter.

17 22 more people have gotten their guns back, I guess.

18    MR. SURI:  22 people have gotten their guns,

19 including --

20    JUDGE 2:  How many applications have you gotten?

21    MR. SURI:  I'm not aware of the total number of

22 applications we have received.  I know that there are at least

23 some applications that we are still investigating and have not

24 acted upon.  But I expect the numbers will rise significantly

25 after the notice of proposed rulemaking is completed because

1  right now, we have not opened up the process to the public as a

2  whole.  It's just people who have brought civil suits or have

3  applied for pardons.

4         JUDGE SHWARTZ:  Should we impose an exhaustion

5  requirement now?

6         MR. SURI:  I would not think of it as an exhaustion

7  requirement, Your Honor.  Instead, I would think of it as the

8  Second Amendment challenge brought in court fails on the

9  merits.  And the reason it fails on the merits is what the

10 Second Amendment requires is a reasonable opportunity to get

11 your gun rights back, and once that's provided, there's no

12 violation.

13        JUDGE SHWARTZ:  So it's more of a prudential matter.

14 As a prudential matter, we should -- courts should stay their

15 hands to allow that process to take place.

16        MR. SURI:  I wouldn't even say as a prudential matter,

17 just as a matter of Constitutional interpretation.  And on this

18 point, I'd refer the Court to Judge Thapar's opinion for the

19 Sixth Circuit in United States against Williams, where he

20 explains what the historical tradition shows is that there is

21 an ability for legislatures to impose categorical rules,

22 disarming groups of people --

23        JUDGE HARDIMAN:  We do have a history of -- the rebels

24 at Shays's Rebellion got their guns back.  But as I understand

25 the argument from Williams and others like him, the argument is

1  that I'm never validly dispossessed because my crime isn't a

2  felony in the way that the Supreme Court referred to the word

3  felony, which was, as you know, were crimes -- very severe

4  crimes usually punishable by death.

5      MR. SURI:  That raises the question of what is the

6  permissible scope of the initial category?  Even granting that

7  there is some ability to get rights back on the back end.  And

8  respectfully, I think that is the sort of question where post-

9  ratification history is helpful.  Post-ratification history

10 cannot establish the principles underlying the First -- the

11 Second Amendment.  We entirely agree with challengers in

12 various Second Amendment cases that the founding history is

13 paramount there.  But post-ratification history can illustrate

14 how a principle that was established at the founding applies to

15 some specific circumstance.  Here, the principle that was

16 established at the founding was you can disarm dangerous

17 categories of people.  But we now know that legislatures across

18 the entire country have disarmed felons, not just violent

19 felons or some subset of felons.

20     JUDGE HARDIMAN:  Well, categories of dangerous people.

21 Can you define that?

22     MR. SURI:  People who are likely to --

23     JUDGE HARDIMAN:  Martha Stewart?  Fraudsters?  What's

24 the definition of dangerous people?

25     MR. SURI:  Martha Stewart would have a good case for

1   getting her gun rights back --

2          JUDGE HARDIMAN:  For the same reason Range prevailed.

3          MR. SURI:  Exactly right.

4          JUDGE HARDIMAN:  Okay.  But why not someone like

5   Williams?

6          MR. SURI:  Mr. Williams may well have a very strong

7   case as well.  I don't wish to resist his claim on the merits.

8   I'm only making a procedural point.  The appropriate avenue for

9   him to bring his claim now.

10         JUDGE SHWARTZ:  So what should the declaratory

11  judgment -- what should the District Court do -- if Mr.

12  Williams was starting today, he filed his civil action, what

13  remedy should the District Court provide under your point of

14  view?

15         MR. SURI:  The District Court should dismiss the case

16  without prejudice and allow him to proceed through the Section

17  925(c) process.

18         JUDGE PHIPPS:  So you focused a lot on this 925(c)

19  process, and you've said twice that the Second Amendment

20  requires a reasonable opportunity to rebut the presumption of

21  dangerousness.  And you point to the 925(c) process as that

22  opportunity.  But we know that that process has been on the

23  books but not funded.  If that process for a huge duration of

24  time -- 20 years, 30 years, maybe -- is unfunded, does that

25  mean that 922(g)(1) would be unconstitutional?  Because there

1   wouldn't have been a reasonable opportunity to rebut that

2   presumption.

3           MR. SURI:  During that period, there was indeed a

4   Constitutional problem, and the solution to that Constitutional

5   problem during that period was prospective civil suits, like in

6   Range.

7           JUDGE PHIPPS:  And so then can I just tease out the

8   925(c) process?  Don't you think that that's -- it's

9   fundamentally discretionary?  And isn't that very, very akin to

10  like relying on the pardon power?  Someone saying, oh, aha, you

11  shouldn't get another habeas, or you shouldn't get this.

12  Because at the end of the day, we've got a fundamentally

13  discretionary process, and it's the pardon power.  And just

14  fall back on the pardon power.

15          MR. SURI:  I appreciate that concern.  And if it were

16  a matter of grace like the pardon power, then our argument

17  would not work.

18          JUDGE PHIPPS:  Isn't it really close to a matter of

19  grace, though?

20          MR. SURI:  No, for two reasons: first, there's

21  judicial review on the back end.  There's no judicial review in

22  the context of pardons.  Second, although the statute does say

23  "may", we think it would be an abuse of discretion to decline

24  to award relief in a context where the Second Amendment would

25  require granting relief.  That is to say, the "may" must be

1    construed in a manner that is consistent with the Second

2    Amendment.

3              JUDGE PHIPPS:  So can I just talk about that judicial

4    review?  The judicial review provision talks about the

5    expansive record and additional evidence that may be brought at

6    times, if I'm recalling correctly.  So what exactly does that

7    mean?  Is that really judicial review of the agency decision,

8    or is that just a whole de novo case such that 925(c) operates

9    much more like an exhaustion mechanism than judicial review?

10   We typically think of judicial review of agency decisions as

11   confined to the agency record.  And now you're saying no, no,

12   no, something completely new.  And so it feels to me, at least,

13   that you don't really have traditional judicial review of

14   agency action, but kind of a separate judicial process with a

15   whole new record that parties can create, leaving the 925(c)

16   process much more like the pardon power.

17             MR. SURI:  No, I don't think that's quite right.  The

18   judicial review of that agency action works like judicial

19   review of other agency action.  The agency conducts its

20   investigation and considers evidence, including the evidence

21   that the individual puts before it, and then the court reviews

22   the same evidence to determine what --

23             JUDGE PHIPPS:  But it's not limited to the

24   administrative record, and that's typically what judicial

25   review of an agency decision is.  There's a record rule.

1           MR. SURI:  If that is so -- and I don't agree that

2    that is so -- but if that is so, that would make it an even

3    better case for us, because that would mean that the individual

4    has an opportunity to put in even more evidence.  And that

5    means that the Second Amendment problem is even less serious

6    than it otherwise would be, because he now has two bites at the

7    apple.  He can put in evidence before the agency, and he can

8    put in evidence before the Court.  He has two opportunities.

9           JUDGE PORTER:  What happens if a different

10   administration shuts down the 925(c) process?

11          MR. SURI:  Then I think the Constitutional problem

12   that existed before we revived this process would arise again.

13   And then you'd be back in the world that you were in Range

14   where courts would have to decide prospective suits.  Now, I

15   still think you don't get into criminal cases where people can

16   raise these defenses after they've been caught having a gun.

17   They'd still have to raise it prospectively through a

18   declaratory judgment action, but I think that would be

19   necessary in that circumstance.

20          CHIEF JUDGE CHAGARES:  Judge Bibas.

21          JUDGE BIBAS:  I'd like to step back from 925(c) to the

22   broader framing issue.  You began your argument by talking

23   about saying that Bruen said it's -- we presume that it's fine

24   to disarm felons.  But the wording was actually, we do not cast

25   any doubt on presumptively lawful, long-standing prohibitions

1   on felons, the mentally ill, et cetera, which then requires us

2   to ask, what's long-standing?  The shape of 922(g)(1) -- look,

3   the first time we had 922(g)(1), 1930s, which was just violent

4   crimes.  It doesn't get broadened beyond violent crimes until

5   the '60s, and then it gets broadened again and again.  So you

6   have to convince us this is the right universe.

7          DOJ's position, of course, is, well, it's all okay.

8   But you understand in Range, we rejected that position.  If

9   that's right, don't we then have to disaggregate something like

10  what the Sixth Circuit did and talk about what in the elements

11  of the crime, or what in the way the crime is committed, or

12  something else makes someone relevantly within the long-

13  standing, dangerous felony tradition?  And how do we go about

14  doing that?  We do want to know, are we limited to the elements

15  of the crime?  Do we look at how this particular crime was

16  committed?  Do we look at the rap sheet and other things that

17  have been proven beyond a reasonable doubt?  Or do we do a

18  wide-ranging inquiry into other indicia of dangerousness?

19  Which would raise some due process concerns.

20          MR. SURI:  I'd respectfully disagree with that reading

21  of Range.  Range didn't say that food stamp fraud, by its

22  nature, is insufficient as a basis for disarmament.  Range

23  looked at the characteristics of Range rather than the

24  characteristics of food stamp fraud.  It says his record shows

25  that he is not dangerous.  That is precisely the type of

1   inquiry that we are advocating here and that Congress

2   prescribed in Section 925(c).

3          Now, if you go down the road of saying there are

4   certain types of felonies that, categorically -- whether based

5   on their elements or other circumstances -- are going to be

6   ineligible even for the initial disarmament, then I think you

7   do get into -- or we, frankly -- get into a lot of problems

8   because that is going to be extremely difficult to administer.

9   Courts have spent the better part of four decades trying to

10  figure out what a violent crime is, or crime of violence is,

11  under various statutes, including the Armed Career Criminal

12  Act.  We've had multiple federal statutes declared void for

13  vagueness because their definition of a crime of violence or

14  violent crime or violent felony has been deemed too improper.

15         By contrast, courts have not had any kind of

16  difficulty applying the type of approach we're advocating.

17  Take the Sixth Circuit, for example.  The Sixth Circuit has

18  adopted essentially the approach that we've suggested.  You do

19  a holistic analysis of the individual and determine if that

20  person is dangerousness -- is dangerous and has rebutted the

21  presumption of dangerousness.

22         JUDGE PORTER:  Sixth Circuit, you mean Williams?

23         MR. SURI:  Williams.

24         JUDGE PORTER:  Didn't Williams say, we'll look at his

25  predicate felony, and we'll look at his entire criminal record?

1  They stop there.  Correct?

2        MR. SURI:  They didn't say those were the only things

3  to look at, but those were the most important factors.  And we

4  certainly believe that those will be the most important factors

5  in the analysis.

6        JUDGE MATEY:  As workable a standard as that might be,

7  I'm assuming you would concede that there's no historical

8  evidence of any sort of permanent disarmament for someone who

9  committed the offense of public drunkenness, that the

10  presumptions and rebutting, all of this is judicial invention,

11  and none of it finds any grounding in the founding.  Is that

12  fair?

13        MR. SURI:  No.  I think part of it --

14        JUDGE MATEY:  Where are we permanently depriving

15  public drunkards?

16        MR. SURI:  So part of it is fair.  I agree.  Permanent

17  deprivations with respect to many of these crimes are not going

18  to be justifiable.  And in many of these contexts, there will

19  be a very strong case that a person can make that he should

20  have his rights restored.  Maybe the 90 percent, 95 percent of

21  people who commit particular types of crimes, maybe even

22  driving while intoxicated, will be able to get their rights

23  back under a proper application of the Second Amendment and the

24  985(c) process.  All we're saying is that analysis has to be

25  conducted on an individual-by-individual level.

1          JUDGE MATEY:  Forgive me if I missed where you

2     answered my question.  Where is the historical evidence that

3     that system that you've outlined, as practical and prudential

4     as it might be, existed anywhere at the founding?

5          MR. SURI:  It existed, for example, in the

6     Revolutionary War era.  This is an example from Judge Thapar's

7     opinion in Williams, not in the context of felons, but in an

8     analogous context of disarming loyalists.  The --

9          JUDGE MATEY:  So those who are disloyal to the

10    sovereign, who threaten uprising against the fundamental

11    standards of the political community, are the same to public

12    drunkards who were all over the place at the founding and were

13    never permanently disarmed.  I'm not sure how I see the

14    connection there.

