# PRINCE LAW OFFICES, P.C.

Warren H. Prince
Karl P. Voigt IV
Joshua G. Prince
Jeffrey A. Franklin
Dillon L. Harris
Adam J. Kraut *(Of Counsel)*

Bechtelsville 1-610-845-3803
Toll Free 1-888-313-0416
Fax 1-610-845-3903


August 19, 2026

**VIA CM/ECF**
U.S. Court of Appeal for the Third Circuit
Attn: Patricia S. Dodszuweit, Clerk of Court
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

**RE: *Edward Williams v. Attorney General of the U.S., et al., No. 24-1091***

Dear Ms. Dodszuweit,

Plaintiff/Appellee Williams respectfully responds to the Government's August 18, 2026 letter advising this Court of a final rule implementing 18 U.S.C. § 925(c) and suggesting that somehow, someway this "cures" the unconstitutionality of 18 U.S.C. § 922(g)(1), as-applied to Mr. Williams. Doc. 136, pg. 1.

First and foremost, beyond the fact that the document provided by the Government is not the official version of the final rule – nor could it be, since it has yet to be published in the Federal Register – and there are anticipated forthcoming constitutional, Administrative Procedure Act, and other statutory and legal challenges to the final rule that may result in it being preliminarily and permanently enjoined, it is extremely telling that although the Government contends that the final rule "is designed to ensure that the fundamental right of the people to keep and bear arms is not unduly infringed" (Doc. 136, pg. 1) that is exactly what the Government is doing to Mr. Williams – unduly infringing his right to keep and bear arms as correctly found by the District Court.

While Mr. Williams does not dispute that the relief process is a welcome change for someone who is *constitutionally* deprived of his/her right to keep and bear arms – such as an individual who is prohibited from possessing firearms during a limited duration restraining order, as found by the U.S. Supreme Court in *United States v Rahimi*, 602 U.S. 680 (2024) – as Mr.

Williams has addressed extensively in his briefing and during oral argument, there is simply no history and tradition of disarming, in perpetuity, an individual, such as Mr. Williams, as a result of a non-violent, DUI conviction, where no property damage or injury occurred.

What is truly glaring about the Government's letter is what it fails to inform this Court of in relation to the putative final rule and its contention that it "cures" the unconstitutionality of § 922(g)(1). First, as the undersigned addressed during oral argument, in order to be able to apply under § 925(c), one must be *actually* prohibited and admit he is prohibited under § 922(g). Transcript of Oral Argument, pg. 25, *Williams v. Attorney General of the United States of America, et al.*, No. 24-1091 (3rd Cir. Feb. 11, 2026). And in the purported final rule, the Government *agrees*, declaring "the final rule makes clear that the remedy available through this rule's process is *open only to those individuals with current disabilities* under 18 U.S.C. 922(g)." *See* pgs. 75-76 of https://www.justice.gov/ffrr/media/1458101/dl?inline (emphasis added). As Mr. Williams has no constitutionally-sound prohibition under § 922(g), he does not have a disability and is therefore ineligible to apply.

Second, in addition to the final rule imposing numerous and differing fees on individuals to apply for relief, contrary to Government's contention that the process is currently available and "cures" the constitutional defects of § 922(g), the Department of Justice's own website regarding the relief process—https://www.justice.gov/ffrr—defies those arguments. Specifically, not only does it explicitly declare that "[30 days after the Rule Published]: DOJ invites candidates to apply," but then goes on to restrict the number of applicants in particular cycles:




Under 18 U.S.C. 925(c), the Attorney General can restore federal firearm rights. During 2026, Federal Firearm Rights Restoration will be launched in stages:

★ [30 days after Rule Published]: DOJ invites candidates to apply

★ [75 days after Rule Published]: Application opens to the public (the first 5,000 candidates can apply)

★ [120 days after Rule Published]: Application opens to the public (500 more candidates can apply and the application fee will begin)

And of course, the Government does not explain who it will "invite" to apply, why those individuals are being treated differently than "the public," the basis for restricting the first cycle of "public" applicants to "5,000," the basis for restricting the second cycle of "public" applicants to "500," what the cycles or applicant numbers will look like after those two cycles, or how exactly

it will determine where an applicant's application falls within those numbers and what happens to an application that is outside of those allotted numbers, especially with the difference in fees required between the different cycles. And let's not forget that the Government originally contended that there would be "1 million" applicants in the first year, although now, through some hocus-pocus speculation, it has downgraded the number to 330,000; whereby, its own set-forth processing cycles (500 applications, every 45 days), will require *over 80 years to get through the applications submitted in the first year*, resulting in most applicants being dead, *long* before receiving any determination.[1] *See* pgs. 101, 103 of https://www.justice.gov/ffrr/media/1458101/dl?inline. Consider also that in its Proposed Rule, the Government estimated "fully adjudicat[ing] those 1 million applications within a year of receipt," a timeline it abandons in the final rule, despite dramatically reducing the anticipated number of applications. *Application for Relief From Disabilities Imposed by Federal Laws With Respect to the Acquisition, Receipt, Transfer, Shipment, Transportation, or Possession of Firearms,* 90 Fed. Reg. 34394, 34399 (July 25, 2025).

Regardless, there is no plausible way for the Government to contend that this process—treating certain individuals specially while denying others, who are being unconstitutionally deprived of their right to keep and bear arms, for protracted periods of time—potentially beyond their lifetime—because he/she missed the cutoff—could, in any mind-boggling wonder of the world, "cure" the unconstitutionality of § 922(g). For all the reasons specified herein and in Mr. Williams' extensive briefing and oral argument, he respectfully ask this Court to affirm the District Court's decision that § 922(g)(1) is unconstitutional as applied to him.

Respectfully Submitted,

Joshua Prince, Esq.
PA Bar No. 306521
PRINCE LAW OFFICES, P.C.
646 Lenape Road
Bechtelsville, PA 19505
Joshua@PrinceLaw.com
(888) 202-9297 ext 81114

[1] *See* https://www.ssa.gov/oact/STATS/table4c6.html.