15         MR. SURI:  If I might develop the connection.

16         JUDGE MATEY:  Please.

17         MR. SURI:  The statutes at the founding adopted

18    different approaches.  Some states adopted the approach of

19    having an initial, individualized inquiry into whether this

20    particular person was or was not disloyal to the country, and

21    therefore, should be disarmed.  Other states, however, adopted

22    some broad proxy that might be imperfect, such as whether

23    someone refused to swear an oath of allegiance.  Some people

24    might do that for legitimate reasons.  For example, Quakers had

25    objections to swearing on religious grounds.  But then they

1    provided, on the back end, a safety valve where they'd have an

2    individualized inquiry to determine whether that categorical

3    generalization should be deemed inapplicable to a particular

4    person.

5           Now, it's the same structure that we're advocating

6    here.  We start out with this presumption -- again, endorsed by

7    the Supreme Court -- that felons are dangerous.  But that's not

8    a conclusive presumption.  That presumption can be rebutted,

9    and it'll be much easier for public drunkenness to rebut the

10   presumption than other cases.  I also note an analogy --

11          JUDGE MATEY:  Is your an analogy going to require us

12   to assume that public drunkenness is akin to disloyalty to the

13   sovereign?

14          MR. SURI:  No, I think it requires you to look at the

15   principles underlying the founding era regulation.  And the

16   principle is you can have a general, imperfect category if you

17   have a safety valve on the back end.  And I'd also remind the

18   court --

19          JUDGE 5:  Do you think that people who are disloyal to

20   the sovereign still constitute the people for purposes of the

21   Second Amendment?

22          MR. SURI:  Yes.  The question of the scope of the

23   people turns on things like whether the person is a citizen or

24   a subject, not on whether the person is disloyal in some sense,

25   in our view.

1           JUDGE 6:  Cross?

2           CHIEF JUDGE CHAGARES:  We'll get you on rebuttal.

3     Okay?

4           MR. PRINCE:  Good morning.  May it please the Court.

5     I'm Attorney Joshua Prince, and I represent the Appellee, Mr.

6     Williams, in this matter.

7           In turning to the focus order that this Court issued,

8     I first want to address the first two questions that the Court

9     presented, which both overlap in the nature of whether when a

10    civil and criminal challenge is filed, whether there should be

11    a different analysis.  I think if we look to the binding

12    precedent of the U.S. Supreme Court in cases such as Leocal v.

13    Ashcroft, FCC v. American Broadcasting Company, also even U.S.

14    v. Thompson/Center Arms, the Supreme Court has been abundantly

15    clear that we cannot have a different analysis on whether a

16    challenge to a law is brought in the civil or criminal context.

17          With that being said, the question then becomes, what

18    is the proper framework to apply?  I've spent a substantial

19    amount of time reading the concurring dissenting opinions, not

20    just in this circuit, but in other circuits.  One of the

21    things, Judge Krause, your eloquent concurring opinion in Range

22    2 identified a number of the issues that our district courts

23    suffer -- as well as U.S. Attorney's Office and Public

24    Defender's Offices -- in relation to determining whether they

25    can charge someone, whether it's Constitutional, to have

1   stripped them of their right.

2          As I argued in this matter before the panel during

3   oral argument, I believe taking a step back and looking at

4   three separate categories of prohibition that are tethered to

5   our history and tradition of disarmament is appropriate.  The

6   first category would be whether the person is of the people.

7   Under the 922(g) context, this would include people who are

8   illegals and also those who renounce their citizenship who

9   didn't regain it.  The second category would be what I'd refer

10  to as the Rahimi category.  That is, those individuals who have

11  been provided some form of process comporting with due process

12  where there's a judicial finding that they pose a danger, a

13  clear threat of danger to another person.  These would include

14  things such as those who are dishonorably discharged,

15  involuntarily committed, protections from abuse restraining

16  orders, which Rahimi itself dealt with.

17         The third category is the category that I believe

18  brings us here today: those who are convicted of specific

19  offenses.  And history and tradition dictate, in relation to

20  that category, that when someone was imprisoned, they were

21  prohibited from being able to possess firearms.  And that makes

22  sense.  I don't think anyone here in the courtroom today is

23  going to dispute the fact that we have a history and tradition

24  of prohibiting those in a jail from possessing a firearm.

25  However, once they were released, their rights were

1    automatically returned, provided that they weren't prohibited

2    under a separate category.

3            And in fact, when we look to Range 2, this court,

4    although it didn't analyze it under those separate categories,

5    it did just that.  First, you see this court go through and

6    identify that Range is of the people.  Next, this Court goes

7    through and looks at the fact that Mr. Range completed all of

8    his court-imposed obligations, paid his fines, his restitution,

9    was no longer under any form of probation, parole, et cetera,

10   and then turned to the fact that the government did not

11   establish -- under what would be my second category -- that

12   there is a separate prohibition of dangerousness, and

13   therefore, it found in Mr. Range's favor.

14           I believe that exact analysis is the proper analysis

15   that gives the District Courts, the U.S. Attorney's Office, the

16   Public Defender's Office, regular criminal defense attorneys,

17   knowledge with which to know immediately whether someone is or

18   is not prohibited.  From a convictee standpoint, it's simply

19   looking at whether the individual has comported with all the

20   court-imposed obligations.  If they have, their Second

21   Amendment rights have been automatically returned.  And in

22   fact, Judge Chung, as you may remember, we discussed your

23   footnote in Range 2 during the panel discussion where Your

24   Honor agreed that, upon completion of their sentence, it would

25   be automatic.  And that is consistent with our history and

1  tradition.

2      The government hasn't pointed to anything that shows

3  that once the individual is released from custody and no longer

4  under probation, parole, supervised release, that they can

5  continue to be divested of a Constitutional right.  Now, I will

6  give you -- I believe this court got it right in cases like

7  Moore, where it said, while the individual is still under

8  supervised release, you can divest them of that right because

9  at the time of founding, probation, parole, supervised release

10  wasn't a thing.  You were either in jail, or you weren't.

11  Here, in the 21st century, we've opened it up to allow people

12  to agree that if you want to be divested of your right, but you

13  get out of jail, you can agree to that.  Seeing that my time is

14  up --

15          CHIEF JUDGE CHAGARES:  Yes.

16          MR. PRINCE:  -- I welcome questions.

17          CHIEF JUDGE CHAGARES:  Can you tell us why we

18  shouldn't consider post-conviction conduct in determining

19  dangerousness?

20          MR. PRINCE:  Because I don't believe it's tethered to

21  our history and tradition, unless -- again, it would be in

22  relation to that second category where the government brings

23  some sort of action in a court of law, comporting with due

24  process, and shows that this person provides some sort of clear

25  threat of physical violence to another person.  And as our U.S.

1   Supreme Court made clear, even where that occurs, it must be

2   temporary.  It cannot be permanent.  And the bans that we are

3   talking about under 922(g) are generally permanent.  There are

4   some exceptions to some of them, like a fugitive from justice

5   if you're no longer a fugitive, obviously.  But generally

6   speaking, when we're looking at 922(g)(1), it is a permanent

7   ban.

8           CHIEF JUDGE CHAGARES:  Well, what if there's a

9   subsequent conviction after the predicate conviction?  Should

10  that be something a court would consider?

11          MR. PRINCE:  Only to the extent that the individual

12  has not complied with the court-imposed obligations.  If they

13  have, then that also is no longer an issue in relation just to

14  that convicted status.  Again, there could be another separate

15  issue.  For example, you could have someone who is involved in

16  some sort of simple assault, whereby they get convicted, or

17  maybe they're on ARD, such of that nature.  But at the same

18  time, there's a restraining order filed against them.  They're

19  released now from all the court-imposed disabilities -- or

20  obligations, let me say -- but they're still prohibited because

21  the restraining order continues in effect.  So in that

22  scenario, I do agree that the court should be able to look at

23  that type of criteria.  But the issue with dangerousness is its

24  fluid nature.  It is very akin, in my opinion, to that that the

25  U.S. Supreme Court issued in Rahimi when the government argued

1  he should be denied because he wasn't responsible.  How do you

2  define what is responsible?

3  　　　JUDGE PORTER:  Why isn't 925(c) not the answer for Mr.

4  Williams?

5  　　　MR. PRINCE:  Well, there's a number of issues with

6  925(c).  First, we don't yet have any type of final rule.  But

7  setting that issue aside, one of the major issues is that an

8  individual to apply for relief under 925(c), they have to state

9  that they are prohibited, that they agree.  This challenge is

10  in relation to whether constitutionally, the government can

11  even deny them to begin with.  And I think there becomes issues

12  of waiver --

13  　　　JUDGE HARDIMAN:  If your client admits he's

14  prohibited, then he may be admitting to a crime because he's

15  possessed firearms since this conviction.  Right?

16  　　　MR. PRINCE:  Unless it's unknowing.  And as we know

17  from Rehaif and such of that nature, and the record in this

18  matter reflects that Mr. Williams had no knowledge.  In fact, I

19  pulled his --

20  　　　JUDGE HARDIMAN:  Well, I don't want to litigate

21  whether he's committed some other crime.  I'm just suggesting

22  that if, in fact, he needs to say that he's a prohibited person

23  under 925(c), that would put him in potential criminal

24  jeopardy.  You would at least agree to --

25  　　　MR. PRINCE:  Yes.

1          JUDGE HARDIMAN:  -- with the qualifier potential.

2          MR. PRINCE:  Yes, Your Honor.  And there are other

3     issues as we heard --

4          CHIEF JUDGE CHAGARES:  At the panel, didn't the

5     government concede that we -- that they would waive that

6     argument, that there would be no -- if you went into the

7     administrative process that would not have a binding effect on

8     anything else, actually?

9          MR. PRINCE:  That is what the attorney said during

10    argument.  I don't believe that he was in a position to be able

11    to bind the attorney general, especially into the future.  We

12    also have the issue that the proposed rule allows any future

13    attorney general to revoke any relief granted.  This court is

14    well aware of when new administrations come into office, how

15    all of a sudden, everything in the past administration done is

16    sought to be undone.  And Mr. Williams has had this case

17    pending now for nine years.  Nine years going through this

18    litigation, challenging this.  And yes, the precedent has

19    changed.  But at the same time, he brought it nine years ago.

20         And when we look -- turn back to 925(c), in 10 months

21    since the government has told people -- some people -- that

22    they can apply for relief, 22 applications have been

23    considered.  That's it.  10 months.  In their notice of

24    proposed rulemaking, they anticipate a million applications to

25    be filed.  How are they possibly going to get through that if

1    it takes them 10 months to get through 22?  And I know our

2    office has eight different applications pending that haven't

3    been ruled on.  In fact, the 28(j) letter that was filed with

4    this court says that these individuals were granted relief.

5    But I've looked at the Federal Register.  And I have yet to see

6    anything published in the Federal Register, unlike the initial

7    10, that shows that 22 people had been -- as of, apparently

8    Friday -- granted some form of relief.

9            And there's a number of issues, as I identified in my

10   prior oral argument with equal protection, how this application

11   process is going to proceed to ensure individuals in the same

12   exact scenario are treated identically.  They haven't addressed

13   that at all in the NPRM.  How do we know that, if Mr. Williams

14   applies and is approved, that another person in identical

15   position to Mr. Williams won't be denied?

16           JUDGE MASCOTT:  So counsel, I understand your concerns

17   about the -- you're describing about the current 925(c)

18   process, and we don't yet have a final rule.  But are there

19   certain ways in which that could play out that would be

20   constitutionally sound?  What if, to your point, there were

21   just broad categories where, if an individual fit into certain

22   categories, they were permitted to have possession of a firearm

23   again?  Could it be made constitutionally sound, the 925(c)

24   process?  And if so, how?

25           MR. PRINCE:  I don't know that the process, unless

1    they take a very broad swath of basically granting relief

2    almost in a large part in fashion to every individual who fits

3    this criteria could cause 922(g) to come back into compliance

4    constitutionally, or at least (g)(1).  There are so many

5    different issues that would need to be addressed in that type

6    of process, including whether a future administration could

7    revoke that grant.  And we're talking about a Constitutional

8    right here.  Anyone should be able to know whether or not they

9    still have their Second Amendment rights, or if they were taken

10   back -- taken away, whether they've been restored.

11        JUDGE MASCOTT:  But if the Supreme Court's

12   understanding is so long as the person has a reasonable

13   opportunity to have their rights restored, how does that

14   play -- I mean, how does that play out?

15        MR. PRINCE:  I don't --

16        JUDGE MASCOTT:  There must be some way in which that

17   can be satisfied.

18        MR. PRINCE:  I don't believe that the U.S. Supreme

19   Court precedent supports that it's on the individual to have to

20   apply to get their Second Amendment rights back.  Based on the

21   precedent, the Supreme Court was clear in Rahimi, only

22   temporary prohibitions are Constitutional.  The court went out

23   of its way on three different occasions to use the word

24   temporary.  It didn't need to.  Clearly, that is an important

25   word to the court.  And if it can only be a temporary

1   deprivation -- sure, this court, as well as probably the U.S.

2   Supreme Court, at some point is going to have to decide what is

3   a temporary disarmament.  But here, we have an individual 20

4   years since his alleged disarmament.

5           JUDGE PHIPPS:  So if you're saying that the problem is

6   the presumption of permanent disarmament, you're also kind of

7   saying that there's no cure that can be done through 925(c),

8   just to follow up on Judge Mascott.  She said, could it be

9   written in a way that would be?  And you're saying, maybe for

10  temporary, it could be.  But if the problem is the presumption

11  of permanent disarmament, you're saying there's no way that the

12  government could do anything that would ever cure that because

13  the presumption is the problem, not whatever cure the

14  government could have.

15          MR. PRINCE:  That is my position.

16          JUDGE PHIPPS:  Is that your position?

17          MR. PRINCE:  That is my position, in my opinion, Your

18  Honor.

19          JUDGE SHWARTZ:  What is the Court permitted to do?

20  Let's assume that 925(c) either doesn't exist.  What is a court

21  permitted to consider?  Because the affirmative act is going to

22  come from the person who's been disarmed, whether they can

23  consider to -- it's not even a -- it's a declaration that

24  922(g)(1) would be unconstitutional as applied to him.

25          MR. PRINCE:  Correct.  And I would put forth, Your

1    Honor, that the individual doesn't have to apply for

2    declaratory relief.  If this court were to adopt the analysis I

3    put forth, because if we just move to the convicted status that

4    we're here today based upon, it would simply be looking, have

5    they completed all their court-imposed obligations?  If so --

6         JUDGE PORTER:  That's a different question.  Let's

7    just go with Judge Shwartz's question.  Assume he applies in a

8    civil declaratory judgment action.  What information can the

9    court consider?

10        MR. PRINCE:  It would be just simply what he was --

11   not even what he was convicted of, but has he complied with all

12   of his court-imposed obligations relative to that conviction?

13        JUDGE HARDIMAN:  All right.  Assume we don't agree

14   with that.  What's the next fallback position?

15        MR. PRINCE:  Well, at that point, Your Honor, although

16   I think dangerousness is an extremely sticky issue -- like I

17   said, consistent with the responsible nature argument that the

18   government made previously in Rahimi -- there would need to be

19   some determining factors and limiting factors of what all a

20   court can consider to determine someone's dangerousness.

21        JUDGE SHWARTZ:  And what can we consider?  What could

22   a court consider?

23        JUDGE PORTER:  So there's the predicate felony.

24        MR. PRINCE:  Correct.

25        JUDGE PORTER:  There's the way in which he committed

1　the felony.  There's other criminal records, other convictions

2　or pleas.  And then I guess there's anything else, all post-

3　conviction conduct.  Whatever he did yesterday.

4　　　　　　MR. PRINCE:  And I think that goes a step too far when

5　you're going to consider anything because there's no due

6　process an individual -- again, especially because this law is

7　a criminal law in nature.

8　　　　　　JUDGE MONTGOMERY-REEVES:  What part is a step too far?

9　Judge Porter just gave you like four things.  Which part is a

10　step too far?

11　　　　　　MR. PRINCE:  I believe that only the predicate offense

12　and compliance with the predicate offense obligations --

13　　　　　　JUDGE PORTER:  So it's a categorical approach, right?

14　　　　　　MR. PRINCE:  Correct, Your Honor.

15　　　　　　JUDGE SHWARTZ:  So they couldn't -- the court could

16　not consider the facts that led to that conviction and the

17　resulting sentence.  Stuck with just the elements of the crime

18　of conviction only.

19　　　　　　MR. PRINCE:  If we look to history and tradition, I

20　believe that is accurate, Your Honor.  Again, as I --

21　　　　　　JUDGE SHWARTZ:  And what history and tradition are you

22　relying on?  I think there was already some discussion you had

23　about the fact that there was no rearmament process.

24　　　　　　MR. PRINCE:  So again, under the convicted status, it

25　would be, have they complied with all their court-imposed

1    obligations?  Because the District Court trial courts --

2         JUDGE SHWARTZ:  Regardless of what the facts were

3    underlying that conviction.

4         MR. PRINCE:  That wouldn't apply in -- historically,

5    again, that was not considered unless we moved to the Rahimi

6    category, where the government brought an action comporting

7    with due process, showing that this person posed a clear danger

8    of physical threat or violence to another person and obtained a

9    judicial finding to that degree, at which point, then

10   temporarily, that person could continue to be prohibited during

11   the duration of that finding.

12        JUDGE KRAUSE:  Counsel, if there's a -- oh, sorry.  Go

13   ahead.

14        JUDGE SHWARTZ:  No.  Go ahead.

15        JUDGE KRAUSE:  If there's a presumption, that takes

16   care of the due process issue, right?  Then everyone knows from

17   the outset, convicted of a felony, any felony, prohibited under

18   the statute.  That takes care of the due process issue, right?

19        MR. PRINCE:  Only, it would arguably take care of the

20   due process issue, except for it would seemingly be violative

21   of the Second Amendment.

22        JUDGE KRAUSE:  Okay.  I'm asking about the due process

23   issue.  On the Second Amendment, you've said there needs to be

24   an individualized finding.  What the government has proposed

25   here, and appears to be conducting even before the rule is in

1  place, looks like an individualized determination about whether

2  the person before them is dangerous or not.  It's continuing to

3  be a threat to public safety.  Why doesn't that take care of

4  the -- if it fits into the second category then for Rahimi

5  category that you've identified.

6         MR. PRINCE:  Well, as I mentioned, it could only be

7  temporary.  Mr. Williams has been now arguably subjected to

8  this for 20 years.

9         JUDGE KRAUSE:  But he's been invited to put in an

10 application.  And if he did, it might be next week his rights

11 were restored.  Right?

12        MR. PRINCE:  I don't think that's likely, given it

13 took 10 months from another case that was offered at the same

14 time for a determination.  But nevertheless, again, it could be

15 revoked at any point in time.

16        JUDGE KRAUSE:  But that's possible if he puts in his

17 application at this time.

18        MR. PRINCE:  It's possible, but he's not required to

19 do that.  Again, it would be hypothetical for us to assume

20 what's going to occur.  The government admitted during oral

21 argument last time that they couldn't say whether his

22 application would be granted or not.  He's spent, as I said,

23 nine years litigating this case.  And there's going to be

24 challenges to the final rule that's going to cause it to be

25 questioned and potentially ruled unconstitutional or unlawful.

1           JUDGE KRAUSE:  The executive here isn't waiting for

2      the rule to be finalized.  They're already engaged in a process

3      and have restored 32 people's rights.

4           MR. PRINCE:  And you're --

5           JUDGE KRAUSE:  So given that, why wouldn't we, looking

6      at the principles that go along with discretionary

7      exhaustion -- prudential exhaustion, as it's sometimes

8      called -- require that your client and others avail themselves

9      of that process before bringing litigation in the federal

10     courts?

11          MR. PRINCE:  Because, again, we're challenging the

12     constitutionality of this issue, not that there is a relief

13     mechanism.  We're saying it's unconstitutional to continue to

14     deprive him of this right.

15          JUDGE KRAUSE:  But doesn't our case law say it's --

16     the unconstitutionality is because there's not a relief

17     mechanism?  And now there is.

18          MR. PRINCE:  But I don't believe it's truly a relief

19     mechanism in the way the government is contending it is.  It's

20     temporary.  It may go away in the next administration.

21     Everyone granted relief may have their relief revoked.  There

22     are a plethora of issues with 925(c), and it also statutorily

23     says that someone may apply for this relief, not that they are

24     required to apply for it.  And that was a decision by the

25     Congress.

1          JUDGE KRAUSE:  Let me ask you about the factors that
2     can be considered because the attorney general has rejected a
3     categorical approach and is looking at dangerousness refusing
4     as the categorical approach makes us do.  And we've said over
5     and over, as of other circuits, we have to disregard reality
6     and use these artificial limits that often lead to unjust
7     results.  Is it your position that the factors that the
8     executive branch has said are relevant to the dangerousness
9     determination under the Second Amendment are impermissible?
10    That the president has it wrong.

11          MR. PRINCE:  As I see, my time is up.  May I respond,
12    Your Honor?

13          CHIEF JUDGE CHAGARES:  Yes.

14          MR. PRINCE:  I don't believe, in the NPRM, that there
15    is a proper framework put forth of what constitutes
16    dangerousness.  And I believe anyone should be able to look at
17    any final rule -- which, again, we all can guess at what it may
18    be -- and know whether or not they would be granted relief.
19    And the NPRM has made very clear that there are going to be
20    large categories of people that will not be granted relief.
21    And there's questions about whether that's correct with the
22    delegation of authority by the Congress and a number of other
23    issues.

24          But there hasn't been a clear delineation of what
25    constitutes dangerousness, whose application would be approved.

1   And I'd be remiss not to mention the fact that the attorney

2   general is -- was a defendant, now the appellant in this

3   matter, and is in the driver's seat.  We were successful at the

4   District Court.  If the attorney general doesn't believe Mr.

5   Williams poses any risk, they can withdraw this appeal.  And

6   that was raised before the panel as well.  But they have

7   elected to proceed forward, which I think also draws into

8   question whether Mr. Williams would actually be granted relief

9   since we have all the same players involved.

10          CHIEF JUDGE CHAGARES:  All right.  Well, thank you,

11  counsel.  We'll hear from --

12          MR. PRINCE:  Thank you, Your Honor.

13          CHIEF JUDGE CHAGARES:  -- we'll hear rebuttal.

14          MR. SURI:  Three quick points in rebuttal.  First, I

15  entirely appreciate that it is frustrating to have this case

16  litigated for nine years and still not have a definitive

17  resolution.  Nevertheless, it is a basic principle of law that

18  courts must apply the legal rules that exist when they issue

19  their decisions.  And today, those legal rules include Section

20  925(c).  So I don't think the fact the case has been dragging

21  on for a long time is a basis for disregarding Section 925(c)

22  before taking the brave step of striking down an act of

23  Congress as unconstitutional.

24          JUDGE HARDIMAN:  Mr. Suri, let me ask you about 925(c)

25  because I assume that you agree that criminal defendants like

1  Mr. Bost, or others who have committed far less serious crimes

2  than Mr. Bost, they have a right to file a motion to dismiss

3  the indictment, claiming that 922(g)(1) is unconstitutional as

4  applied.  We agree on that, right?

5          MR. SURI:  They have a right to file it, but the

6  motion would fail because the person could instead have either

7  filed a 925(c) application, or if 925(c) was not available,

8  filed a declaratory judgment civil suit.  And that is a

9  sufficient --

10          JUDGE HARDIMAN:  So you think in a criminal defendant

11  who doesn't take the affirmative step of filing for 925(c)

12  relief is somehow procedurally barred -- or substantively

13  barred from succeeding on their motion to dismiss the

14  indictment?

15          MR. SURI:  Substantively barred.  Exactly right.  And

16  the reason the person is substantively barred -- and I can give

17  you a few analogies when I have more time --

18          CHIEF JUDGE CHAGARES:  Is this Bost?

19          MR. SURI:  -- when I have more time in Bost.

20          CHIEF JUDGE CHAGARES:  Okay.

21          MR. SURI:  But the reason the person is going to be

22  substantively barred is that what the Second Amendment requires

23  is a reasonable opportunity to rebut the presumption of

24  dangerousness.  And as long as that's provided, the statute is

25  Constitutional.

 1          JUDGE MASCOTT:  Counsel, I have a --

 2          JUDGE HARDIMAN:  All right.  Let me just finish for

 3     one second, if I could.  I wanted to talk about Williams when I

 4     was asking about the Bost situation because I want to make sure

 5     I understand the government's position.  Based on what you just

 6     said, I take it that criminal defendants filing motions to

 7     dismiss indictments are not differently situated than civil

 8     litigants like Williams, who filed DJ actions.

 9          MR. SURI:  Entirely correct.

10          JUDGE HARDIMAN:  All right.  And both lose if they

11     don't -- they have to go 925(c) route first.

12          MR. SURI:  Correct.

13          JUDGE HARDIMAN:  Okay.

14          JUDGE PORTER:  Where does the presumption of

15     dangerousness come from?

16          MR. SURI:  That's the term the Supreme Court has used.

17     But it also comes from history and tradition.  As Judge

18     Thapar's opinion for the Sixth Circuit explained, it is

19     permissible for legislatures to presume that a category of

20     people is dangerous as long as there's a reasonable opportunity

21     to rebut that presumption.

22          JUDGE MONTGOMERY-REEVES:  Judge Hardiman asked you,

23     what are dangerous categories of people?  I didn't hear the

24     answer to that.  What are dangerous categories of people, in

25     your opinion?

1        MR. SURI:  If you're asking, what is the definition of

2   dangerousness?  Then I would say categories of people who

3   are -- pose an unusually high risk of misusing firearms

4   relative to the population as a whole.

5        JUDGE PORTER:  Does that include any felon?  All

6   felons?

7        MR. SURI:  Presumptively, yes.  And the basis we have

8   for that is the fact that that's what most states and Congress

9   have determined for decades.  Now, that doesn't determine what

10  the Second Amendment means, but that is good evidence of who is

11  and isn't dangerous.  With respect, legislatures across the

12  country are better positioned to make empirical judgments about

13  dangerousness than our courts.  Courts are here to enforce the

14  Second Amendment principle that there must be a reasonable

15  opportunity for individuals to rebut that presumption.

16       JUDGE PORTER:  In Rahimi, I understood why it kind of

17  made sense because there was an adjudication by a judge with

18  some due process.  He found the guy to be dangerous to

19  someone -- present a physical danger to someone else.  How

20  would that work for Mr. Williams?  His felony is a 20-year-old

21  DUI.

22       MR. SURI:  The court in Rahimi was very clear to say

23  that, although that case involved an individualized

24  determination, it did not, by any means, mean to foreclose

25  categorical rules.  And it had a citation of Heller, the

1    section talking about felons.

2            JUDGE PORTER:  Right.

3            CHIEF JUDGE CHAGARES:  Judge Mascott.

4            JUDGE MASCOTT:  Thank you.  I needed a little help

5    from the chief.  Counsel, could you talk a little bit about

6    whether there are Constitutional contours, in your view, to

7    reasonable opportunity?  For example, does it require a neutral

8    arbiter?  How do we guarantee neutrality?  And is there a

9    certain time limit?  Because I hear you saying that nine years

10   is not too long to wait for a reasonable opportunity.

11           MR. SURI:  No.  I'm not saying that nine years is not

12   too long to wait.  It is far too long to wait for someone whose

13   Second Amendment rights have been denied.  It's just an

14   unfortunate fact that this litigation has taken that long.

15   With respect to the Constitutional contours, I wouldn't want to

16   say that it is definitively required to have judicial review,

17   but at least it is sufficient that there is judicial review

18   here, that is an independent judge determining ultimately

19   whether the statutory standard is satisfied.

20           JUDGE MASCOTT:  So if there's an independent judge on

21   the back end, there can specifically not be neutrality at the

22   initial attorney general phase within DOJ?  People who are

23   predisposed to be against gun rights for felons, or -- I mean,

24   how are we going to craft a fair process?  There's no

25   responsibility for that at all under the statute?

1          MR. SURI:  No.  Under the Supreme Court's due process

2     jurisprudence, there would likely be a requirement of an

3     impartial adjudicator.  And that's not coming from the Second

4     Amendment.  That's coming from the Due Process Clause.  But

5     that would apply here, as in other administrative

6     adjudications.

7          JUDGE MASCOTT:  And is the Department considering that

8     as it crafts the rule?

9          MR. SURI:  The Department is considering all sorts of

10    comments that have been made as it crafts the rule.  But the

11    statute ultimately vests the authority in the attorney general

12    that that is something that's unavoidable under Supreme Court

13    decisions like Arthrex that say that the head of the Department

14    must have the ultimate authority to make the decision.

15         JUDGE KRAUSE:  It sounds, counsel, like you're

16    discussing the considerations that inform discretionary

17    exhaustion and balancing of the interests on the institutional

18    side of what the statutory scheme looks like, if it's given

19    discretion to the agency, the efficiency that that would

20    create.  And on the other side, that if there were an arbiter

21    that was predisposed to deny the right, that would counsel

22    against exhaustion under the doctrine of discretionary

23    exhaustion.  Are you advocating that as a way we should think

24    about your arguments and the relief that is being sought today?

25    Or is the only relief you're asking for a dismissal on the

1   merits?

2          MR. SURI:  No, Judge Krause.  It would be perfectly

3   acceptable to us if the Court wants to frame this in terms of

4   exhaustion.  We do think it is cleaner, doctrinally, to frame

5   it in terms of the Second Amendment's substance.  That is to

6   say, what the Second Amendment on the merits requires is a

7   reasonable opportunity to rebut the presumption of

8   dangerousness, and that is satisfied by the administrative

9   process.

10         JUDGE PORTER:  Why should, or how can, we impose an

11  exhaustion requirement when Congress itself didn't do so in

12  925?

13         MR. SURI:  It is implicit in Section 925(c)'s

14  structure that an individual first file an application with the

15  attorney general and only then go to court to obtain judicial

16  review.  So I agree there's nothing explicit in the statute,

17  but that is inherent in the statutory scheme.

18         JUDGE PHIPPS:  So can I just go back to your theme of

19  the Second Amendment requires a reasonable opportunity to rebut

20  the presumption of dangerousness?  Are you deriving this

21  primarily from Rahimi?  Because wasn't the issue in Rahimi that

22  the reasonable opportunity occurred beforehand?  It wasn't

23  talking about post-deprivation opportunities, but pre-

24  deprivation opportunities?

25         MR. SURI:  I'm not deriving it from Rahimi.  I'm

1    deriving it first from this court's decision in Range, and

2    secondly, from the history and tradition of the Sixth Circuit

3    cataloged in the United States against Williams.

4            JUDGE PHIPPS:  So then maybe we should account for the

5    Rahimi angle, which says that the notice and opportunity was

6    pre-deprivation notice and opportunity.  And as you know,

7    there's a big difference between pre- and post-deprivation

8    opportunities be heard.

9            MR. SURI:  But I think if you say that is the extent

10   of the legislature's authority, then you are eliminating a

11   separate principle that Rahimi explicitly recognized, which is

12   the ability to make categorical judgments.  The moment you say,

13   you must have an individualized opportunity to show that you

14   are not dangerous before you are disarmed, that means

15   categorical disarmaments are out the window.  And that's

16   contrary to what Rahimi explicitly states.

17           CHIEF JUDGE CHAGARES:  I had a discussion with your

18   adversary about the prior panel opinion argument.  And counsel

19   for the government said nothing would be waived if someone

20   engaged in the 925(c) administrative process.  Are you willing

21   to adopt that as well?

22           MR. SURI:  Yes.  I think that what my friend was

23   suggesting is that he would somehow have to admit that he has

24   violated the law.  That's not true.  All he'd have to say is,

25   here's a law that, prospectively, going forward is, in my view,

1    preventing me from possessing a gun, and I'd like relief from

2    that.  Now, he has to do that to file a civil suit as well.  He

3    has to establish standing.  And to establish standing, he has

4    to say this law is preventing me from owning a gun.  So 925(c)

5    is working no differently from standing for a civil suit.

6            CHIEF JUDGE CHAGARES:  Well, now your time is up.  But

7    we jumped all over you when you stood up.  If you want to sum

8    up what -- anything else you wanted to say within maybe 20

9    seconds.

10            MR. SURI:  No.  I'll have another chance to speak, so

11    I'll wait for that.

12            CHIEF JUDGE CHAGARES:  You will.  Thank you.  Thank

13    you.  Thank you, counsel, for your excellent argument and

14    briefing in this case.  We'll take the case under advisement.

15        (Whereupon these proceedings were concluded at 11:09 AM)

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Jacqueline Baradi, certify that the foregoing transcript is

5    a true and accurate record of the proceedings.

6

7        *Jacqueline Baradi*

8    _____

9    _____

10   Jacqueline Baradi (CDLT-337)

11   TTA-Certified Digital Legal Transcriber

12

13   eScribers

14   7227 North 16th Street, Suite #207

15   Phoenix, AZ 85020

16

17   Date:  February 17, 2026

18

19

20

21

22

23

24

25

**0**

**091**   4:2

**1**

**1**   4:8,17 11:25
15:2,3 24:6
28:4 29:24
37:3
**10**   26:20,23
27:1,7 33:13
**10:16**   1:15
**11**   1:14
**11:09**   44:15
**16th**   2:4 45:14
**17**   45:17
**1930s**   15:3
**19505**   3:15

**2**

**2**   8:20 20:22
22:3,23
**20**   11:24 29:3
33:8 39:20
44:8
**2026**   1:14
45:17
**20530**   3:8
**207**   2:4 45:14
**21st**   23:11
**22**   8:17,18
26:22 27:1,7
**24-1091**   1:8
**257-0885**   2:6

**28**   8:16 27:3
**2985**   45:8

**3**

**30**   11:24
**32**   34:3
**337**   45:10

**5**

**5**   19:19

**6**

**6**   20:1
**60s**   15:5
**646**   3:14

**7**

**7227**   2:4 45:14

**8**

**800**   2:6
**85020**   2:5
45:15

**9**

**90**   17:20
**922**   4:8,17
11:25 15:2,3
21:7 24:3,6
28:3 29:24
37:3
**925**   6:7,14,20
6:25 11:17,18
11:21 12:8
13:8,15 14:10
14:21 16:2
25:3,6,8,23

26:20 27:17,23
29:7,20 34:22
36:20,21,24
37:7,7,11
38:11 42:12,13
43:20 44:4
**95**   17:20
**950**   3:7
**985**   17:24

**a**

**ability**   9:21
10:7 43:12
**able**   17:22
21:21 24:22
26:10 28:8
35:16
**abundantly**
20:14
**abuse**   12:23
21:15
**acceptable**   42:3
**account**   43:4
**accounts**   4:8
**accurate**   31:20
45:5
**act**   16:12 29:21
36:22
**acted**   8:24
**action**   11:12
13:14,18,19
14:18 23:23
30:8 32:6

**actions**   38:8
**actually**   14:24
26:8 36:8
**additional**   13:5
**address**   7:18
20:8
**addressed**
27:12 28:5
**adjudication**
39:17
**adjudications**
41:6
**adjudicator**
41:3
**administer**
16:8
**administration**
14:10 26:15
28:6 34:20
**administrations**
26:14
**administrative**
13:24 26:7
41:5 42:8
43:20
**admit**   43:23
**admits**   25:13
**admitted**   33:20
**admitting**
25:14
**adopt**   30:2
43:21
**adopted**   16:18
18:17,18,21

adversary
43:18
advisement
44:14
advocating
16:1,16 19:5
41:23
affirmative
29:21 37:11
agency 13:7,10
13:11,14,18,19
13:19,25 14:7
41:19
ago 26:19
agree 5:10
10:11 14:1
17:16 23:12,13
24:22 25:9,24
30:13 36:25
37:4 42:16
agreed 22:24
aha 12:10
ahead 4:2 5:2
5:23 32:13,14
akin 12:9 19:12
24:24
al 1:9
alleged 29:4
allegiance
18:23
allow 9:15
11:16 23:11
allowed 5:11

allows 26:12
amendment
4:15,18 6:10
6:15,17 9:8,10
10:11,12 11:19
12:24 13:2
14:5 17:23
19:21 22:21
28:9,20 32:21
32:23 35:9
37:22 39:10,14
40:13 41:4
42:6,19
amendment's
42:5
america 1:9
american 20:13
amount 20:19
analogies 37:17
analogous 18:8
analogy 19:10
19:11
analysis 4:16
5:13 16:19
17:5,24 20:11
20:15 22:14,14
30:2
analyze 22:4
angle 43:5
answer 7:5
25:3 38:24
answered 18:2
anticipate
26:24

apa 7:17
apparently
27:7
appeal 36:5
appeals 1:2
appears 32:25
appellant 36:2
appellants 1:10
3:3
appellee 3:11
20:5
apple 14:7
application
17:23 27:10
33:10,17,22
35:25 37:7
42:14
applications
8:12,20,22,23
26:22,24 27:2
applied 6:9 9:3
29:24 37:4
applies 10:14
27:14 30:7
apply 5:12 8:13
8:15 20:18
25:8 26:22
28:20 30:1
32:4 34:23,24
36:18 41:5
applying 16:16
appreciate
12:15 36:15

approach
16:16,18 18:18
31:13 35:3,4
approaches
18:18
appropriate
6:5 11:8 21:5
approved
27:14 35:25
arbiter 40:8
41:20
ard 24:17
arguably 32:19
33:7
argued 21:2
24:25
argument 9:25
9:25 12:16
14:22 21:3
26:6,10 27:10
30:17 33:21
43:18 44:13
arguments
41:24
armed 16:11
arms 20:14
arthrex 41:13
artificial 35:6
ashcroft 20:13
aside 25:7
asked 38:22
asking 32:22
38:4 39:1
41:25

**assault** 24:16
**assume** 19:12
  29:20 30:7,13
  33:19 36:25
**assuming** 17:7
**attorney** 1:9
  8:13 20:5 26:9
  26:11,13 35:2
  36:1,4 40:22
  41:11 42:15
**attorney's**
  20:23 22:15
**attorneys** 22:16
**authority** 35:22
  41:11,14 43:10
**automatic**
  22:25
**automatically**
  22:1,21
**avail** 34:8
**available** 6:15
  37:7
**avenue** 3:7 11:8
**award** 12:24
**aware** 8:21
  26:14
**az** 2:5 45:15

**b**

**b** 1:18
**back** 8:17 9:11
  9:24 10:7,7
  11:1 12:14,21
  14:13,21 17:23

19:1,17 21:3
  26:20 28:3,10
  28:20 40:21
  42:18
**balancing**
  41:17
**ban** 24:7
**bans** 24:2
**baradi** 2:2 45:4
  45:10
**barred** 37:12
  37:13,15,16,22
**based** 16:4
  28:20 30:4
  38:5
**basic** 36:17
**basically** 28:1
**basis** 6:21
  15:22 36:21
  39:7
**bear** 5:20
**bechtelsville**
  3:15
**began** 14:22
**behalf** 4:4
**believe** 17:4
  21:3,17 22:14
  23:6,20 26:10
  28:18 31:11,20
  34:18 35:14,16
  36:4
**better** 14:3
  16:9 39:12

**beyond** 15:4,17
**bibas** 1:19 4:23
  5:1,4 6:2,3
  14:20,21
**big** 43:7
**bind** 26:11
**binding** 20:11
  26:7
**bit** 40:5
**bites** 14:6
**books** 11:23
**bost** 4:5 37:1,2
  37:18,19 38:4
**bove** 1:20
**branch** 6:20
  35:8
**brave** 36:22
**briefing** 44:14
**bring** 11:9
**bringing** 6:12
  34:9
**brings** 21:18
  23:22
**broad** 18:22
  27:21 28:1
**broadcasting**
  20:13
**broadened**
  15:4,5
**broader** 14:22
**brought** 9:2,8
  13:5 20:16
  26:19 32:6

**bruen** 14:23

**c**

**c** 3:2 4:1 6:7,14
  6:20,25 11:17
  11:18,21 12:8
  13:8,15 14:10
  14:21 16:2
  17:24 25:3,6,8
  25:23 26:20
  27:17,23 29:7
  29:20 34:22
  36:20,21,24
  37:7,7,11
  38:11 42:13
  43:20 44:4
  45:2,2
**called** 34:8
**care** 32:16,18
  32:19 33:3
**career** 16:11
**case** 1:7 4:5 8:2
  8:4,6,8 10:25
  11:7,15 13:8
  14:3 17:19
  26:16 33:13,23
  34:15 36:15,20
  39:23 44:14,14
**cases** 4:18 6:9
  10:12 14:15
  19:10 20:12
  23:6
**cast** 14:24

**cataloged** 43:3
**categorical**
9:21 19:2
31:13 35:3,4
39:25 43:12,15
**categorically**
16:4
**categories**
10:17,20 21:4
22:4 27:21,22
35:20 38:23,24
39:2
**category** 10:6
19:16 21:6,9
21:10,17,17,20
22:2,11 23:22
32:6 33:4,5
38:19
**caught** 14:16
**cause** 28:3
33:24
**cdlt** 45:10
**center** 20:14
**century** 23:11
**cert** 8:6
**certain** 16:4
27:19,21 40:9
**certainly** 6:9
7:20 17:4
**certified** 45:11
**certify** 45:4
**cetera** 15:1
22:9

**chagares** 1:19
4:2,7,25 5:3,5
5:23 6:24 7:6
7:14,21 8:3,16
14:20 20:2
23:15,17 24:8
26:4 35:13
36:10,13 37:18
37:20 40:3
43:17 44:6,12
**challenge** 9:8
20:10,16 25:9
**challengers**
10:11
**challenges** 6:9
33:24
**challenging**
26:18 34:11
**chance** 44:10
**changed** 26:19
**characteristics**
15:23,24
**charge** 20:25
**chief** 4:2,7,25
5:3,5,23 6:24
7:6,14,21 8:3
8:16 14:20
20:2 23:15,17
24:8 26:4
35:13 36:10,13
37:18,20 40:3
40:5 43:17
44:6,12

**chung** 1:20
22:22
**circuit** 1:22
9:19 15:10
16:17,17,22
20:20 38:18
43:2
**circuits** 20:20
35:5
**circumstance**
10:15 14:19
**circumstances**
5:19 16:5
**citation** 39:25
**citizen** 19:23
**citizenship**
21:8
**civil** 3:13 6:8
6:12 8:14 9:2
11:12 12:5
20:10,16 30:8
37:8 38:7 44:2
44:5
**claim** 11:7,9
**claiming** 37:3
**claims** 6:14
**clause** 41:4
**cleaner** 42:4
**clear** 20:15
21:13 23:24
24:1 28:21
32:7 35:19,24
39:22

**clearly** 28:24
**client** 25:13
34:8
**close** 12:18
**closed** 4:19
7:11
**colleagues** 6:1
**combat** 4:10
**come** 26:14
28:3 29:22
38:15
**comes** 38:17
**coming** 41:3,4
**comment** 7:11
7:24
**comments** 7:17
41:10
**commission** 5:6
**commit** 17:21
**committed** 4:20
5:16 15:11,16
17:9 21:15
25:21 30:25
37:1
**community**
18:11
**company** 20:13
**completed** 8:25
22:7 30:5
**completely**
13:12
**completion**
22:24

compliance
28:3 31:12
complied 24:12
30:11 31:25
comported
22:19
comporting
21:11 23:23
32:6
concede 17:7
26:5
concern 12:15
concerns 15:19
27:16
concluded 7:19
44:15
conclusive 19:8
concurring
20:19,21
conduct 23:18
31:3
conducted
17:25
conducting
5:12 32:25
conducts 13:19
confined 13:11
congress 6:19
16:1 34:25
35:22 36:23
39:8 42:11
connection
18:14,15

consider 4:21
5:18,19 23:18
24:10 29:21,23
30:9,20,21,22
31:5,16
considerations
41:16
considered
26:23 32:5
35:2
considering
41:7,9
considers 13:20
consistent 13:1
22:25 30:17
constitute
19:20
constitutes
35:15,25
constitutional
4:16 9:17 12:4
12:4 14:11
20:25 23:5
28:7,22 37:25
40:6,15
constitutional...
34:12
constitutional...
25:10 27:20,23
28:4
construed 13:1
contending
34:19

context 12:22
12:24 18:7,8
20:16 21:7
contexts 17:18
continue 23:5
32:10 34:13
continues
24:21
continuing
7:16 33:2
contours 40:6
40:15
contrary 43:16
contrast 16:15
convicted
21:18 24:14,16
30:3,11 31:24
32:17
convictee 22:18
conviction
23:18 24:9,9
25:15 30:12
31:3,16,18
32:3
convictions
31:1
convince 15:6
correct 17:1
29:25 30:24
31:14 35:21
38:9,12
correctly 13:6
counsel 27:16
32:12 36:11

38:1 40:5
41:15,21 43:18
44:13
country 10:18
18:20 39:12
course 15:7
court 1:2 4:3
5:9,18,18 6:21
7:18,23 8:1,2,7
9:8,18 10:2
11:11,13,15
13:21 14:8
19:7,18 20:4,7
20:8,12,14
22:3,5,6,8,20
23:6,23 24:1
24:10,12,19,22
24:25 26:13
27:4 28:19,21
28:22,25 29:1
29:2,19,20
30:2,5,9,12,20
30:22 31:15,25
32:1 36:4
38:16 39:22
41:12 42:3,15
court's 4:17
5:25 6:23
28:11 41:1
43:1
courtroom
21:22
courts 9:14
14:14 16:9,15

20:22 22:15
32:1 34:10
36:18 39:13,13
**craft** 40:24
**crafts** 41:8,10
**create** 13:15
41:20
**crime** 5:7,16,17
10:1 15:11,11
15:15,15 16:10
16:10,13,14
25:14,21 31:17
**crimes** 4:20
10:3,4 15:4,4
17:17,21 37:1
**criminal** 4:9
6:9,13 14:15
16:11,25 20:10
20:16 22:16
25:23 31:1,7
36:25 37:10
38:6
**criteria** 24:23
28:3
**cross** 20:1
**cure** 29:7,12,13
**current** 27:17
**custody** 23:3

**d**

**d** 4:1
**danger** 21:12
21:13 32:7
39:19

**dangerous** 4:21
5:12 10:16,20
10:24 15:13,25
16:20 19:7
33:2 38:20,23
38:24 39:11,18
43:14
**dangerousness**
5:16,21 6:6,17
11:21 15:18
16:20,21 22:12
23:19 24:23
30:16,20 35:3
35:8,16,25
37:24 38:15
39:2,13 42:8
42:20
**date** 45:17
**day** 12:12
**dc** 3:8
**de** 13:8
**deadline** 7:2,19
**dealt** 21:16
**death** 10:4
**decades** 16:9
39:9
**decide** 8:4
14:14 29:2
**decides** 8:2
**decision** 13:7
13:25 34:24
41:14 43:1
**decisions** 13:10
36:19 41:13

**declaration**
29:23
**declaratory**
7:23 11:10
14:18 30:2,8
37:8
**declare** 6:22
**declared** 16:12
**decline** 12:23
**deemed** 16:14
19:3
**defendant** 36:2
37:10
**defendants**
36:25 38:6
**defender's**
20:24 22:16
**defense** 3:13
22:16
**defenses** 6:10
6:13,14 14:16
**defer** 6:1
**define** 10:21
25:2
**definition**
10:24 16:13
39:1
**definitive** 36:16
**definitively**
40:16
**degree** 32:9
**delegation**
35:22

**delineation**
35:24
**denied** 25:1
27:15 40:13
**deny** 25:11
41:21
**department** 3:5
6:7 41:7,9,13
**depending** 8:2
**deprivation**
29:1 42:23,24
43:6,7
**deprivations**
17:17
**deprive** 34:14
**depriving**
17:14
**deriving** 42:20
42:25 43:1
**describing**
27:17
**determination**
33:1,14 35:9
39:24
**determine**
13:22 16:19
19:2 30:20
39:9
**determined**
39:9
**determining**
20:24 23:18
30:19 40:18

develop  18:15
dictate  21:19
difference  43:7
different  14:9
    18:18 20:11,15
    27:2 28:5,23
    30:6
differently  38:7
    44:5
difficult  5:14
    16:8
difficulty  16:16
digital  45:11
disabilities
    24:19
disaggregate
    15:9
disagree  15:20
disarm  4:19 5:8
    10:16 14:24
disarmament
    15:22 16:6
    17:8 21:5 29:3
    29:4,6,11
disarmaments
    43:15
disarmed  10:18
    18:13,21 29:22
    43:14
disarming  9:22
    18:8
discharged
    21:14

discretion
    12:23 41:19
discretionary
    12:9,13 34:6
    41:16,22
discussed  22:22
discussing
    41:16
discussion
    22:23 31:22
    43:17
dishonorably
    21:14
disloyal  18:9
    18:20 19:19,24
disloyalty
    19:12
dismiss  11:15
    37:2,13 38:7
dismissal  41:25
dispossessed
    10:1
dispute  21:23
disregard  35:5
disregarding
    36:21
dissenting
    20:19
district  1:3
    7:23 11:11,13
    11:15 20:22
    22:15 32:1
    36:4

divest  23:8
divested  23:5
    23:12
dj  38:8
docket  4:9
doctrinally
    42:4
doctrine  6:12
    41:22
doing  15:14
doj  40:22
doj's  15:7
doubt  14:25
    15:17
dragging  36:20
draws  36:7
driver's  36:3
driving  17:22
drunkards
    17:15 18:12
drunkenness
    17:9 19:9,12
due  15:19
    21:11 23:23
    31:5 32:7,16
    32:18,20,22
    39:18 41:1,4
dui  39:21
duration  11:23
    32:11

e

e  1:18,18 3:2,2
    4:1,1 45:2

eager  5:25
easier  19:9
eastern  1:3
edward  1:6
effect  24:21
    26:7
efficiency
    41:19
eight  27:2
either  23:10
    29:20 37:6
elected  36:7
elements  15:10
    15:14 16:5
    31:17
eliminating
    43:10
eloquent  20:21
empirical  39:12
endorsed  19:6
enforce  39:13
engaged  34:2
    43:20
ensure  27:11
ensuring  4:12
entire  10:18
    16:25
entirely  5:10
    10:11 36:15
    38:9
equal  27:10
era  18:6 19:15
escribers  2:3
    45:13

escribers.net 2:7
especially 26:11 31:6
esq 3:4,12
essentially 16:18
establish 10:10 22:11 44:3,3
established 10:14,16
et 1:9 15:1 22:9
evidence 13:5 13:20,20,22 14:4,7,8 17:8 18:2 39:10
exact 22:14 27:12
exactly 6:18 11:3 13:6 37:15
example 5:16 16:17 18:5,6 18:24 24:15 40:7
excellent 44:13
except 32:20
exceptions 24:4
executive 6:20 34:1 35:8
exhaustion 9:4 9:6 13:9 34:7,7 41:17,22,23 42:4,11

exist 29:20 36:18
existed 14:12 18:4,5
expansive 13:5
expect 8:24
explained 38:18
explains 9:20
explicit 42:16
explicitly 43:11 43:16
extent 24:11 43:9
extremely 16:8 30:16

**f**

f 1:18 45:2
facie 5:8
fact 21:23 22:3 22:7,10,22 25:18,22 27:3 31:23 36:1,20 39:8 40:14
factor 5:14,18 5:20
factors 17:3,4 30:19,19 35:1 35:7
facts 31:16 32:2
fail 6:14 37:6

fails 9:8,9
fair 7:21 17:12 17:16 40:24
fall 12:14
fallback 30:14
far 31:4,8,10 37:1 40:12
fashion 28:2
favor 22:13
fcc 20:13
february 1:14 45:17
federal 4:4,9,10 4:11 16:12 27:5,6 34:9
feels 13:12
felon 39:5
felonies 16:4
felons 4:20,20 4:20,21,22 5:11 10:18,19 10:19 14:24 15:1 18:7 19:7 39:6 40:1,23
felony 5:13 10:2,3 15:13 16:14,25 30:23 31:1 32:17,17 39:20
figure 16:10
file 37:2,5 42:14 44:2
filed 8:14 11:12 20:10 24:18

26:25 27:3 37:7,8 38:8
files 8:6
filing 37:11 38:6
final 25:6 27:18 33:24 35:17
finalized 34:2
finding 21:12 32:9,11,24
finds 17:11
fine 14:23
fines 22:8
finish 5:4 6:3 38:2
firearm 21:24 27:22
firearms 21:21 25:15 39:3
firm 3:13
first 7:7 10:10 12:20 15:3 20:8,8 21:6 22:5 25:6 36:14 38:11 42:14 43:1
fit 27:21
fits 28:2 33:4
five 4:25
fluid 24:24
focus 20:7
focused 11:18
follow 6:24 29:8

**following** 7:20
**food** 5:17 15:21
　15:24
**footnote** 22:23
**foreclose** 39:24
**foregoing** 45:4
**forgive** 18:1
**form** 21:11
　22:9 27:8
**forth** 29:25
　30:3 35:15
**forward** 36:7
　43:25
**found** 22:13
　39:18
**founding** 10:12
　10:14,16 17:11
　18:4,12,17
　19:15 23:9
**four** 4:6 16:9
　31:9
**frame** 42:3,4
**framework**
　8:12 20:18
　35:15
**framing** 14:22
**frankly** 16:7
**fraud** 5:17
　15:21,24
**fraudsters**
　10:23
**freeman** 1:20
**friday** 27:8

**friend** 43:22
**frustrating**
　36:15
**fugitive** 24:4,5
**fulfills** 4:13
**fundamental**
　4:14 18:10
**fundamentally**
　12:9,12
**funded** 11:23
**future** 26:11,12
　28:6

**g**

**g** 4:1,8,17
　11:25 15:2,3
　21:7 24:3,6
　28:3,4 29:24
　37:3
**general** 1:9 3:6
　8:13 19:16
　26:11,13 35:2
　36:2,4 40:22
　41:11 42:15
**generalization**
　5:11 19:3
**generally** 24:3
　24:5
**getting** 11:1
**give** 7:1,18 23:6
　37:16
**given** 33:12
　34:5 41:18

**gives** 22:15
**go** 4:2 5:2,23
　7:24 15:13
　16:3 22:5 30:7
　32:12,14 34:6
　34:20 38:11
　42:15,18
**goes** 22:6 31:4
**going** 5:13,14
　7:7,8 16:5,8
　17:17 19:11
　21:23 26:17,25
　27:11 29:2,21
　31:5 33:20,23
　33:24 35:19
　37:21 40:24
　43:25
**good** 10:25
　20:4 39:10
**gotten** 8:17,18
　8:20
**government**
　4:4,5,11 7:12
　8:14 22:10
　23:2,22 24:25
　25:10 26:5,21
　29:12,14 30:18
　32:6,24 33:20
　34:19 43:19
**government's**
　38:5
**grace** 12:16,19
**grant** 28:7

**granted** 4:7
　26:13 27:4,8
　33:22 34:21
　35:18,20 36:8
**granting** 10:6
　12:25 28:1
**grounding**
　17:11
**grounds** 18:25
**groups** 9:22
**guarantee** 40:8
**guess** 8:17 31:2
　35:17
**gun** 4:10 9:11
　11:1 14:16
　40:23 44:1,4
**guns** 8:17,18
　9:24
**guy** 39:18

**h**

**habeas** 12:11
**handled** 7:9
**hands** 9:15
**happens** 14:9
**hardiman** 1:19
　9:23 10:20,23
　11:2,4 25:13
　25:20 26:1
　30:13 36:24
　37:10 38:2,10
　38:13,22
**head** 41:13

| | i | | |
|---|---|---|---|
| **hear** 36:11,13 38:23 40:9 | **identical** 27:14 | **inapplicable** 19:3 | **inherent** 42:17 |
| **heard** 7:3 26:3 43:8 | **identically** 27:12 | **include** 21:7,13 36:19 39:5 | **initial** 10:6 16:6 18:19 27:6 40:22 |
| **hearing** 4:5 | **identified** 20:22 27:9 33:5 | **including** 8:19 13:20 16:11 28:6 | **inquiry** 5:21 15:18 16:1 18:19 19:2 |
| **heller** 4:18 39:25 | **identify** 22:6 | **independent** 40:18,20 | **institutional** 41:17 |
| **help** 40:4 | **illegals** 21:8 | **indicia** 15:18 | **insufficient** 15:22 |
| **helpful** 10:9 | **illustrate** 10:13 | **indictment** 37:3,14 | **interest** 4:11 |
| **high** 39:3 | **immediately** 22:17 | **indictments** 38:7 | **interests** 41:17 |
| **historical** 9:20 17:7 18:2 | **impartial** 41:3 | **individual** 5:8 5:10,20 6:16 13:21 14:3 16:19 17:25,25 22:19 23:3,7 24:11 25:8 27:21 28:2,19 29:3 30:1 31:6 42:14 | **interim** 7:9 8:10,11 |
| **historically** 32:4 | **imperfect** 18:22 19:16 | | **interpretation** 9:17 |
| **history** 9:23 10:9,9,12,13 21:5,19,23 22:25 23:21 31:19,21 38:17 43:2 | **impermissible** 35:9 | | **intoxicated** 17:22 |
| | **implemented** 4:12 | | **invention** 17:10 |
| | **implicit** 42:13 | | **investigating** 8:23 |
| | **important** 5:14 17:3,4 28:24 | **individualized** 18:19 19:2 32:24 33:1 39:23 43:13 | **investigation** 13:20 |
| **hold** 4:25 | **impose** 9:4,21 42:10 | | **invited** 8:13,15 33:9 |
| **holistic** 16:19 | **imposed** 22:8 22:20 24:12,19 30:5,12 31:25 | **individuals** 21:10 27:4,11 39:15 | **involuntarily** 21:15 |
| **hon** 1:19 | | | **involved** 24:15 36:9 39:23 |
| **honor** 9:7 22:24 26:2 29:18 30:1,15 31:14,20 35:12 36:12 | **imprisoned** 21:20 | **ineligible** 16:6 | **involving** 6:8 6:10 |
| | **imprisonment** 5:7 | **inform** 41:16 | **issue** 6:6 14:22 24:13,15,23 |
| **huge** 11:23 | **improper** 16:14 | **information** 30:8 | |
| **hypothetical** 33:19 | | | |

25:7 26:12
30:16 32:16,18
32:20,23 34:12
36:18 42:21
**issued** 7:10
20:7 24:25
**issues** 20:22
25:5,7,11 26:3
27:9 28:5
34:22 35:23
**it'll** 19:9

### j

**j** 8:16 27:3
**jacqueline** 2:2
45:4,10
**jail** 21:24 23:10
23:13
**jduge** 5:22
**jeopardy** 25:24
**joshua** 3:12
20:5
**judge** 4:2,7,23
4:25 5:1,3,4,5
5:23 6:1,2,3,24
7:6,14,21 8:3
8:16,20 9:4,13
9:18,23 10:20
10:23 11:2,4
11:10,18 12:7
12:18 13:3,23
14:9,20,20,21
16:22,24 17:6
17:14 18:1,6,9

18:16 19:11,19
20:1,2,21
22:22 23:15,17
24:8 25:3,13
25:20 26:1,4
27:16 28:11,16
29:5,8,16,19
30:6,7,13,21,23
30:25 31:8,9
31:13,15,21
32:2,12,14,15
32:22 33:9,16
34:1,5,15 35:1
35:13 36:10,13
36:24 37:10,18
37:20 38:1,2
38:10,13,14,17
38:22,22 39:5
39:16,17 40:2
40:3,3,4,18,20
40:20 41:7,15
42:2,10,18
43:4,17 44:6
44:12
**judges** 1:22
4:21
**judgment** 7:24
11:11 14:18
30:8 37:8
**judgments**
39:12 43:12
**judicial** 12:21
12:21 13:3,4,7
13:9,10,13,14

13:18,18,24
17:10 21:12
32:9 40:16,17
42:15
**july** 7:10,11
**jumped** 44:7
**jurisprudence**
41:2
**justice** 3:5 6:7
24:4
**justifiable**
17:18

### k

**kind** 13:14
16:15 29:6
39:16
**know** 8:22 10:3
10:17 11:22
15:14 22:17
25:16 27:1,13
27:25 28:8
35:18 43:6
**knowledge**
22:17 25:18
**knows** 32:16
**krause** 1:19
20:21 32:12,15
32:22 33:9,16
34:1,5,15 35:1
41:15 42:2

### l

**large** 28:2
35:20
**late** 7:10,11
**law** 20:16
23:23 31:6,7
34:15 36:17
43:24,25 44:4
**lawful** 4:19
14:25
**lawsuits** 8:14
**lead** 35:6
**leaving** 13:15
**led** 31:16
**legal** 36:18,19
45:11
**legislature's**
43:10
**legislatures**
9:21 10:17
38:19 39:11
**legitimate**
18:24
**lenape** 3:14
**leocal** 20:12
**letter** 8:16 27:3
**level** 17:25
**likelihood** 8:7
**likely** 8:5 10:22
33:12 41:2
**limit** 40:9
**limited** 13:23
15:14

**limiting** 30:19
**limits** 35:6
**litigants** 8:14
    38:8
**litigate** 25:20
**litigated** 36:16
**litigating** 33:23
**litigation** 26:18
    34:9 40:14
**little** 4:23 40:4
    40:5
**llc** 2:3
**long** 8:2 14:25
    15:2,12 28:12
    36:21 37:24
    38:20 40:10,12
    40:12,14
**longer** 6:21
    22:9 23:3 24:5
    24:13
**look** 15:2,15,16
    16:24,25 17:3
    19:14 20:11
    22:3 24:22
    26:20 31:19
    35:16
**looked** 15:23
    27:5
**looking** 21:3
    22:19 24:6
    30:4 34:5 35:3
**looks** 22:7 33:1
    41:18

**lose** 38:10
**loses** 8:6
**lot** 11:18 16:7
**loyalists** 18:8

**m**

**made** 6:20 24:1
    27:23 30:18
    35:19 39:17
    41:10
**main** 1:7
**major** 25:7
**make** 6:5 14:2
    17:19 38:4
    39:12 41:14
    43:12
**makes** 15:12
    21:21 35:4
**making** 11:8
**manner** 4:12
    13:1
**martha** 10:23
    10:25
**mascott** 1:21
    27:16 28:11,16
    29:8 38:1 40:3
    40:4,20 41:7
**matey** 1:20
    17:6,14 18:1,9
    18:16 19:11
**matter** 7:3 9:13
    9:14,16,17
    12:16,18 20:6
    21:2 25:18

    36:3
**mean** 11:25
    13:7 14:3
    16:22 28:14
    39:24 40:23
**means** 14:5
    39:10,24 43:14
**mechanism** 6:6
    13:9 34:13,17
    34:19
**mentally** 15:1
**mention** 36:1
**mentioned** 33:6
**merits** 9:9,9
    11:7 42:1,6
**million** 26:24
**minutes** 4:6,25
**missed** 18:1
**misusing** 39:3
**moment** 43:12
**montgomery**
    1:20 31:8
    38:22
**months** 26:20
    26:23 27:1
    33:13
**moore** 23:7
**morning** 4:6
    20:4
**motion** 37:2,6
    37:13
**motions** 38:6
**move** 30:3

**moved** 32:5
**multiple** 16:12

**n**

**n** 3:2 4:1 45:2
**nature** 5:13
    15:22 20:9
    24:17,24 25:17
    30:17 31:7
**necessary**
    14:19
**need** 28:5,24
    30:18
**needed** 40:4
**needs** 25:22
    32:23
**neutral** 40:7
**neutrality** 40:8
    40:21
**never** 10:1
    18:13
**nevertheless**
    33:14 36:17
**new** 13:12,15
    26:14
**nine** 26:17,17
    26:19 33:23
    36:16 40:9,11
**north** 2:4 45:14
**note** 19:10
**notice** 7:1,8,9
    7:10 8:25
    26:23 43:5,6

**novo** 13:8
**nprm** 27:13
   35:14,19
**number** 8:21
   20:22 25:5
   27:9 35:22
**numbers** 8:24
**nw** 3:7

**o**

**o** 1:18 4:1 45:2
**oath** 18:23
**objections**
   18:25
**objectives** 4:13
**obligations**
   22:8,20 24:12
   24:20 30:5,12
   31:12 32:1
**obtain** 42:15
**obtained** 32:8
**obviously** 24:5
**occasions** 28:23
**occur** 33:20
**occurred** 42:22
**occurs** 24:1
**october** 7:2,11
**offense** 5:19
   17:9 31:11,12
**offenses** 21:19
**offered** 33:13
**office** 3:5 20:23
   22:15,16 26:14
   27:2

**offices** 20:24
**oh** 5:2 12:10
   32:12
**okay** 8:3 11:4
   15:7 20:3
   32:22 37:20
   38:13
**old** 39:20
**once** 9:11 21:25
   23:3
**opened** 9:1
   23:11
**operates** 13:8
**operational**
   6:21
**operations** 2:7
**opinion** 9:18
   18:7 20:21
   24:24 29:17
   38:18,25 43:18
**opinions** 20:19
**opportunities**
   14:8 42:23,24
   43:8
**opportunity**
   6:16,18,19
   9:10 11:20,22
   12:1 14:4
   28:13 37:23
   38:20 39:15
   40:7,10 42:7
   42:19,22 43:5
   43:6,13

**opposed** 5:17
**oral** 21:3 27:10
   33:20
**order** 20:7
   24:18,21
**orders** 21:16
**ordinarily** 7:23
**outlined** 18:3
**outset** 32:17
**overlap** 20:9
**owning** 44:4

**p**

**p** 3:2,2 4:1
**pa** 3:15
**paid** 22:8
**panel** 21:2
   22:23 26:4
   36:6 43:18
**paramount**
   10:13
**pardon** 12:10
   12:13,14,16
   13:16
**pardons** 9:3
   12:22
**parole** 22:9
   23:4,9
**part** 16:9 17:13
   17:16 28:2
   31:8,9
**particular**
   15:15 17:21
   18:20 19:3

**parties** 13:15
**passed** 7:2
**past** 26:15
**pending** 26:17
   27:2
**pennsylvania**
   1:3 3:7
**people** 6:12
   7:22 8:13,17
   8:18 9:2,22
   10:17,20,22,24
   14:15 17:21
   18:23 19:19,20
   19:23 21:6,7
   22:6 23:11
   26:21,21 27:7
   35:20 38:20,23
   38:24 39:2
   40:22
**people's** 34:3
**percent** 17:20
   17:20
**perfectly** 42:2
**period** 7:11
   12:3,5
**permanent**
   17:8,16 24:2,3
   24:6 29:6,11
**permanently**
   17:14 18:13
**permissible**
   10:6 38:19
**permitted**
   27:22 29:19,21

**person** 5:15
16:20 17:19
18:20 19:4,23
19:24 21:6,13
23:24,25 25:22
27:14 28:12
29:22 32:7,8
32:10 33:2
37:6,16,21
**petition** 8:6
**phase** 40:22
**phipps** 1:20
11:18 12:7,18
13:3,23 29:5
29:16 42:18
43:4
**phoenix** 2:5
45:15
**physical** 23:25
32:8 39:19
**place** 8:8 9:15
18:12 33:1
**play** 27:19
28:14,14
**players** 36:9
**pleas** 31:2
**please** 4:3 5:2
18:16 20:4
**plethora** 34:22
**point** 4:16 6:4
9:18 11:8,13
11:21 27:20
29:2 30:15
32:9 33:15

**pointed** 23:2
**points** 36:14
**political** 18:11
**population**
39:4
**porter** 1:20
5:22 6:1 14:9
16:22,24 25:3
30:6,23,25
31:9,13 38:14
39:5,16 40:2
42:10
**pose** 21:12 39:3
**posed** 32:7
**poses** 36:5
**position** 6:18
15:7,8 26:10
27:15 29:15,16
29:17 30:14
35:7 38:5
**positioned**
39:12
**possess** 21:21
**possessed**
25:15
**possessing**
21:24 44:1
**possession**
27:22
**possible** 33:16
33:18
**possibly** 26:25
**post** 10:8,9,13
23:18 31:2

42:23 43:7
**potential** 25:23
26:1
**potentially**
33:25
**power** 12:10,13
12:14,16 13:16
**practical** 18:3
**pre** 42:23 43:6
43:7
**precedent**
20:12 26:18
28:19,21
**precisely** 15:25
**predicate** 16:25
24:9 30:23
31:11,12
**predisposed**
40:23 41:21
**prejudice**
11:16
**prescribed**
16:2
**present** 39:19
**presented** 20:9
**president** 35:10
**presume** 14:23
38:19
**presumption**
5:9,15 6:17
11:20 12:2
16:21 19:6,8,8
19:10 29:6,10
29:13 32:15

37:23 38:14,21
39:15 42:7,20
**presumptions**
17:10
**presumptively**
4:19 14:25
39:7
**prevailed** 11:2
**preventing**
44:1,4
**previously**
30:18
**prima** 5:8
**primarily**
42:21
**prince** 3:12
20:4,5 23:16
23:20 24:11
25:5,16,25
26:2,9 27:25
28:15,18 29:15
29:17,25 30:10
30:15,24 31:4
31:11,14,19,24
32:4,19 33:6
33:12,18 34:4
34:11,18 35:11
35:14 36:12
**principle** 10:14
10:15 19:16
36:17 39:14
43:11
**principles**
10:10 19:15

34:6
**prior** 27:10
43:18
**probably** 4:9
5:13 8:1 29:1
**probation** 22:9
23:4,9
**problem** 12:4,5
14:5,11 29:5
29:10,13
**problems** 16:7
**procedural** 6:5
6:12 11:8
**procedurally**
37:12
**proceed** 11:16
27:11 36:7
**proceedings**
44:15 45:5
**process** 6:7,15
6:21 7:16,19
7:24 8:7 9:1,15
11:17,19,21,22
11:23 12:8,13
13:14,16 14:10
14:12 15:19
17:24 21:11,11
23:24 26:7
27:11,18,24,25
28:6 31:6,23
32:7,16,18,20
32:22 34:2,9
39:18 40:24
41:1,4 42:9

43:20
**processed** 8:13
**profound** 4:11
**prohibited**
21:21 22:1,18
24:20 25:9,14
25:22 32:10,17
**prohibiting**
21:24
**prohibition**
21:4 22:12
**prohibitions**
14:25 28:22
**prohibits** 6:12
**proper** 17:23
20:18 22:14
35:15
**proposed** 7:2,8
7:10 8:25
26:12,24 32:24
**prospective** 6:8
12:5 14:14
**prospectively**
14:17 43:25
**protection**
27:10
**protections**
21:15
**proven** 15:17
**provide** 11:13
**provided** 6:18
6:19 9:11 19:1
21:11 22:1
37:24

**provides** 23:24
**provision** 13:4
**proxy** 18:22
**prudential** 9:13
9:14,16 18:3
34:7
**public** 4:13 9:1
17:9,15 18:11
19:9,12 20:23
22:16 33:3
**published** 27:6
**pulled** 25:19
**punishable** 5:7
10:4
**purposes** 19:20
**put** 14:4,7,8
25:23 29:25
30:3 33:9
35:15
**puts** 13:21
33:16

**q**

**quakers** 18:24
**qualifier** 26:1
**question** 7:5
8:10 10:5,8
18:2 19:22
20:17 30:6,7
36:8
**questioned**
33:25
**questions** 5:25
6:23 20:8

23:16 35:21
**quick** 36:14
**quite** 13:17
**quote** 4:19,19

**r**

**r** 1:18 3:2 4:1
45:2
**rahimi** 21:10
21:16 24:25
28:21 30:18
32:5 33:4
39:16,22 42:21
42:21,25 43:5
43:11,16
**raise** 14:16,17
15:19
**raised** 36:6
**raises** 10:5
**range** 5:9 11:2
12:6 14:13
15:8,21,21,22
15:23 20:21
22:3,6,7,23
43:1
**range's** 22:13
**ranging** 15:18
**rap** 15:16
**rather** 6:13
15:23
**ratification**
10:9,9,13
**read** 7:14

**reading** 15:20
20:19
**reality** 35:5
**really** 12:18
13:7,13
**rearmament**
31:23
**reason** 5:6 6:11
9:9 11:2 37:16
37:21
**reasonable**
6:16 9:10
11:20 12:1
15:17 28:12
37:23 38:20
39:14 40:7,10
42:7,19,22
**reasons** 12:20
18:24
**rebellion** 9:24
**rebels** 9:23
**rebut** 5:15 6:16
11:20 12:1
19:9 37:23
38:21 39:15
42:7,19
**rebuttal** 4:6
20:2 36:13,14
**rebutted** 5:9
16:20 19:8
**rebutting** 17:10
**recalling** 13:6
**received** 7:16
8:22

**recognition**
4:18
**recognized** 5:9
43:11
**record** 5:19
13:5,11,15,24
13:25 15:24
16:25 25:17
45:5
**records** 31:1
**reeves** 1:20
31:8 38:22
**refer** 9:18 21:9
**referred** 10:2
**reflects** 25:18
**refused** 18:23
**refusing** 35:3
**regain** 21:9
**regardless** 32:2
**register** 27:5,6
**regular** 22:16
**regulation**
19:15
**rehaif** 25:17
**reinvigoration**
6:25
**rejected** 15:8
35:2
**relation** 20:24
21:19 23:22
24:13 25:10
**relative** 30:12
39:4

**release** 23:4,8,9
**released** 21:25
23:3 24:19
**relevant** 5:20
35:8
**relevantly**
15:12
**relief** 12:24,25
25:8 26:13,22
27:4,8 28:1
30:2 34:12,16
34:18,21,21,23
35:18,20 36:8
37:12 41:24,25
44:1
**religious** 18:25
**relying** 12:10
31:22
**remainder** 5:24
**remedy** 11:13
**remember**
22:22
**remind** 19:17
**remiss** 36:1
**renounce** 21:8
**repeated** 4:17
**represent** 20:5
**representing**
4:4
**require** 7:21,22
12:25 19:11
34:8 40:7
**required** 7:17
33:18 34:24

40:16
**requirement**
9:5,7 41:2
42:11
**requires** 6:15
9:10 11:20
15:1 19:14
37:22 42:6,19
**reserve** 4:6
**resist** 11:7
**resolution**
36:17
**resolved** 8:9
**resolving** 6:6
**resort** 7:23
**respect** 17:17
39:11 40:15
**respectfully**
10:8 15:20
**respects** 4:14
**respond** 35:11
**responsibility**
40:25
**responsible**
25:1,2 30:17
**restitution** 22:8
**restored** 17:20
28:10,13 33:11
34:3
**restraining**
21:15 24:18,21
**restrepo** 1:19
**resulting** 31:17

**results** 35:7
**returned** 22:1
22:21
**review** 12:21
12:21 13:4,4,7
13:9,10,13,18
13:19,25 40:16
40:17 42:16
**reviews** 13:21
**revitalized** 6:8
**revived** 14:12
**revoke** 26:13
28:7
**revoked** 33:15
34:21
**revolutionary**
18:6
**right** 5:6 7:25
9:1 11:3 13:17
15:6,9 21:1
23:5,6,8,12
25:15 28:8
30:13 31:13
32:16,18 33:11
34:14 36:10
37:2,4,5,15
38:2,10 40:2
41:21
**rights** 3:13
4:14 9:11 10:7
11:1 17:20,22
21:25 22:21
28:9,13,20
33:10 34:3

40:13,23
**rise** 8:24
**risk** 36:5 39:3
**road** 3:14 16:3
**route** 38:11
**rule** 8:12 13:25
25:6 26:12
27:18 32:25
33:24 34:2
35:17 41:8,10
**ruled** 27:3
33:25
**rulemaking** 7:2
7:8,10,16 8:25
26:24
**rules** 9:21
36:18,19 39:25

**s**

**s** 3:2 4:1 42:13
**safety** 4:13
19:1,17 33:3
**satisfied** 28:17
40:19 42:8
**saw** 8:16
**saying** 12:10
13:11 14:23
16:3 17:24
29:5,7,9,11
34:13 40:9,11
**says** 15:24 27:4
34:23 43:5
**scenario** 24:22
27:12

**scheme** 41:18
42:17
**scope** 10:6
19:22
**seat** 36:3
**second** 4:14,18
6:10,15,17 7:8
9:8,10 10:11
10:12 11:19
12:22,24 13:1
14:5 17:23
19:21 21:9
22:11,20 23:22
28:9,20 32:21
32:23 33:4
35:9 37:22
38:3 39:10,14
40:13 41:3
42:5,6,19
**secondly** 43:2
**seconds** 44:9
**section** 4:8,17
6:7,14,20
11:16 16:2
36:19,21 40:1
42:13
**secured** 4:14
**see** 18:13 22:5
27:5 35:11
**seeing** 23:13
**seemingly**
32:20
**sense** 19:24
21:22 39:17

**sentence** 22:24
31:17
**sentences** 4:22
**separate** 13:14
21:4 22:2,4,12
24:14 43:11
**serious** 14:5
37:1
**serving** 4:21
**setting** 8:12
25:7
**severe** 10:3
**shape** 15:2
**shays's** 9:24
**sheet** 15:16
**show** 5:11
43:13
**showing** 5:15
32:7
**shows** 9:20
15:24 23:2,24
27:7
**shutdown** 7:12
**shuts** 14:10
**shwartz** 1:19
9:4,13 11:10
29:19 30:21
31:15,21 32:2
32:14
**shwartz's** 30:7
**side** 8:6 41:18
41:20
**signature** 45:8

significantly
  8:24
simple  24:16
simply  22:18
  30:4,10
situated  38:7
situation  38:4
sixth  9:19
  15:10 16:17,17
  16:22 38:18
  43:2
solicitor  3:5
solution  12:4
someone's
  30:20
sorry  5:1,22
  32:12
sort  10:8 17:8
  23:23,24 24:16
sorts  41:9
sought  26:16
  41:24
sound  27:20,23
sounds  41:15
sovereign
  18:10 19:13,20
speak  44:10
speaking  24:6
specific  7:19
  10:15 21:18
specifically
  40:21
spent  16:9
  20:18 33:22

stamp  5:17
  15:21,24
standard  17:6
  40:19
standards
  18:11
standing  14:25
  15:2,13 44:3,3
  44:5
standpoint
  22:18
start  19:6
starting  4:16
  11:12
state  25:8
states  1:2,9 3:5
  9:19 18:18,21
  39:8 43:3,16
status  6:25
  24:14 30:3
  31:24
statute  4:10,12
  6:22 12:22
  32:18 37:24
  40:25 41:11
  42:16
statutes  16:11
  16:12 18:17
statutorily
  34:22
statutory  40:19
  41:18 42:17
stay  9:14

step  14:21 21:3
  31:4,8,10
  36:22 37:11
stewart  10:23
  10:25
sticky  30:16
stood  44:7
stop  17:1
street  2:4 45:14
striking  36:22
stripped  21:1
strong  8:7 11:6
  17:19
structure  19:5
  42:14
stuck  31:17
subject  19:24
subjected  33:7
subsequent
  24:9
subset  10:19
substance  42:5
substantial
  20:18
substantively
  37:12,15,16,22
succeeding
  37:13
successful  36:3
sudden  26:15
suffer  20:23
sufficient  5:8
  37:9 40:17

suggested
  16:18
suggesting
  25:21 43:23
suit  37:8 44:2,5
suite  2:4 45:14
suits  6:8,13 9:2
  12:5 14:14
sum  44:7
supervised
  23:4,8,9
supports  28:19
supreme  4:17
  8:6 10:2 19:7
  20:12,14 24:1
  24:25 28:11,18
  28:21 29:2
  38:16 41:1,12
sure  7:6 18:13
  29:1 38:4
suri  3:4 4:3,3,8
  4:23 5:2,6,24
  6:4 7:4,7,15
  8:1,4,18,21 9:6
  9:16 10:5,22
  10:25 11:3,6
  11:15 12:3,15
  12:20 13:17
  14:1,11 15:20
  16:23 17:2,13
  17:16 18:5,15
  18:17 19:14,22
  36:14,24 37:5
  37:15,19,21

38:9,12,16
39:1,7,22
40:11 41:1,9
42:2,13,25
43:9,22 44:10
**swath** 28:1
**swear** 18:23
**swearing** 18:25
**system** 18:3

**t**

**t** 45:2,2
**take** 6:18 7:18
7:22 9:15
16:17 28:1
32:19 33:3
37:11 38:6
44:14
**taken** 28:9,10
40:14
**takes** 8:4 27:1
32:15,18
**talk** 13:3 15:10
38:3 40:5
**talking** 14:22
24:3 28:7 40:1
42:23
**talks** 13:4
**tease** 12:7
**tell** 23:17
**temporarily**
32:10
**temporary** 24:2
28:22,24,25

29:3,10 33:7
34:20
**tenth** 4:9
**term** 38:16
**terms** 42:3,5
**tethered** 21:4
23:20
**thank** 36:10,12
40:4 44:12,12
44:13
**thapar's** 9:18
18:6 38:18
**theme** 42:18
**thing** 23:10
**things** 15:16
17:2 19:23
20:21 21:14
31:9
**think** 4:23 9:6
9:7 10:8 12:8
12:23 13:10,17
14:11,15,18
16:6 17:13
19:14,19 20:11
21:22 25:11
30:16 31:4,22
33:12 36:7,20
37:10 41:23
42:4 43:9,22
**third** 21:17
**thompson**
20:14
**thousands** 7:17

**threat** 21:13
23:25 32:8
33:3
**threaten** 18:10
**three** 21:4
28:23 36:14
**time** 5:4,5,25
7:12,18,25 8:1
8:5,8 11:24
15:3 20:19
23:9,13 24:18
26:19 33:14,15
33:17,21 35:11
36:21 37:17,19
40:9 44:6
**times** 13:6
**today** 11:12
21:18,22 30:4
36:19 41:24
**told** 26:21
**took** 7:12 33:13
**total** 8:21
**tradition** 9:20
15:13 21:5,19
21:23 23:1,21
31:19,21 38:17
43:2
**traditional**
13:13
**transcribed** 2:2
**transcriber**
45:11
**transcript** 45:4

**treated** 27:12
**trial** 32:1
**true** 43:24 45:5
**truly** 34:18
**trying** 16:9
**tta** 45:11
**turn** 26:20
**turned** 22:10
**turning** 20:7
**turns** 19:23
**twice** 11:19
**two** 7:4 12:20
14:6,8 20:8
**type** 15:25
16:16 24:23
25:6 28:5
**types** 16:4
17:21
**typically** 13:10
13:24

**u**

**u.s.** 20:12,13,23
22:15 23:25
24:25 28:18
29:1
**ultimate** 41:14
**ultimately** 8:2
8:9 40:18
41:11
**unavoidable**
41:12
**unconstitutio...**
6:22 11:25

29:24 33:25 34:13 36:23 37:3

**unconstitutio...** 34:16

**under** 6:10 7:17 8:12 11:13 16:11 17:23 21:7 22:2,4,9,11 23:4,7 24:3 25:8,23 31:24 32:17 35:9 40:25 41:1,12 41:22 44:14

**underlying** 10:10 19:15 32:3

**understand** 9:24 15:8 27:16 38:5

**understanding** 28:12

**understood** 39:16

**undone** 26:16

**unfortunate** 40:14

**unfunded** 11:24

**uninterrupted** 5:25

**united** 1:2,9 3:5 9:19 43:3

**universe** 15:6
**unjust** 35:6
**unknowing** 25:16
**unlawful** 33:25
**unusually** 39:3
**update** 7:1
**uprising** 18:10
**use** 28:23 35:6
**used** 7:15 38:16
**usually** 10:4

**v**

**v** 1:7 20:12,13 20:14
**vagueness** 16:13
**validly** 10:1
**valve** 19:1,17
**various** 10:12 16:11
**vests** 41:11
**view** 11:14 19:25 40:6 43:25
**violated** 43:24
**violation** 9:12
**violative** 32:20
**violence** 4:10 16:10,13 23:25 32:8
**violent** 4:20 5:16 10:18 15:3,4 16:10

16:14,14
**vital** 4:13
**vivek** 3:4 4:3
**void** 16:12

**w**

**wait** 40:10,12 40:12 44:11
**waiting** 34:1
**waive** 5:24 26:5
**waived** 43:19
**waiver** 25:12
**want** 7:22 15:14 20:8 23:12 25:20 38:4 40:15 44:7
**wanted** 6:3,5 38:3 44:8
**wants** 42:3
**war** 18:6
**washington** 3:8
**way** 10:2 15:11 28:16,23 29:9 29:11 30:25 34:19 41:23
**ways** 7:4 27:19
**we've** 12:12 16:12,18 23:11 35:4
**week** 33:10
**welcome** 6:23 23:16

**went** 26:6 28:22
**whichever** 8:5
**wide** 15:18
**williams** 1:6 9:19,25 11:5,6 11:12 16:22,23 16:24 18:7 20:6 25:4,18 26:16 27:13,15 33:7 36:5,8 38:3,8 39:20 43:3
**willing** 43:20
**window** 43:15
**wish** 11:7
**withdraw** 36:5
**word** 10:2 28:23,25
**wording** 14:24
**work** 12:17 39:20
**workable** 4:13 17:6
**working** 44:5
**works** 13:18
**world** 14:13
**written** 29:9
**wrong** 35:10

**x**

**x** 1:4,12

| y |
|---|
| **yeah**   6:4 |
| **year**   5:7 39:20 |
| **years**   11:24,24 |
| 26:17,17,19 |
| 29:4 33:8,23 |
| 36:16 40:9,11 |
| **yesterday**   31:3 |